IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| RICHARD ALEXANDER MURDAUGH, JR., | )<br>)<br>) |
| *Plaintiff*, | )<br>)<br>) |
| v. | )<br>) |
| | ) Civil Action No.: 9:24-cv-04914-RMG |
| BLACKFIN, INC., WARNER BROS. DISCOVERY, INC., WARNER MEDIA ENTERTAINMENT PAGES, INC., CAMPFIRE STUDIOS INC., THE CINEMART LLC, NETFLIX, INC., GANNETT CO., INC. and MICHAEL M. DEWITT, JR., | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| *Defendants*. | )<br>) |

## DEFENDANTS' NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446(a) and (b), Defendants Netflix, Inc. ("Netflix"), and The Cinemart LLC ("Cinemart") (collectively the "Removing Defendants") hereby remove the above-captioned case, formerly pending in the Court of Common Pleas, County of Hampton, State of South Carolina, to this United States District Court for the District of South Carolina, Beaufort Division. All other Defendants—Blackfin, Inc. ("Blackfin"), Warner Bros. Discovery, Inc. ("WBD"), Warner Media Entertainment Pages, Inc. ("Warner Media"), Campfire Studios Inc. ("Campfire"), Gannett Co., Inc. ("Gannett"), and Michael M. DeWitt, Jr. ("DeWitt")—consent to this removal, as required by 28 U.S.C. § 1446(b)(2)(A).

### INTRODUCTION

1. This case arises from three documentary series that reported on historical events and official investigations involving a well-known and influential family, the Murdaughs, that for years

1

have been the subject of discussion, debate, and speculation by the populace of Hampton County, South Carolina, and that have been extensively covered in the local, state, and national news media.

2.    Each documentary series was produced by an independent production company and distributed by streaming services, all of which are incorporated and have principal places of business outside of South Carolina, such that this case ought to give rise to federal diversity jurisdiction and be adjudicated in federal court.

3.    In a blatant attempt to avoid federal diversity jurisdiction, however, the Complaint includes a facially meritless claim against Defendant Michael DeWitt, a South Carolina journalist, who was interviewed in the Netflix series *Murdaugh Murders: A Southern Scandal* (the "Series"). Indeed, the Complaint repeatedly misquotes DeWitt—the only individual sued or quoted by name in the Complaint—in yet another blatant attempt to manufacture a cause of action where none exists.

4.    DeWitt's joinder in this case was fraudulent because *based on what DeWitt actually said in the Series*, no viable cause of action can possibly be asserted against him.

5.    In support of this Notice of Removal, the Removing Defendants state as follows:

**PROCEDURAL BACKGROUND**

6.    On June 14, 2024, Plaintiff Richard Alexander Murdaugh, Jr. ("Plaintiff") commenced this action by filing a Summons and Complaint in the Court of Common Pleas, County of Hampton, State of South Carolina, captioned *Richard Alexander Murdaugh, Jr., v. Blackfin, Inc., Warner Bros. Discovery, Inc., Warner Media Entertainment Pages, Inc., Campfire Studios Inc., The Cinemart LLC, Netflix, Inc., Gannett Co., Inc. and Michael M. DeWitt, Jr.*, Civil Action No. 2024-CP-25-00192 (the "State Court Action"). Pursuant to 28 U.S.C. § 1446(a), a copy of the

2

Complaint and all other pleadings that are in the state court file and available to Defendants, including the docket sheet, are attached hereto as Exhibit 1.

7. The Complaint alleges that Defendant Blackfin created and produced the series "Murdaugh Murders: Deadly Dynasty," which Defendant WBD began distributing through its streaming platform discovery+ and the Investigation Discovery cable television channel. (Compl. ¶¶ 19, 21.) The Complaint further alleges that this series, during a ten-minute segment, "falsely suggests and subtly accuses" Plaintiff of murdering Stephen Smith and is, therefore, defamatory. (Compl. ¶¶ 19, 20, 21.) The Complaint makes no allegation associating Defendant DeWitt with "Murdaugh Murders: Deadly Dynasty."

8. The Complaint alleges that Defendant Campfire created and produced the series "Low Country: The Murdaugh Dynasty," which Defendants WBD and Warner Media began distributing through Defendant WBD's streaming platform HBO Max. (Compl. ¶¶ 22, 24.) The Complaint further alleges that this series falsely suggests that Plaintiff murdered Stephen Smith "because of [Smith's] sexual identity" and "in relation to a romantic relationship between Plaintiff and Smith," and is, therefore, defamatory. (Compl. ¶¶ 22, 23, 24.) The Complaint makes no allegation associating Defendant DeWitt with "Low Country: The Murdaugh Dynasty."

9. The Complaint alleges that Defendant Cinemart created and produced the Series, "Murdaugh Murders: A Southern Scandal," which Defendant Netflix distributed through its streaming platform, and that the Series falsely accuses Plaintiff of murdering Stephen Smith. (Compl. ¶¶ 25, 26, 27.)

10. The Complaint alleges that Defendant DeWitt, acting in his individual capacity and within the scope of his employment as editor of Defendant Gannett's subsidiary *The Hampton*

*County Guardian*, falsely accused Plaintiff of "being involved in the murder of Stephen Smith" "[w]hen put in context with the remainder of the documentary." (Compl. ¶ 28.)

11. The Complaint fails to identify specific causes of action—instead broadly asserting conclusory allegations that the individual Defendants published unspecified statements that are "defamatory" insofar as they "falsely accuse the Plaintiff of committing murder." (*See, e.g.*, Compl. ¶¶ 20, 21, 23, 24, 26, 27, 28, 29, 30.) In so doing, the Complaint "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading." *In re SCANA Corp. Sec. Litig.*, 2019 WL 1427443, at *5 (D.S.C. Mar. 29, 2019); *Hill v. Stryker Sales Corp.*, No. 4:13-CV-0786-BHH, 2014 WL 4198906, at *2 (D.S.C. Aug. 20, 2014) (cleaned up).[1]

12. As to DeWitt specifically, his actual statements in the Series cannot possibly give rise to a claim against him sounding in defamation, including for the reasons detailed below.

13. Defendants have provided notice of the filing of this Notice of Removal to Plaintiff by serving a copy of this Notice of Removal, as required by 28 U.S.C. § 1446(d). A true and correct copy of this Notice of Removal, along with a Notice of Filing, will also be filed with the Clerk of Court for Hampton County, South Carolina, in accordance with 28 U.S.C. § 1446(d).

**TIMELINESS OF REMOVAL AND VENUE**

14. Defendant Netflix received service of process on August 12, 2024. An attempt to serve Defendant Cinemart was improperly made by sending the Summons and Complaint via

---

[1] This type of "shotgun pleading" violates S.C. R. Civ. P. 8(a)(2), 10(b), and cognate provisions of Fed. R. Civ. P. 8(a)(2) and 10(b), which both require short and plain statements of the claims showing that the pleader is entitled to relief, and that each claim be stated in separate, numbered paragraphs, each limited as far as practicable to a single set of circumstances. "[A complaint] that commits the sin of not separating into a different count each cause of action or claim for relief" is an improper "shotgun pleading." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015); *Davis v. Coca-Cola Bottling Co.*, 516 F.3d 955, 979-80 (11th Cir. 2008), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (complaint with "untold causes of action, all bunched together in one count").

certified mail to the Registered Agent for delivery on August 10, 2024, without obtaining the signature of the Registered Agent. Setting aside the improper service attempt on Cinemart, removal is timely pursuant to 28 U.S.C. §§ 1446(b)(1) and (b)(2)(B) because this Notice of Removal is filed within thirty (30) days after delivery of the Summons and Complaint to Cinemart and service of the Summons and Complaint on Netflix, the Removing Defendants effecting this removal, and all other Defendants have consented to the removal as required. (*See* Exhibits 2 and 3, attached hereto.)[2]

15.     Venue for removal is proper in this district and division under 28 U.S.C. §§ 1391(b) and 1441(a) because the Beaufort Division of the District of South Carolina embraces the Hampton County Court of Common Pleas in the Fourteenth Judicial Circuit in the State of South Carolina, the forum in which the removed action was pending.

### REMOVAL IS PROPER UNDER 28 U.S.C. SECTION 1332(a)

16.     "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

17.     For the reasons set forth below, removal to this Court is proper based on diversity jurisdiction because "[u]nder 28 U.S.C. § 1332, a federal district court has original jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and

---

[2] By joining this Notice of Removal, Cinemart does not waive any defenses related to the improper service of process. Cinemart expressly reserves the right to challenge the adequacy of service and maintain any defenses associated therewith, including those that may arise if the statute of limitations were to run.

costs, and is between citizens of different states." *Cent. W. Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). *See also* 28 U.S.C. §§ 1332(a), 1441.

18. Federal courts may take jurisdiction of an improperly joined case that purports to destroy diversity jurisdiction through improper joinder/misjoinder. *See Thomas v. Tramaine-Frost*, No. 4:16-CV-126-ILW, 2017 WL 781071, at *2 (D.S.C. Feb. 28, 2017). Fraudulently joined, non-diverse defendants are properly "disregard[ed] for jurisdictional purposes." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218 (4th Cir. 2015).

A. **The Amount in Controversy Requirement is Met.**

19. Plaintiff does not specify an amount in controversy but alleges that "as a result of the specific false and defamatory statements made by Defendants and republished by Defendants, Plaintiff's reputation has been irreparably damaged, and he has suffered mental anguish," for which he seeks "actual damages and punitive damages due to the reckless conduct of the Defendants in falsely accusing him of being involved in the murder of Stephen Smith." (Compl. ¶ 30.)

20. "When a plaintiff does not contest the amount in controversy, 'a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Wideman v. Innovative Fibers LLC*, 100 F.4th 490, 495 n.4 (4th Cir. 2024) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).

21. Given the nature of Plaintiff's purported defamation claims based on statements made in programming distributed nationally by the streaming platforms at issue here, and the number of different Defendants sued over three different series, the amount in controversy exceeds the $75,000 requirement for jurisdictional purposes.

22. Furthermore, Plaintiff's requested forms of relief, aggregated, against the individual Defendants, appear to exceed the $75,000 jurisdictional threshold. *JTH Tax, Inc. v.*

*Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) ("plaintiffs may aggregate smaller claims in order to reach the jurisdictional threshold"). *See also Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (same).

23.   Accordingly, the amount in controversy requirement is satisfied in this case.

**B.   Diversity Jurisdiction is Met.**

24.   For purposes of diversity jurisdiction, a natural person is a citizen of a state if he is a citizen of the United States and a domiciliary of that state. *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017).

25.   Upon information and belief, Plaintiff was at all times relevant to the filing of the Complaint, a citizen of the United States and domiciliary of South Carolina.

26.   "[T]he citizenship of a limited liability company is determined by the citizenship of all of its members. Further, a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Cent. W. Virginia Energy Co. v. Mountain State Carbon*, LLC, 636 F.3d 101, 103 (4th Cir. 2011) (cleaned up).

27.   Defendant Blackfin is and was, at the time of filing of the Complaint and the filing of this removal, a corporation organized and existing under the laws of the State of New York with its principal place of business in the State of New York. (Compl. ¶ 1.) Therefore, Blackfin is a citizen of New York for diversity purposes.

28.   Defendant WBD is and was, at the time of filing of the Complaint and the filing of this removal, a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York. (Compl. ¶ 3.) Therefore, WBD is a citizen of both Delaware and New York for diversity purposes.

29. Defendant Warner Media is and was, at the time of filing of the Complaint and the filing of this removal, a corporation organized and existing under the laws of the State of Georgia with its principal place of business in the State of Georgia. (Compl. ¶ 5.) Therefore, Warner Media is a citizen of Georgia for diversity purposes.

30. Defendant Campfire is and was, at the time of filing of the Complaint and the filing of this removal, a corporation organized and existing under the laws of the State of California with its principal place of business in the State of California. (Compl. ¶ 7.) Therefore, Campfire is a citizen of California for diversity purposes.

31. Defendant The Cinemart LLC ("Cinemart") is and was, at the time of the filing of the Complaint and the filing of this removal, a limited liability company organized under the laws of the State of New York with its principal place of business in the State of New York. (Compl. ¶ 9.) Cinemart has two members: Julia Willoughby Nason is a citizen of the United States and a domiciliary of New York; and Michael Gasparro is a citizen of the United States and domiciliary of New Jersey. None of Cinemart's members is a citizen of the State of South Carolina. Accordingly, for purposes of diversity jurisdiction, Cinemart is a citizen of the States of New York and New Jersey. (Nason Decl., attached as Exhibit 4.)

32. Defendant Netflix is and was, at the time of filing of the Complaint and the filing of this removal, a corporation organized and existing under the laws of the State of Delaware with its principal place of business in the State of California. (Compl. ¶ 11.) Therefore, Netflix is a citizen of Delaware and California for diversity purposes.

33. Defendant Gannett is and was, at the time of filing of the Complaint and the filing of this removal, a corporation organized and existing under the laws of the State of Delaware with

its principal place of business in the State of New York.[3] (Compl. ¶ 13.) Therefore, Gannett is a citizen of Delaware and New York for diversity purposes.[4]

34.  Defendant DeWitt is and was, at all times relevant to the filing of the Complaint and the filing of this removal, a citizen of the United States and domiciliary of the State of South Carolina. (Compl. ¶ 16.) However, the citizenship of DeWitt must be disregarded for purposes of this Notice of Removal, because he has been fraudulently joined in this action.

35.  When the Court properly disregards the citizenship of DeWitt as a fraudulently joined Defendant, complete diversity of citizenship exists between Plaintiff and all properly joined Defendants.

36.  Defendants Blackfin, WBD, Warner Media, Campfire, Gannett, and DeWitt all consent to this removal pursuant to 28 U.S.C. § 1446(b)(2)(A) (*see* Exhibits 2 and 3), and submit, with Defendants Netflix and Cinemart, that no legitimate claim exists against DeWitt and DeWitt's joinder in this action is fraudulent and should be disregarded for jurisdictional purposes.

**C.   DeWitt Was Fraudulently Joined.**

37.  The Complaint fails to articulate specific allegations against DeWitt and does not allege facts supporting the basic elements of defamation. Because there is no possibility whatsoever that Plaintiff could recover against DeWitt, this Court should find that he was fraudulently joined. *See Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165 (6th Cir. 2005)

---

[3] Although Gannett is alleged in the Complaint to be a citizen of Virginia, it moved its principal place of business to New York in March 2024.

[4] A reading of the Complaint indicates that Gannett is being sued solely as DeWitt's employer, and it is therefore also fraudulently joined; however, Gannett is a non-resident defendant for purposes of diversity jurisdiction and removal in all events. Nevertheless, the Removing Defendants do not waive, and specifically reserve, any defenses and/or arguments regarding the fraudulent joinder of Gannett.

(affirming denial of motion to remand where defamation allegations against non-diverse defendant did not meet all elements of common law defamation).

38.     "The 'fraudulent joinder' doctrine permits removal when a non-diverse party is (or has been) a defendant in the case . . . Under this doctrine, a district court can assume jurisdiction over a case even if, *inter alia*, there are nondiverse named defendants at the time the case is removed." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). "Fraudulent joinder requires neither fraud nor joinder. It is 'a term of art [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists.'" *Benson v. Continental Ins. Co.*, 120 F. Supp. 2d 593, 594 (S.D. W. Va. 2000) (quoting *AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1003 (4th Cir. 1990)).

39.     Where a complaint does not contain allegations entitling it to relief against a defendant, that defendant has been fraudulently joined. *See Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d. 652, 656-57 (D.S.C. 2006) (denying motion to remand where "Plaintiffs have alleged no facts" regarding Wal-Mart's non-diverse employees' conduct but instead "rely only upon [their] employment with Wal-Mart" and there were "no allegations" in the record to fully support theory against non-diverse defendants).

40.     Courts have found fraudulent joinder in cases such as this one, where a complaint fails to articulate specific allegations against a non-diverse defendant and does not allege facts supporting the elements of defamation. *See Boladian*, 123 F. App'x at 165; *Keen v. Wausau Bus. Ins. Co.*, 875 F. Supp. 2d 682, 686 (S.D. Tex. 2012) (worker made no specific factual allegations against adjuster, who was improperly joined to defeat diversity); *Lobato v. Pay Less Drug Stores,*

10

*Inc.*, 261 F.2d 406, 409 (10th Cir. 1958) (denying motion to remand where individual defendants were joined solely to defeat diversity jurisdiction).

41. Application of the fraudulent joinder doctrine is especially appropriate in a defamation action where, as here, it is premised on national publications about matters of public concern. As the courts have recognized,

> First Amendment considerations have special relevance when examined in light of the purposes of diversity and removal jurisdiction. Such jurisdiction is based on the dual goals of avoiding local prejudice and guaranteeing the vindication of federal rights. First Amendment cases involve the application of federal constitutional principles designed to resolve the inherent tension between free speech and privacy rights. In addition, defamation cases often concern media criticism of local citizens, necessitating a forum free of local prejudice. Therefore, the underlying goals of diversity and removal jurisdiction strongly support the retention of jurisdiction in cases involving the First Amendment.

*Med. Lab. Mgmt. Consultants v. ABC*, 931 F. Supp. 1487, 1491 (D. Ariz. 1996) (citations omitted). *See also Lewis v. Time Inc.*, 83 F.R.D. 455, 461 (E.D. Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir. 1983) (chilling effect of defamation suits arising out of speech on a matter of public concern has "special relevance in a removal situation when examined in light of the stated purposes of diversity and removal jurisdiction"); *Dworkin v. Hustler*, 611 F. Supp. 781, 786-87 (D. Wyo. 1985) (First Amendment considerations informed conclusion that defendant should be deemed fraudulently joined); *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 596 & n.7 (E.D. Va. 2005) (citing *Lewis* with approval and observing that federal courts should be wary of remand "when a peculiarly federal interest is implicated," such as the First Amendment).

**D.     Plaintiff Has No Colorable Claim Against DeWitt for Defamation.**

42. Plaintiff's shotgun pleading reflects that no colorable claim exists against DeWitt. Under South Carolina law, to state a cause of action for defamation, a plaintiff must prove (1) a false and defamatory statement of fact; (2) an unprivileged publication to a third party; (3) fault; and (4) either actionability of the statement irrespective of special harm or the existence of special

11

harm caused by the publication. *Stokes v. Oconee Cnty.*, 895 S.E.2d 689, 694 (S.C. Ct. App. 2023).[5]

43.     The allegations forming the basis for Plaintiff's purported claim against DeWitt are found in Paragraph 28 of the Complaint. Plaintiff asserts that four comments by DeWitt in the Series,[6] "[w]hen put in context with the remainder of the documentary," make "clear that *Mr. DeWitt* is falsely accusing the Plaintiff of being involved in the murder of Stephen Smith." (Compl. ¶ 28 (emphasis added).) But Plaintiff's own Complaint reveals the fallacy of such a conclusion. More tellingly, the Complaint effectively concedes that DeWitt has not made any defamatory statement of and concerning *Plaintiff*—in fact, DeWitt never mentioned Plaintiff at all. Contrary to his allegation, it is *Plaintiff* who misleadingly takes DeWitt's comments *out of* context and misquotes several of them.

44.     The main comments by DeWitt that Plaintiff extracts in Paragraph 28 in a feeble attempt to state a claim are all found in the following passage in Netflix Series:

> MICHAEL DEWITT: Within one month of his body being found, we were hearing all these rumors about a possible Murdaugh connection.
>
> And I've learned as a reporter that if you hear the same rumors from different groups of people wherever you go, it's either a very good rumor, or there's some truth to it. So we did our story [in] the Thanksgiving 2015 paper, and Sandy

---

[5] Defendants, none of whom other than DeWitt reside in South Carolina, reserve their right to argue that the law of jurisdictions other than South Carolina applies to all or part of the issues in this case.

[6] Those four comments, as pleaded in the Complaint, are:  [1] "We were hearing all of these rumors about a possible connection"; [2] "There is some truth to it"; [3] "We could not put the Murdaugh name in the story unless we wanted to face lawsuits. We said a prominent well-known family was rumored to be involved. Everyone knew who we were talking about. We published the story and we waited. People would come up to me in the Piggly Wiggly and pat me on the back. We're so thankful you had the courage to run the story. We did everything but put the Murdaugh name in the story"; and [4] "I began to have a bad taste in my mouth about the members of the Murdaugh family as many people in the community did." (Compl. ¶ 28.)

> Smith basically appealed to the community: 'My son was killed. If you know something, please come tell us. We just want answers, we want closure.'
>
> So we could not put the Murdaugh name in a story unless we wanted to face lawsuits. We said a prominent, well-known family was rumored to be involved. Everybody knew who we were talking about. We published the story and we waited. People would come up to me in the Piggly-Wiggly, pat me on the back, We're so thankful you ran that story. So proud of you to have the courage to do it.
>
> I mean, we did everything but put the Murdaugh name in the story, but the story did no good. Nobody ever came forward.

(Ex. 5C, Episode 3 at 10:51 – 11:57.)[7]

45. In his Complaint, Plaintiff misquotes the first statement ("we were hearing all these rumors about a possible Murdaugh connection") by leaving out the word "Murdaugh." The Complaint then misleadingly plucks from their context the words "There is some truth to it," omitting most of DeWitt's actual statement, which is accurately set forth above. (Compl. ¶ 28.) Plaintiff's misquotes and omissions, both of words and context, are troubling; however, neither Plaintiff's version of the statement or the actual statement give rise to a defamation claim.

46. The Complaint also lists an additional comment made by DeWitt: "I began to have a bad taste in my mouth about the members of the Murdaugh family, as many people in the

---

[7] The Series is incorporated into the Complaint by reference, *see, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (court considers "documents attached or incorporated into the complaint"), and the first season is attached hereto as Exhibit 5A – 5C, including the episode containing DeWitt's statements (Episode 3). If there is any conflict between the statements as pleaded and as they actually appear in the Series, the latter controls. *See, e.g., Mungo v. BP Oil, Inc.*, 2012 WL 13005317, at *2 (D.S.C. Dec. 21, 2012) (court does not "accept as true" allegations "that contradict matters properly subject to judicial notice or by exhibit") (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (court may consider "any facts set forth in the complaint that undermine the plaintiff's claim" including "documents referenced in the pleading if they are central to the claim"); *GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) ("factual allegations that contradict such a properly considered document are not well-pleaded facts"). In addition, the Court "is not bound by the allegations of the pleadings, but may instead consider the entire record." *Boss v. Nissan N. Am., Inc.*, 228 F. App'x 331, 335 (4th Cir. 2007) (citations omitted).

community did." (Compl. ¶ 28.) Plaintiff's Complaint omits that this statement was made during an entirely different segment of the Series, which was not discussing or referring to the Stephen Smith murder.

47. As described further below, DeWitt's *actual* comments about the Stephen Smith murder and the Murdaugh family are plainly not false and defamatory assertions of fact, nor are they specifically of and concerning Plaintiff. No colorable defamation claim can possibly arise against DeWitt from these comments.

48. *First*, Plaintiff is not mentioned anywhere in the entire passage, and DeWitt never specifically references Plaintiff. This is fatal to Plaintiff's purported claim, as it is axiomatic that a defamatory statement must be specifically "of and concerning" the Plaintiff to be actionable. *See, e.g.*, *Burns v. Gardner*, 493 S.E.2d 356, 359 (S.C. Ct. App. 1997) (holding that "plaintiff must establish that the defendant's statement referred to some ascertainable person and that the plaintiff was the person to whom the statement referred"); *Stokes*, 895 S.E.2d at 697 (noting that alleged defamatory statements "did not reference Stokes's name and did not communicate any false message about him as an individual," and instead referenced "the Department," "they," and "them"). Whatever may have been said about Plaintiff by anyone else in the Series is beside the point, as any claim against DeWitt can only be based on what DeWitt himself actually said. As a result, there can be no claim against DeWitt based on the statements he made in the Series.

49. DeWitt's comments that, "We were hearing all of these rumors about a possible Murdaugh connection," and, "We said a prominent well-known family was rumored to be involved" in the newspaper article he published, or about the possibility that the newspaper would face lawsuits if the Murdaugh name appeared in the article are not of and concerning Plaintiff. Recounting community speculation about some unspecified involvement of the Murdaugh family

14

generally is not specific to Plaintiff and cannot support the claimed defamation that Plaintiff is guilty of murder. This is particularly true given that the Series discusses in great detail the misdeeds of other members of the Murdaugh family, including Alex Murdaugh, and also reports on Plaintiff's uncle, Randy Murdaugh, inserting himself into the Stephen Smith case (*see* Ex. 5C, Episode 3 at 9:53 – 10:08). As a matter of law, DeWitt's statements are simply not enough for *Plaintiff* to bring a claim against DeWitt.

50. The only other statement by DeWitt that Plaintiff references—"I began to have a bad taste in my mouth about the members of the Murdaugh family as many people in the community did" (Compl. ¶ 28)—also in no way refers to Plaintiff *or* to the Stephen Smith murder. Reviewing this statement in context, as the Court must and Plaintiff has implored, DeWitt is speaking about the reputation of the Murdaugh family in the community—as a result of the behavior of Alex Murdaugh, the infamous disgraced lawyer whose actions are central to the Series. (*See* Ex. 5C at 31:43 – 32:43 (DeWitt discussing coroner asking SLED to investigate the Satterfield death, and "[a]t the same time, SLED has got reason to investigate Alex's financial crimes").)

51. *Second,* DeWitt's comments in the Series are not actionable assertions of fact. *See Blanton v. City of Charleston*, 2014 WL 4809838, at *5 (D.S.C. Sept. 26, 2014) ("Because the Court concludes as a matter of law that none of the three statements at issue can reasonably be interpreted as stating a fact about the plaintiff, the plaintiff has no foundation for his defamation claim against the defendant"). As an experienced journalist sharing what he had heard from multiple sources and what he reported, DeWitt is not asserting the "truth" of any particular statement or rumor—much less one specific to accusing Plaintiff of being involved in Stephen Smith's murder. Under settled law, when, as here, "a speaker plainly expresses 'a subjective view, an interpretation, a theory, conjecture or surmise, rather than claim[s] to be in possession of

15

objectively verifiable facts, the statement is not actionable.'" *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998) (quoting *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1227 (7th Cir. 1993) (cleaned up)). On its face, a "possible" and tenuous connection of an indeterminate nature is the definition of nonactionable "theory, conjecture or surmise," not verifiable fact.

52. Moreover, in addition to not being of and concerning Plaintiff (*see supra*), DeWitt's "bad taste in [his] mouth" comment also is not an assertion of fact, but his own subjective opinion and viewpoint, constitutionally protected and nonactionable as a matter of law. *See, e.g.*, *Lapkoff v. Wilks*, 969 F.2d 78, 82 (4th Cir. 1992) (holding that remark that "personally, I wouldn't trust him as far as I can throw him," was "clearly [speaker's] opinion" and "by any standard, it is protected speech"); *Rollins Ranches, LLC v. Watson*, 2021 WL 1138022, at *8 (D.S.C. Feb. 24, 2021) (finding that references to plaintiffs as "evil people," vaguely accusing them of "lies," "illegal practices," or "break[ing] the law" was protected opinion).

53. DeWitt's statements are thus akin to those at issue in *Woodward v. Weiss*, where the Court held that a doctor's assessment of another's work was "clearly" opinion not fact because he "did not actually treat the patients," and any reader would be "fully aware that Dr. Weiss was not stating facts of which he had personal knowledge, but was opining based on records which were sent to him." 932 F. Supp. 723, 726-27 (D.S.C. 1996); *see also Gibson v. Boy Scouts of Am.*, 163 F. App'x 206, 213 (4th Cir. 2006) (statement "was one of speculation and opinion, and does not support a claim for defamation").

54. Likewise, it is clear from the context that DeWitt was not stating any facts of which he had personal knowledge, but rather, speaking as a local expert about what he had learned about the law enforcement investigation and heard from others in the community. Both DeWitt's comments and the Series as a whole are focused on the power and influence of the Murdaugh

family and how that may have impacted the course of justice in multiple situations, not making factual claims about who actually killed Stephen Smith.

55. *Third*, the statements DeWitt actually made are undeniably true. There *were* rumors that "the Murdaughs" were connected in some way to Stephen Smith's murder, and the reports and audio from the Highway Patrol's investigation of the Stephen Smith case bear that connection out: the Murdaughs' names (including Plaintiff's) were expressly included in them as reported by the Series. (Ex. 5C, Episode 3 at 2:50 – 3:03; 5:35 – 7:04; 9:53 – 10:08; 10:39 – 10:50.) It also is indisputable and now generally known throughout the community that, after the Highway Patrol's investigation was unceremoniously dropped, SLED publicly confirmed in a statement that SLED had reopened the investigation into the Stephen Smith case *based on what it learned in the investigation of the murders of the two members of the Murdaugh family (Plaintiff's mother and brother), crimes for which a third member of the family—Plaintiff's father—ultimately was charged and convicted*. Fed. R. Evid. 201(b).[8] Falsity is a required element of a defamation claim and Plaintiff's burden under the First Amendment. *Stokes*, 895 S.E.2d at 694; *Phila. Newsp., Inc. v. Hepps*, 475 U.S. 767 (1986). Therefore, there are no circumstances under which Plaintiff can maintain a viable claim against DeWitt based on his truthful statements that there were rumors circulating about a Murdaugh connection to the Stephen Smith case.

56. That those rampant rumors were part of an official police investigation highlights the futility of Plaintiff's claims against DeWitt. Reporting the existence of rumors that were shared

---

[8] Under Fed. R. Evid. 201(b), the court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The existence of high profile investigations of one of the most powerful families in the region, and wall-to-wall coverage thereof in the media, are the very definition of facts generally known in the jurisdiction that cannot reasonably be questioned.

17

with law enforcement investigators, implicating a prominent family and potential influence in an investigation, is protected by the First Amendment, not actionable defamation. "Investigations are often important governmental occurrences. Permitting lawsuits for accurate reports of such events would threaten to black out significant news." Hon. Robert D. Sack, Sack on Defamation: Libel, Slander & Related Problems, § 7:3.5(B)(8) (4th Ed.); *Global Relief Found.*, 390 F.3d at 985 (agreeing that "requiring the media to prove the actual and ultimate guilt of the subject of a government investigation would dramatically and improperly chill the ability of the press to report on the actions of government and would deny the public information about matters of vital public concern").

57.   That this type of reporting is not actionable is reinforced by the robust fair report privilege that exists in South Carolina and elsewhere. Under South Carolina law, and laws of the states where other Defendants are located, fair reports of "official acts, reports, and records" are privileged and cannot form the basis of a libel claim. *White v. Wilkerson*, 493 S.E.2d 345, 348 (S.C. 1997) (citation omitted). "The fair report privilege encourages the media to report regularly on government operations so that citizens can monitor them." *Reuber v. Food Chemical News*, 925 F.2d 703, 712 (4th Cir. 1991); *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1096 (4th Cir. 1993) (journalism which "invite[s] the public to ask" questions about matters of public concern is the "paradigm of a properly functioning press").

58.   For these reasons, Plaintiff lacks any colorable defamation claim against DeWitt under South Carolina state law. *See Simmons v. Sci. Int'l Applications Corp.*, CIV.A. 5:11-1426-TLW, 2012 WL 761716, at *2 (D.S.C. Feb. 13, 2012) (dismissing defamation claims where plaintiff "alleged no facts" showing the defendant made any defamatory statements); *McNeil v. S. Carolina Dep't of Corr.*, 404 S.C. 186, 195, 743 S.E.2d 843, 848 (S.C. Ct. App. 2013) (affirming

dismissal where plaintiff did not specify the alleged false statements or to whom they were made); *Sellers v. S.C. Autism Soc'y, Inc.*, 2012 WL 1015807, at *6 (D.S.C. Mar. 23, 2012) (dismissing defamation claims for failing to identify the speaker, statement, third parties, privilege, or damages).

59. The allegations against DeWitt, which on their face do not satisfy all elements of a defamation claim as a matter of law, serve no purpose other than to destroy diversity jurisdiction. *See Boladian v. UMG Recordings, Inc.*, 123 F. App'x 165, 167 (6th Cir. 2005) (affirming denial of motion to remand where defamation allegations against non-diverse defendant did not meet all elements of common law defamation, thereby establishing fraudulent joinder).

60. Because Plaintiff has not alleged any facts that could potentially give rise to a colorable defamation claim against DeWitt, he is a sham Defendant, and removal is proper.

## CONCLUSION

61. Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction over this action under 28 U.S.C. §§ 1441 and 1446 because, for the reasons set forth above, the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity between Plaintiff and non-fraudulently joined Defendants who are citizens of different states.

62. The Removing Defendants, by filing this Notice of Removal, do not waive any defenses or objections available under the law. The Removing Defendants reserve the right to amend or supplement this Notice of Removal.

WHEREFORE, Defendants request that the above-captioned action pending in the Court of Common Pleas, County of Hampton, State of South Carolina, be removed to this Court.

By: s/*John T. Lay, Jr*.
John T. Lay, Jr. (Fed ID 5539)
Jessica W. Laffitte (Fed ID 11846)
Oleysa V. Bracey (Fed ID 11767)
Gallivan, White & Boyd, P.A.
PO Box 7368
Columbia, SC 29202-7368
(803) 779-1833
jlay@gwblawfirm.com
jlaffitte@gwblawfirm.com
obracey@gwblawfirm.com

*and*
By: s/*Natalie Spears*
Natalie J. Spears (*pro hac vice forthcoming*)
Jacqueline A. Giannini (*pro hac vice forthcoming*)
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
Phone: (312) 876-8000
natalie.spears@dentons.com
jacqui.giannini@dentons.com

***Attorneys for Defendants***
***Netflix, Inc. and The Cinemart LLC***

September 9, 2024