**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | |
|---|---|
| RICHARD ALEXANDER MURDAUGH, JR., <br><br> Plaintiff, <br><br> -versus- <br><br> BLACKFIN, INC., WARNER BROS. DISCOVERY, INC., WARNER MEDIA ENTERTAINMENT PAGES, INC., CAMPFIRE STUDIOS INC., THE CINEMART LLC, NETFLIX, INC., GANNETT CO., INC. AND MICHAEL M. DEWITT, JR., <br><br> Defendants. | Civil Action No. 9:24-cv-04914-RMG <br><br><br> **ALTERNATIVE MOTION TO SEVER BY THE WARNER DEFENDANTS** |

Defendants Warner Bros. Discovery, Inc. ("Warner Discovery"), Warner Media Entertainment Pages, Inc. ("Warner Media") (collectively, the "Warner Entities"), Blackfin, Inc. ("Blackfin"), and Campfire Studios Inc. ("Campfire") (collectively, the "Warner Defendants"),[1] by and through its undersigned attorneys, and pursuant to the Federal Rules of Civil Procedure ("Rules"), hereby move in the alternative to the Notices of Removal filed by the Warner Defendants (ECF 12) and by Defendants The Cinemart LLC and Netflix, Inc. ("Netflix") (collectively, the "removing Netflix Defendants") (ECF 1), respectively.

As referenced in the removing Netflix Defendants' Notice of Removal, the Warner Defendants consent to, support, and fully join in the Notice of Removal filed by the removing Netflix Defendants. For the reasons set forth in both Notices of Removal, namely the fraudulent

---

[1] As addressed in the Warner Defendants' Answers to Local Rule 26.01 Interrogatories, the Warner Defendants do not concede that Plaintiff has named the correct parties as Defendants and reserve the right to raise such argument at an appropriate time. The Warner Defendants also do not waive any argument as to personal jurisdiction.

joinder of Defendant Michael DeWitt, which would improperly divest this Court of its proper jurisdiction, the case should be removed to and remain before this Court.

Nevertheless, should this Court decline to permit removal on this ground, the Warner Defendants respectfully move for an Order severing the causes of action by Richard Alexander Murdaugh, Jr. ("Plaintiff") against the Warner Defendants from the causes of action asserted against Defendants The Cinemart LLC, Netflix, Gannett Co., Inc., and Michael M. DeWitt, Jr. (collectively, the "Netflix Documentary Defendants"),[2] pursuant to Rules 20 and 21 and 28 U.S.C. § 1441(c)(2), and retaining the claims asserted against the Warner Defendants pursuant to 28 U.S.C. § 1332(a).

## PRELIMINARY STATEMENT

Plaintiff has forum shopped this lawsuit against seven non-resident media defendants and one resident local newspaper editor into Hampton County, where the Murdaugh family launched its dynasty more than a century ago and has since become synonymous with power and the law. His claims arise from three entirely separate documentaries—two distributed by the Warner Entities and another by Netflix—and allege that they are defamatory based on different statements published in different contexts.[3] To land in Hampton County, Plaintiff improperly attempts to lump the documentaries, and the Defendants, together in a single case.

---

[2] This Motion collectively refers to these four defendants as "the Netflix Documentary Defendants" for the purposes of distinguishing the Warner and Netflix documentaries *only* and is not intended to reflect a position with respect to the relationship or alignment of the individual defendants included therein. As set forth in the removing Netflix Defendants' Notice of Removal, Defendant DeWitt (who is interviewed in the Netflix documentary) is a sham defendant who was sued in this action (along with his employer Gannett) in an attempt to defeat diversity jurisdiction as to all of the other Defendants—all of whom are non-residents.

[3] *See* ECF 1-1 at 6-15 ("Complaint"); *compare* Compl. ¶¶ 19-24, *with id.* ¶¶ 25-28.

The Warner Entities—together with the production companies of the two related documentaries—respectfully ask this Court to exercise its vast discretion to sever Plaintiff's claims against them from the ones against the Netflix Documentary Defendants. The Court may do so pursuant to three overlapping legal theories. *First*, Plaintiff has violated Rule 20 by improperly joining an action to determine liability for alleged defamation against the Warner Defendants with an action to determine liability for alleged defamation by the Netflix Documentary Defendants. *Infra* Argument § I. *Second*, the procedural misjoinder (also called fraudulent misjoinder) doctrine necessitates severance where, as here, a plaintiff sues various defendants, one of which defeats diversity jurisdiction, based on claims that have "no real connection" to each other. *Infra* Argument § II. *Third*, and independently, Rule 21 affords this Court the discretion to sever the claims against the Warner Defendants from those against the Netflix Documentary Defendants based on a variety of factors, most critically that the Warner Defendants would suffer prejudice by being forced to defend themselves in connection with their own, separate documentaries alongside unrelated statements and publications. *Infra* Argument § III.

Plaintiff's claims against the Warner Defendants stand alone, and he should not be permitted to manipulate the legal system in contravention of the Rules in order to litigate them all together in his preferred forum. Accordingly, if this Court rejects the other bases for removal articulated in the Warner Defendants' and the removing Netflix Defendants' concurrently filed Notices of Removal, the Court should exercise its substantial discretion to sever the distinct claims against the Warner Defendants.[4]

---

[4] For purposes of this Alternative Motion, the Warner Defendants are seeking severance from the Netflix Documentary Defendants solely based on the arguments articulated herein. However, the Warner Defendants reserve rights to seek additional severance in the future on any grounds that may exist under law and/or the Rules.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Plaintiff's Complaint

On June 14, 2024, Plaintiff filed a single complaint against seven non-resident corporate Defendants and one resident individual Defendant in the Court of Common Pleas for Hampton County, South Carolina in connection with three independent documentaries.[5] All removing Defendants timely filed a Notice of Removal to the Beaufort Division of the South Carolina District Court on September 9, 2024.[6]

Plaintiff is alleged to be a resident of South Carolina and Hampton County, although the Complaint does not plead any allegations as to his domicile.[7] Each of the Warner Defendants (and each of the other corporate Defendants, *see* ECF 1 ¶¶ 31-33) is and was at the time of filing of the Complaint and Notices of Removal a corporation organized and existing under the laws of a state other than South Carolina. Specifically, Blackfin is incorporated under the laws of New York with its principal place of business in New York.[8] Warner Discovery is incorporated under the laws of Delaware with its principal place of business in New York.[9] Warner Media is incorporated under the laws of Georgia with its principal place of business in Georgia.[10] Campfire is incorporated under the laws of California with its principal place of business in California.[11]

---

[5] *See generally* Compl.

[6] *Id.*

[7] *See* Will Folks, *Buster Murdaugh Settles Down In Bluffton*, FITSNEWS, June 22, 2023, https://www.fitsnews.com/2023/06/22/buster-murdaugh-settles-down-in-bluffton/. "[A]t any stage of the proceeding," the Court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

[8] Compl. ¶ 1.

[9] Compl. ¶ 3.

[10] Compl. ¶ 5.

[11] Compl. ¶ 7.

While the Complaint does not plead any causes of action, it appears that Plaintiff is attempting to assert a single claim against each of the Defendants for defamation.[12] Plaintiff's Complaint as to the Warner Defendants arises from two documentaries: (1) "Murdaugh Murders: Deadly Dynasty," which the Complaint alleges Blackfin produced and Warner Discovery aired on discovery+ and the Investigation Discovery television channel; and (2) "Lowcountry: The Murdaugh Dynasty," which the Complaint alleges Campfire produced and the Warner Entities aired on HBO Max (together, the "Warner Documentaries").[13] Plaintiff's allegations related to alleged defamation by the Netflix Documentary Defendants all arise from *a completely separate series* entitled "Murdaugh Murders: A Southern Scandal" (the "Netflix Documentary").[14]

### B.     Defendants' Notices of Removal

Concurrently with this motion, the Warner Defendants and the removing Netflix Defendants have each sought removal of this action pursuant to 28 U.S.C. 1441(a), based on diversity jurisdiction under 28 U.S.C. 1332(a) (respectively, the "Warner Defendants' Notice of Removal" and the "removing Netflix Defendants' Notice of Removal"). In their Notice of Removal, the Warner Defendants demonstrate that the requirements of Section 1332(a) are met in that the amount in controversy well exceeds the $75,000 jurisdictional threshold of this Court, and that complete diversity exists between all Defendants that were properly joined.[15]

---

[12] The Warner Defendants reserve all rights to challenge the Complaint as inadequately pleaded, and the characterization of Plaintiff's claims provided in relation to this motion does not waive, forfeit, or otherwise affect those reservations.

[13] Compl. ¶¶ 19-24.

[14] Compl. ¶¶ 25-28.

[15] The Warner Defendants incorporate here by reference the discussion of diversity of citizenship in the Warner Defendants' Notice of Removal, which taken together with this filing satisfies the requirements of 28 U.S.C. § 1332.

With respect to diversity, the Warner Defendants' Notice of Removal and the removing Netflix Defendants' Notice of Removal explain that Plaintiff cannot recover against Michael M. DeWitt, Jr.—one of the Netflix Documentary Defendants in this action and the only defendant with residency in South Carolina[16]—and this Court should find that the allegations against DeWitt serve no purpose other than to destroy diversity jurisdiction and conclude that he was fraudulently joined and that removal is proper. *See* ECF 1, 12; *Benson v. Continental Ins. Co*., 120 F. Supp. 2d 593, 594 (S.D. W. Va. 2000) (fraudulent joinder is "a term of art [which] does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against [a] nondiverse defendant, or in fact no cause of action exists") (quoting *AIDS Counseling and Testing Centers v. Group W Television, Inc*., 903 F.2d 1000, 1003 (4th Cir. 1990)); *Benjamin v. Wal-Mart Stores, Inc*., 413 F. Supp. 2d. 652, 656-57 (D.S.C. 2006); *Thomas v. Tramaine-Frost*, 2017 WL 9287004, at *3 (D.S.C. Jan. 12, 2017).

The Warner Defendants respectfully urge the Court that removal is appropriate on the fraudulent joinder grounds articulated in the Defendants' respective notices of removal, but submit this motion as an alternative ground on which this Court has jurisdiction, should the Court disagree.

## LEGAL STANDARD

District courts have wide discretion to sever parties. *Cramer v. Walley*, 2015 WL 3968155 at *4-5 (D.S.C. June 30, 2015) (a "court severing claims against parties to a suit under Rule 21 has 'virtually unfettered discretion in determining whether or not severance is appropriate'") (*citing Grayson Consulting, Inc. v. Cathcart*, 2014 WL 1512029, at *2 (D.S.C. Apr. 8, 2014)). There are various grounds on which a court can exercise that discretion.

---

[16] Compl. ¶ 16.

Rule 20 permits joinder of defendants only where: "(1) a plaintiff has asserted any right to relief jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences *and* (2) if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a) (emphasis added). As this Court recently stated, "a court cannot ignore Rule 20's requirements. If Rule 20's requirements are not met, and defendants are deemed improperly joined, the court 'on motion or on its own ... may at any time, on just terms ... drop a party.'" *Sanders v. Domingo*, 2022 WL 110243, at *2 (D.S.C. Jan. 11, 2022). Severance is appropriate where Rule 20 is not satisfied, so long as no substantial right will be prejudiced by the severance. *Cramer*, 2015 WL 3968155, at *5 ("[T]he plain language of [Rule] 20 does not permit Plaintiff to join these independently viable claims together in the same lawsuit."); *see also Vereen v. DaShields*, 2024 WL 3656492, at *2 (D.S.C. May 16, 2024) ("Given the apparent misjoinder under Rule 20(a)(2), the court finds severance appropriate here."); *Wright v. Waste Pro USA, Inc.*, 2019 WL 5896516, at *5 (D.S.C. Nov. 12, 2019) ("To avoid the confusion that would result from the continued joinder of these distinct claims and to ensure that each defendant understands the wrongs alleged against it, severance is appropriate."); *Black v. Safeco Ins. Co. of Am.*, 2019 WL 4565047, at *2 (D.S.C. Sept. 20, 2019).

Further, severance is the appropriate remedy in the context of procedural misjoinder. *See Tramaine-Frost*, 2017 WL 9287004, at *3; *Trees v. Pfizer Inc.*, 2016 WL 11540619 (D.S.C. Aug. 18, 2016). Procedural misjoinder is "an assertion that claims against certain defendants, while provable, have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal." *Tramaine-Frost*, 2017 WL 9287004, at *2 (citing *Wyatt v. Charleston Area Med. Ctr., Inc.*, 651 F. Supp. 2d 492, 496

(S.D. W. Va. 2009)); *Cramer*, 2015 WL 3968155, at *4. Under the doctrine, the district court is permitted to disregard citizenship of certain non-diverse defendants for jurisdictional purposes, retain jurisdiction, and sever the case. *Cnty. Comm'n of McDowell Cnty. v. McKesson Corp.*, 263 F. Supp. 3d 639, 643-44 (S.D. W. Va. 2017) (acknowledging procedural misjoinder as one of two doctrines that "permit[] the court to disregard the citizenship of improperly joined parties"). "[T]he prevailing standard is whether there is a 'reasonable possibility that a state court would find that [the plaintiffs'] claims against [one set of defendants] were properly joined with [the] claims against the other defendants'"—in other words, the same analysis as under Rule 20. *Tramaine-Frost*, 2017 WL 9287004, at *2.[17]

Last, "Rule 21 allows a court to 'sever any claim against a party,' even when that claim has been properly joined." *Grayson Consulting, Inc.*, 2014 WL 1512029, at *2; *Sanders*, 2022 WL 110243, at *2 ("A district court also possesses broad discretion in ruling on a requested severance under Fed. R. Civ. P. 21."). Rule 21 empowers district courts to, on motion or its own, drop or sever a party from a case to establish diversity between the remaining parties. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("[I]t is well settled that Rule 21 invests district courts with authority to allow a dispensable non-diverse party to be dropped at any time…."). Severing under Rule 21 is appropriate to avoid confusion, prejudice, expense, or delay. *See Aleman v. Chugach Support Servs., Inc.*, 485 F.3d 206, 218 n.5 (4th Cir. 2007) (affirming denial of motion to amend complaint to join new defendant, noting that "[t]he court has discretion to deny joinder if it determines that the addition of the party under Rule 20 will not foster the objectives of the rule, but will result in prejudice, expense, or delay") (quoting 7 Charles Alan Wright, Arthur R.

---

[17] The majority of courts in the Fourth Circuit has rejected any element of "egregiousness or a bad faith attempt" to use the non-diverse party to destroy diversity, and the Fourth Circuit has not weighed in on the question. *Tramaine-Frost*, 2017 WL 9287004, at *3 (citations omitted).

Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1652 (3d ed. 2001)); *Ballentine v. Town of Coats*, 2012 WL 4471605, at *4 (E.D.N.C. Sept. 26, 2011) (citing *Arnold v. Eastern Air Lines*, 681 F.2d 186, 193 (4th Cir. 1982)) ("Determining proper joinder is only the beginning of the inquiry. When considering a motion to sever, a district court must also weigh the risks of prejudice and possible confusion posed by allowing claims to proceed together in a single action.").

Courts have specifically discussed four factors to assist in the assessment of whether or not severance is appropriate under Rule 21: (1) whether the issues sought to be severed are significantly different from one another; (2) whether the issues require different witnesses and evidence; (3) whether the party opposing severance will be prejudiced; and (4) whether the party requesting severance will be prejudiced if the claims are not severed. *Cramer*, 2015 WL 3968155, at *5. This Court has highlighted the fourth factor in particular as encompassing the risk of "prejudicial evidence and argument [that] may bias and affect the fact-finder's determinations." *Id.*

## ARGUMENT

The Court can, and should, exercise its discretion and sever the Warner Defendants. Rule 20 warrants severance because Plaintiff improperly joined the Warner and Netflix Defendants. *Infra* § I. For the same reason, the Plaintiff's procedural misjoinder of parties in this case mandates severance. *Infra* § II. Last, even should this Court find joinder was proper, this Court's discretionary authority under Rule 21 nonetheless justifies severance because all of the factors, especially the most crucial relating to the prejudice that the Warner Defendants and the Netflix Documentary Defendants would suffer in the absence of severance, favor doing so. *Infra* § III.

I.     **SEVERANCE IS WARRANTED BECAUSE PLAINTIFF IMPROPERLY JOINED THE WARNER AND NETFLIX DEFENDANTS IN VIOLATION OF RULE 20.**

Plaintiff's attempt to join together the Warner and Netflix Defendants violates Rule 20 because his claim to relief against each group of defendants does not arise out of the same transaction or occurrence. Claims arise out of the same transaction or occurrence only if they are "reasonably related claims for relief." *See Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (per curiam) (citation omitted). Plaintiff has not asserted any right to relief against the Warner and Netflix Defendants jointly, severally, or in the alternative. Rather, Plaintiff is asserting a claim against each of the Warner Defendants in connection with the Warner Documentaries, and is separately asserting a claim against each of the Netflix Documentary Defendants in connection with the Netflix Documentary.

Plaintiff does not assert—nor could he—that any of the Warner Defendants contributed to the alleged defamatory statements in relation to the Netflix Documentary, or (vice versa) that any of the Netflix Documentary Defendants contributed to the alleged defamatory statements in relation to the Warner Documentaries. Nor do Plaintiff's respective claims against the Warner and Netflix Defendants arise from the same transaction or occurrence. While Plaintiff asserts defamation claims against all of the Defendants, the bases for these claims are completely distinct: the Warner Documentaries with respect to the Warner Defendants, and the Netflix Documentary with respect to the Netflix Documentary Defendants.[18] Even were any of Plaintiff's claims meritorious (which they are not), he must file stand-alone lawsuits against each set of defendants because there is no overlapping form of relief or interest justifying the Defendants being joined in the same action. *See* Fed. R. Civ. P. Rule 19 ("Required Joinder of Parties"); Fed. R. Civ. P. Rule 20 ("Permissive Joinder of Parties").

---

[18] Compl. ¶¶ 19-28.

The fact that each documentary addresses circumstances surrounding the Murdaugh family, and includes short segments about the death of Stephen Smith, does not mean that the respective defamation claims arise out of the same transaction or occurrence. To the contrary, courts find claims misjoined where, as here, plaintiffs fail to demonstrate that the claims stem from related purported misconduct.

For instance, in *Sanders v. Domingo*, this Court considered whether the plaintiff had misjoined breach of contract and bad faith claims against an insurance company and tort and *respondeat superior* claims against the owners and driver of a vehicle that had collided with Plaintiff's car. 2022 WL 110243, at *1, *3. The insurer removed the action and sought to sever the causes of action from the non-diverse defendants. *Id.* at *1. The Court determined that Plaintiff's tort claims arose out of the damage resulting from the accident, whereas Plaintiff's claims against the insurer stemmed from the separate insurance policy between them. *Id.* at *3. Thus, the Court concluded that "[w]hile the underlying car accident provided the basis for Plaintiff's insurance claim, the independent nature of these separate transactions is not enough to inextricably intertwine" the claims. *Id.*

This and other courts in the Fourth Circuit have regularly concluded the same. *See Clements v. Austin*, 617 F. Supp. 3d, 373, 375, 377 (D.S.C. 2022) (severing where "[e]ach claim involve[d] a challenge to a mandatory vaccination policy," and thus had "some overlapping issues" because "the differences in each individual case would predominate"); *Battle v. S.C. Dep't of Corr.*, 2019 WL 926415, at *8 (D.S.C. Feb. 26, 2019) (finding that "separate and distinct incidents that involve different Defendants at different times" are not reasonably related claims and do not arise out of the same transaction or occurrence); *Black*, 2019 WL 4565047, at *3 (concluding that "Plaintiff's allegations, and the one common storm, are not enough to inextricably intertwine"

claims against separate defendants); *Garrett v. Stirling*, 2018 WL 4403388, at *4 (D.S.C. Sept. 17, 2018) (affirming the magistrate ruling that several "separate and distinct incidents" that occurred at different locations are not claims that arise out of the same transaction or occurrence); *Stephens v. S.C. Dep't of Corr.*, 2018 WL 4680264, at *3 (D.S.C. Sept. 28, 2018) (granting motion to sever because the "factual dissimilarities are myriad" such that the court cannot conclude the claims arose out of the same transaction or occurrence); *see also DIRECTV, Inc. v. Boggess*, 300 F. Supp. 2d 444, 449-50 (S.D. Va. 2004) (finding misjoinder among a potential group of defendants accused of purchasing pirate access devices where plaintiff failed to claim "that the defendants acted in concert or that the transactions were closely related" because "the plaintiff's allegations amount[ed] to no more than a claim that ten unrelated defendants engaged in distinct and unrelated conduct").

Nor does the fact that Plaintiff appears to assert the same cause of action for defamation against all of the Defendants mean that the claims arise out of the same transaction or occurrence. To the contrary, courts regularly sever cases on the basis of misjoinder even where the exact same claims are brought against later severed defendants. *See, e.g.*, *Saval*, 710 F.2d at 1031 (affirming misjoinder and severance of two separate warranty claims brought by two separate complainants); *see also Stephens*, 2018 WL 4680264, at *3 ("[B]road similarities in Plaintiffs' claims are insufficient to label each Plaintiff's claim as part of the same transaction or occurrence."); *Forrest v. Charles River Lab'ys*, 2019 WL 13259407, at *2 (D.S.C. Mar. 11, 2019) ("[C]onsolidation of claims is not appropriate where the claims at issue are in fact separate claims based on totally separate actions alleged to have been committed at different times and involving different individuals."); *accord Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) ("[T]he existence

of a common allegation …, in and of itself, does not suffice to create a common transaction or occurrence.").

Because Plaintiff's claims for defamation depend on the unique statements allegedly made in each documentary, the claims do not arise from the same transaction or occurrence. Determining whether the Warner Defendants defamed Plaintiff will require statement-by-statement analysis of the alleged defamatory content in the two Warner Documentaries. An entirely separate statement-by-statement analysis will be required for the Netflix Documentary. In addition, the Court must separately determine whether each allegedly defamatory statement was privileged or true, and whether each Defendant acted with common law or actual malice. *See Wise v. INVISTA S.Á.R.L.*, 2017 WL 9275298 (D.S.C. Aug. 31, 2017), *report and recommendation adopted*, 2018 WL 525475, at *3 (D.S.C. Jan. 23, 2018) (referencing "detailed allegations regarding who made the statements, to whom they were made, *and the context in which they were made*" with respect to defamation claims) (emphasis added).[19] In other words, even to the extent Plaintiff believes that the two Warner Documentaries and the Netflix Documentary contain certain similar or identical defamatory statements, the analysis of whether the statement in a given documentary is defamatory is nonetheless entirely individualized. Plaintiff's failure to satisfy the "transaction or occurrence" test is dispositive under Rule 20(a)(1) and warrants severance. *See Saval*, 710 F.2d at 1031-32 (affirming misjoinder ruling on basis of "transaction or occurrence" prong alone); *Forrest*, 2019 WL 13259407, at *2 ("[U]nder Rule 20, if the claims arise out of different transactions and do not involve all defendants, joinder should not be allowed.") (citation omitted). The Court need not engage in any further inquiry to grant the Warner Defendants' motion to sever. *See Cramer*, 2015

---

[19] The Warner Defendants do not concede that South Carolina law applies to either or both of the Warner Documentaries and reserves all related rights.

WL 3968155, at *5; *Todd v. Cary's Lake Homeowners Assoc.*, 315 F.R.D. 453, 457-59 (D.S.C. 2016); *Vereen v. DaShields*, 2024 WL 3656492, at *2 (D.S.C. May 16, 2024) (granting the motion to sever due to the "apparent misjoinder under Rule 20(a)(2)").

## II.      SEVERANCE IS APPROPRIATE PURSUANT TO THE PROCEDURAL MISJOINDER DOCTRINE.

Severance pursuant to procedural misjoinder is appropriate where, as here, the claims against the Warner Defendants "have no real connection to the claims against" Defendant DeWitt, whose sham presence alone destroys diversity. *Tramaine-Frost*, 2017 WL 9287004, at *2 (citing *Wyatt*, 651 F. Supp. 2d at 496); *Cramer*, 2015 WL 3968155, at *3-4; *see also Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d at 777, 780-81 (S.D. Miss. 2003).

Courts in this Circuit and beyond have analyzed procedural misjoinder under the same rubric as Rule 20, and it applies to this case for the reasons discussed above. *Supra* Argument § I. While the Warner Defendants again argue that Defendant DeWitt was fraudulently joined for the reasons set forth in the removing Netflix Defendants' Notice of Removal, it is even plainer that Defendant DeWitt was fraudulently joined with respect to the Warner Defendants specifically. In particular, Plaintiff's claims against the Warner Defendants are wholly divorced from any occurrences or transactions pertaining to Defendant DeWitt, and the case- and content-specific nature of Plaintiff's defamation claims preclude any determination that there is overlap between the causes of actions against the Defendants that would merit a finding of joinder in this case. *See Cramer*, 2015 WL 3968155, at *4 (finding procedural misjoinder where claims between defendants were "wholly distinct"); *Cnty. Comm'n of McDowell Cnty.*, 263 F. Supp. 3d 639, 645, 647 (S.D.W. Va. 2017) (finding "the weight of authority [in the 4th Circuit] accepts the doctrine" of fraudulent misjoinder and determining it is present in the instant case because the claims against the defendants had "no common questions of law or fact"); *Smith v. Nationwide Mut. Ins. Co.*, 286

14

F. Supp. 2d 777, 781 (S.D. Miss. 2003) ("In this court's view, the plaintiff[s] have combined unrelated lawsuits resulting in a fraudulent misjoinder of claims to defeat this court's jurisdiction."). The Court's finding that procedural misjoinder applies here would be in keeping with a growing line of decisions by this Court. *See Todd*, 315 F.R.D. at 457-59; *Tramaine-Frost*, 2017 WL 9287004, at *3; *Cramer*, 2015 WL 3968155 (remanding non-diverse claims but severing removable claim); *Hill v. Kinloch*, 2015 WL 1943771 (D.S.C. Apr. 29, 2015) (severing and remanding non-diverse claim, and staying federal action).

Moreover, the Court should consider the effect of Plaintiff's joining the Defendants. *Tramaine-Frost*, 2017 WL 9287004, at *3 (relying *inter alia* on Fourth Circuit case law for proposition that the procedural misjoinder analysis "comports with the Court's direct and streamlined approach to jurisdictional disputes" and "steer[ing] litigation to the proper forum with a minimum of preliminary fuss") (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) (first quotation and internal quotation marks omitted)). Unless the Court properly determines that Plaintiff fraudulently joined DeWitt, or severs this case, the Warner Defendants and Netflix Documentary Defendants will be forced to litigate in the county where Plaintiff's name is a household one—where public reporting has documented the influence and legacy of the Murdaugh family and where the former law firm of Plaintiff's incarcerated father continues to operate[20]—and as to the Warner Defendants, based on the presence of a single individual defendant

---

[20] *See* Valerie Bauerlein, *The Dark Secrets of the Murdaugh Family Dynasty*, WALL STREET JOURNAL (Aug. 9, 2024), https://www.wsj.com/us-news/law/the-dark-secrets-of-the-murdaugh-family-dynasty-f2a5b; Freeman Stoddard, *Alex Murdaugh's former law firm named Business of the Year in Hampton Co.*, FOX CAROLINA (Jan. 30, 2024), https://www.foxcarolina.com/2024/01/30/alex-murdaughs-former-law-firm-named-business-year-hampton-co/.

whose claims have *nothing* to do with the Warner Documentaries. The Court should exercise its

right to sever the Warner Defendants' claims pursuant to the procedural misjoinder doctrine.

**III.     THIS COURT SHOULD EXERCISE ITS DISCRETION UNDER RULE 21 AND SEVER CLAIMS AS TO THE WARNER DEFENDANTS.**

Courts regularly consider four factors when severing under Rule 21: (1) whether the issues

sought to be severed are significantly different from one another; (2) whether the issues require

different witnesses and evidence; (3) whether the party opposing severance will be prejudiced; and

(4) whether the party requesting severance will be prejudiced if the claims are not severed. Each

factor supports severance here.

### A.     The Issues Sought to Be Severed Are Significantly Different from One Another.

As discussed above, Plaintiff's claims against the Warner and Netflix Defendants arise out

of two entirely different sets of documentaries. Defamation requires analysis of specific statements

in the specific context in which they were published, as well as an individualized inquiry into the

mental state of the publishers. There is no overlap in alleged liability between the Warner

Defendants and the Netflix Documentary Defendants, and the claims against them will rise and

fall based on the specific statements (or inferences) that occur in each of the respective

documentaries. *Wise*, 2017 WL 9275298, at *3. Whether the Netflix Documentary Defendants are

liable to Plaintiff is inapposite to the question of whether the Warner Defendants have any liability

for their separate publications (and vice versa). Rule 21's first factor is easily met here.

### B.     The Issues Require Different Witnesses and Evidence.

For similar reasons, and if the case proceeds, assessing the liability of the Warner

Defendants will require different witnesses and evidence than will assessing the liability of the

Netflix Documentary Defendants. The Complaint does not allege overlap between the creation,

production, streaming, or broadcasting among the Warner Defendants on the one hand, and the

Netflix Documentary Defendants on the other. All witnesses and evidence about the publication of the documentaries and whether the current eight defendants acted with the requisite fault will be entirely separate. While there may be some overlapping witnesses going to the truth of certain statements within the Defendants' respective documentaries—including, for example, law enforcement, individuals who told law enforcement that Plaintiff was involved in the killing of Stephen Smith, and Plaintiff himself—the overlapping of some witnesses does not change the fact that there will be many other different witnesses and evidence. *See Goss v. Stirling*, 2018 WL 7254606, at *4 (D.S.C. Nov. 30, 2018), *report and recommendation adopted*, 2019 WL 244708 (D.S.C. Jan. 17, 2019) (severing claims despite noting that there "may be witness overlap on some of the claims to be severed"); *Phillips v. Shaw Constructors, Inc.*, 2013 WL 3776509, at *3 (D.S.C. July 17, 2013) ("Common witnesses alone ... do not indicate common questions of fact.").

In any event, the Warner Defendants and the Netflix Documentary Defendants, along with Plaintiff, could and would work cooperatively to minimize any burden on any of the limited overlapping witnesses. At a minimum, this factor is neutral.

### C.     Plaintiff Will Not Be Prejudiced By Severance.

Given the disparate nature of the claims as between the sets of defendants, Plaintiff would not suffer prejudice, let alone prejudice of a "substantial right," by litigating against the Warner Defendants—who all are represented by a single law firm, but not the same counsel representing the Netflix Documentary Defendants—in federal court. *See Sehler v. Prospect Mortg., LLC*, 2013 WL 6145705, at *2 (E.D. Va. Nov. 21, 2013) (quoting *Sabolsky v. Budzanoski,* 457 F.2d 1245, 1249 (3d Cir. 1972)).

Whether in state or federal court, Plaintiff will be dealing with different claims against different parties represented by different counsel represented by different lawyers. Plaintiff's

choice to sue so many different defendants does not guarantee him the right to litigate claims against all of them in the same forum.

Plus, severance will economize and expedite the litigation. *See Gregory v. FedEx Ground Package Sys., Inc.*, 2012 WL 2396873, at *13 (E.D. Va. May 9, 2012), *report and recommendation adopted*, 2012 WL 2396861 (E.D. Va. June 25, 2012) (invoking Rule 21, stating, "[s]everance assures that to the extent discovery disputes arise in the context of individual plaintiffs, they can be resolved without delaying proceedings for the remaining plaintiffs" and concluding that severance would "allow the parties to better articulate their individualized claims and defenses, which will ultimately foster swifter resolution for all involved"). Conversely, if all of Plaintiff's claims against the eight Defendants spanning three documentaries proceed together, there likely will be obstacles in scheduling discovery and dealing with various discovery disputes (although the parties would work cooperatively as appropriate to minimize any duplicative discovery). *See, e.g.*, *Sykes v. Bayer Pharm. Corp.*, 548 F. Supp. 2d 208, 219 (E.D. Va. 2008) (denying joinder of additional defendant because, among other reasons, it "would significantly expand the scope of discovery in this suit, prolonging the case and prejudicing [existing defendant]"). Unnecessary delay is a particular risk here, where due to the nature of defamation claims and the requirement to consider the specific statements and context of each documentary, there may be certain threshold issues for the Warner Defendants that are not an issue for the Netflix Documentary Defendants, and vice versa. *See Todd*, 315 F.R.D. at 459 (finding it "reasonable to imagine the ways in which Defendant might be prejudiced in having the claims against it joined with the separate and unrelated claims of tort liability of the three other Defendants," and that "the only potential 'prejudice' Plaintiff points to is the 'unfair[ness]' to it for possibly having to re-litigate the question of negligence, that which is unlikely since, again, the first-party coverage claims against Defendant

have little to do with any potential tortious activity that contributed to Plaintiff's damaged property"); *Wise*, 2017 WL 9275298, at *3; *Clements*, 617 F. Supp. 3d at 376-77 (severing claims brought by multiple plaintiffs which would prove "unwieldy and unmanageable" in a single action); *Lyles v. Schaible*, 2022 WL 981935, at *4 (E.D. Va. Mar. 30, 2022) (severing claims and noting that "[p]romoting the interests of judicial economy does not always presuppose that one trial is better than two. For if one trial may demand more time and resources due to the flurry of differing facts and circumstances, it may invite unnecessary complexities and unwelcome legal costs").

In sum, Plaintiff will not be prejudiced by litigating against the Defendants he chose to sue, in two forums rather than one.

### D.    The Warner Defendants Will Be Prejudiced Without Severance.

The fourth, and most critical, factor strongly favors severance because the Warner Defendants *and* the Netflix Documentary Defendants will suffer prejudice without it. It is highly likely that any jury would conflate the documentaries at issue, and the statements made therein, as well as the defendants involved in each. *See Sanders*, 2022 WL 110243, at *4 (finding that claims against one defendant could make the jury find against the other defendant "for no reason other than their resulting sympathy for Plaintiff"); *Todd,* 315 F.R.D. at 459 (a jury's findings as to one defendant "could very easily be influenced by a jury sympathetic to Plaintiff after a separate potential jury finding" for the other defendants); *see also Latson v. Clarke*, 2016 WL 11642365, at *6 (E.D. Va. Oct. 14, 2016) (severing claims where it would be "prejudicial for the factual allegations against [one defendant] to be conflated with the allegations against the [other] Defendants").

Among other issues, to the extent Plaintiff seeks to prove that any such statements were made with actual malice, including to obtain punitive damages, as his pleadings indicate, there is

a high risk of the jury's findings being applied to all Defendants. In analogous cases, such potential for confusion counsels in favor of severance. *See Saval*, 710 F.2d at 1031 ("Quite probably, severance would have been required in order to keep straight the facts pertaining to the separate automobiles."); *Todd*, 315 F.R.D. at 453; *Forrest*, 2019 WL 13259407, at *2 (severing claims due to "significant risk of prejudice and confusion from the combination of these separate Plaintiffs' claims into one case, as the jury … would have to evaluate significant amounts of different evidence" for each plaintiff); *see also Lyles*, 2022 WL 981935, at *4 ("Permitting joinder in this case would … aggregate defendants who have no reasonable relation to one another into the same line of potential liability.").

This Court in *Cramer* emphasized the importance of the fourth factor, stating that the party requesting severance would be prejudiced by potential wrong conclusions as to the relationship between the parties' claims, thus risking "prejudicial evidence and argument [that] may bias and affect the fact-finder's determinations." *Cramer*, 2015 WL 3968155, at *5; *see also Todd*, 315 F.R.D. at 459. Based in part on that prejudice, this Court severed tort claims against a non-diverse at-fault driver from breach of contract and bad faith claims against a diverse insurer. *Cramer*, 2015 WL 3968155, at *5. The Court should do the same here, where the Warner Defendants and the Netflix Documentary Defendants will each face prejudice in having to defend themselves alongside an entirely different set of defendants in relation to entirely different documentaries and entirely different sets of statements at issue.

***

For the reasons discussed above, the Rule 21 factors favor severance.

## CONCLUSION

For the foregoing reasons, if this Court rejects the Defendants' fraudulent joinder arguments in relation to removal, *see* ECF 1, 12, the Warner Defendants respectfully request in

the alternative that the Court sever the claims alleged against them from the claims alleged against

the Netflix Documentary Defendants and retain the claims against the Warner Defendants pursuant

to 28 U.S.C. § 1332(a).

NELSON MULLINS RILEY & SCARBOROUGH, LLP

By: s/ MERRITT G. ABNEY
David E. Dukes (Federal Bar No. 00635)
E-Mail: david.dukes@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000

Merritt G. Abney (Federal Bar No. 09413)
E-Mail: merritt.abney@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC  29401-2239
(843) 853-5200

WILLKIE FARR & GALLAGHER LLP
Meryl C. Governski, *pro hac vice*
Kristin Bender, *pro hac vice*
Willkie Farr & Gallagher LLP
1875 K Street NW
Washington, DC 20006
(202) 303-1000
mgovernski@willkie.com
kbender@willkie.com

*Attorneys for Defendants Blackfin, Inc., Warner
Bros. Discovery, Inc., Warner Media Entertainment
Pages, Inc., and Campfire Studios, Inc.*

Charleston, South Carolina

September 10, 2024