IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| RICHARD ALEXANDER MURDAUGH, JR., | ) ) |
| Plaintiff, | ) ) Civil Action No.: 9:24-cv-04914-RMG |
| v. | ) ) JURY TRIAL DEMANDED |
| BLACKFIN, INC., WARNER BROS. DISCOVERY, INC., WARNER MEDIA ENTERTAINMENT PAGES, INC., CAMPFIRE STUDIOS, INC., THE CINEMART LLC, NETFLIX, INC., GANNETT CO., INC. and MICHAEL M. DEWITT, JR., | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO REMAND

Plaintiff Richard Alexander Murdaugh, Jr. hereby submits this Reply Memorandum in Further Support of his Motion to Remand. As set forth in Mr. Murdaugh's previous Memorandum, Defendants have utterly failed to carry their burden of demonstrating federal removal jurisdiction by proving that it would be impossible under South Carolina law, not federal law, for Mr. Murdaugh to prevail on his defamation claims against Defendant Michael M. DeWitt, Jr., the nondiverse defendant. Defendants Blackfin, Inc., Warner Bros. Discovery, Inc., Warner Media Entertainment Pages, Inc., Campfire Studios, Inc., The Cinemart LLC, Netflix, Inc., Gannett Co., Inc., and Michael M. DeWitt, Jr. filed responses in opposition to Plaintiff's Motion to Remand on November 15, 2024. (ECF Nos. 58, 59, 60). Despite Defendants' numerous citations to decisions within this District and the Fourth Circuit concerning constitutional defamation claims, not a single Defendant has advanced an argument citing binding South Carolina authority for the proposition that it would be impossible for Mr. Murdaugh to maintain a defamation claim against DeWitt in a

South Carolina state court. Mr. Murdaugh submits this brief Reply Memorandum to address certain issues raised by Defendants in their responses.

## ARGUMENT

I. **To the contrary of Defendants' arguments, under the law of the Fourth Circuit and this District, defamation cases involving the First Amendment do not get favorable or special treatment when determining whether a defendant has been fraudulently joined.**

Defendants contend that "removal is especially appropriate in defamation cases, which 'often concern media criticism of local citizens, necessitating a forum free of local prejudice. Therefore, the underlying goals of diversity and removal jurisdiction strongly support the retention of jurisdiction in cases involving the First Amendment.'" (ECF No. 58, p. 19) (citing *Med. Lab'y Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 931 F. Supp. 1487, 1491 (D. Ariz. 1996). Defendants' reliance on dicta from a case from an entirely different District is not sufficient to create a general rule in this District that would judicially expand the Court's removal jurisdiction in defamation cases which implicate the First Amendment.[1] The law of this District, and the Fourth Circuit, is clear that the burden is on Defendants to prove fraudulent joinder, and that all doubts, facts, and legal uncertainties must be resolved in Mr. Murdaugh's favor, regardless of the subject matter of Mr. Murdaugh's lawsuit. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999).

---

[1] For starters, the court in *Medical Laboratory Management Consultants* was analyzing fraudulent joinder under the Ninth Circuit's rubric, which is dissimilar to that of the Fourth Circuit and imposes a slighter burden on defendants. *Id.* at 1491. Additionally, the court never states that in First Amendment defamation cases that removal is favored, that removal statutes should be construed liberally, or that doubts about the propriety of removal should be resolved in favor of federal court jurisdiction, and instead only provides that the policy goals of diversity and removal jurisdiction can have special relevance in First Amendment defamation cases. *Id.* And to the contrary of Defendants' arguments, the analysis of whether this action implicates a matter of public concern is more nuanced than Defendants would have the Court believe, and Mr. Murdaugh does not concede that DeWitt's statements would necessarily be governed by First Amendment principles instead of the common law. *See Lancaster v. Ind. Sch. Dist. No. 5*, 149 F.3d 1228, 1233 (10th Cir. 1998) ("Media publicity of a dispute is not determinative of whether a public employee's speech was a matter of public concern.").

2

Defendant Gannett Co., Inc. cites *Lewis v. Time Inc.*, 83 F.R.D. 455 (E.D. Cal. 1979), and claims that it "is the leading case on the First Amendment's role in protecting against improper joinder" and implies that the Fourth Circuit has cited *Lewis* for this proposition with approval. (ECF No. 60, pp. 3-4). The Fourth Circuit has cited *Lewis*; however, it has never done so for the reasons implied by Gannett. In *AIDS Counseling and Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000 (4th Cir. 1990), the Fourth Circuit cited *Lewis* for the proposition that the doctrine of fraudulent joinder does not reflect on the integrity of plaintiff or counsel, and that it applies when no cause of action exists against the nondiverse defendant. *Id.* at 1003-04. Assuming that this case does implicate the First Amendment, nowhere in *AIDS Counseling* does the Fourth Circuit state that in First Amendment defamation cases that removal is favored or preferred.

Likewise, while other courts in this District have cited *Lewis*, it has never been cited for the reason claimed by Defendants. To date, the Fourth Circuit and this District's rule concerning fraudulent joinder instead requires *Defendants* to show that Mr. Murdaugh cannot establish a claim against DeWitt even after resolving all issues of fact and law in Mr. Murdaugh's favor, that Mr. Murdaugh has no likelihood whatsoever of recovering from DeWitt *under South Carolina law*, and that Mr. Murdaugh has no chance of establishing the facts necessary to support his defamation claim against DeWitt. *See Whitney v. FedEx Freight, Inc.*, Civil Action No. 3:19-cv-01118-JMC, 2020 WL 948336, at *2-3 (D.S.C. Feb. 27, 2020) (stating that the fraudulent joinder standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)); *McCoy v. Liberty Mut. Ins.*, Case No. 7:21-cv-01508-DCC-JDA, 2021 WL 7541174, at *3 (D.S.C. Sep. 2, 2021) (stating that to ensure that federal courts do not overstep constitutional bounds and delve into matters that are purely state law, federal precedent

"scrupulously confine[s]" removal jurisdiction). Defendants have failed to make such a showing, necessitating the remand of this action to the Hampton County Court of Common Pleas.

## II. *Chapin* is not South Carolina law and its two-prong test for defamation by implication has never been adopted by a South Carolina court.

Defendants argue that in order for Mr. Murdaugh's defamation claim against DeWitt to stand, he must prove an "especially rigorous" two-prong test for defamation-by-implication claims under Fourth Circuit law, and that Mr. Murdaugh "does not even acknowledge this test, nor could he possibly satisfy it." (ECF No. 60, pp. 3-4; ECF No. 58, p. 24). Defendants ignore that Mr. Murdaugh does not as a matter of law have to satisfy any test set forth by any jurisdictions except for South Carolina and the United States Supreme Court. Defendants' proposed test has never been adopted by a South Carolina court, and it therefore is irrelevant as to whether it is possible Mr. Murdaugh could state a claim against DeWitt under South Carolina law.

The test for whether or not there has been fraudulent joinder is uniformly whether the plaintiff can establish a claim under substantive *state law*, not federal law.[2] *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (stating the rule as requiring the defendant to show "there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court."). "Even though federal law applies to the question of fraudulent joinder, the ultimate question is whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved." 16 James Wm. Moore, et al., *Moore's Federal Practice* § 107.14 (3d ed. 1999).

---

[2] Even if Mr. Murdaugh's defamation by implication claim involved procedural and not substantive law, the Court would still be required to apply state procedural law under the fraudulent joinder analysis. *Clowney for Owens v. Hunt Valley Holdings, LLC*, Case No.: 6:15-cv-03524-TMC, 2016 WL 11643616, at *3 n.3 (D.S.C. April 13, 2016). Indeed, Defendants' reference to Fourth Circuit precedent dismissing defamation cases under the First Amendment (ECF No. 58, p. 19) is not persuasive because those courts (1) were not being asked to interpret South Carolina law and (2) were not being asked if it would have been impossible for the plaintiff to state a claim under state law on a motion to remand.

4

In *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087 (4th Cir. 1993), the Fourth Circuit adopted a two-prong test for proving fault in a First Amendment defamation by implication claim. First, the "defamatory implication must be present in the plain and natural meaning of the words used." *Id.* at 1092-93. Second, the language "must also affirmatively suggest that the author intends or endorses the inference", which presents a much narrower standard than that traditionally imposed on a plaintiff to prove actual malice in constitutional defamation actions. *Id.* The *Chapin* decision has only been cited one time by a South Carolina court, and that citation was only for the principle that actual malice does not refer to ill will. *Elder v. Gaffney Ledger*, 341 S.C. 108, 117, 533 S.E.2d 899, 904 (2000).

South Carolina has never adopted the two-pronged test, and instead, South Carolina law generally provides that the appropriate standard for all constitutional defamation actions is the *New York Times* actual malice standard, i.e., whether the defendant published the statement with knowledge it was false *or* with reckless disregard of whether it was false. *Erickson v. Jones St. Publishers, LLC*, 368 S.C. 444, 467, 629 S.E.2d 653, 665 (2006). While South Carolina could have adopted the *Chapin* test to specifically apply to constitutional defamation by implication claims at any point over the last 30 years, it never has, and the standard in South Carolina remains that a plaintiff can prevail on a constitutional defamation claim by proving that the defendant acted with recklessness and not purposeful intent.

Numerous jurisdictions hold that for a plaintiff to prevail on a constitutional defamation by implication claim under the First Amendment, he must prove that the defendant was reckless with regard to the defamatory meaning of his statements, as opposed to intentionally endorsing the defamatory meaning. *See Kendall v. Daily News Pub. Co.*, 716 F.3d 82, 91 (3d Cir. 2013) ("[T]he communicative-intent element of actual malice in defamation-by-implication cases can be satisfied

5

by reckless disregard for the defamatory meaning of a statement."); *Saenz v. Playboy Enters., Inc.*, 841 F.2d 1309, 1318 (7th Cir. 1988) (stating that the plaintiff must show that "the defendants either intended *or were reckless* with regard to the potential falsity of defamatory inferences which might be drawn from the article."); *White v. Fraternal Ord. of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990) ("It is no defense that the defendant did not actually intend to convey the defamatory meaning, so long as the defamatory interpretation is a reasonable one."). This is the same standard currently employed by South Carolina courts within the context of the First Amendment. Thus, even though the *Chapin* test would be applicable if this case were to have been initially filed in this Court, or in subsequent proceedings if removal were proper, the test has no bearing on what a South Carolina court would require as proof of a defamation by implication claim and does nothing to move the needle as far as Defendants' burden to prove fraudulent joinder is concerned.[3,4]

Assuming *arguendo* that this is a constitutional defamation case, and that South Carolina had adopted the *Chapin* test, this still does not establish as a matter of law that Mr. Murdaugh does not have a claim against DeWitt. One could not only infer from DeWitt's statements that Mr. Murdaugh had killed Stephen Smith, but also that DeWitt intended to convey this meaning through his statements:

> So we did a story in the Thanksgiving 2015 paper, and Sandy Smith basically appealed to the community. My son was killed if you know something, please come tell us, we just want answers we want closure. So we could not put the Murdaugh name in a story unless we wanted to face lawsuits. We said a prominent well-known family was rumored to be involved. Everybody knew who we were talking about. We published the story and we waited. People would come up to me in the Piggly

---

[3] Notably, the rule in *Chapin* was not applied within the fraudulent joinder context to determine whether remand was appropriate, and the plaintiffs in *Chapin* filed the libel suit in federal court. *Chapin*, 993 F.2d at 1090.

[4] Even if Mr. Murdaugh's claim against DeWitt was legally barred under the *Chapin* test, which it is not, this still would not preclude his defamation by implication claim against DeWitt. When a question is one of first impression in South Carolina, and there is a split of authority in other jurisidictions, "it is reasonably possible that a claim could proceed." *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 739 (D.S.C. 2015).

6

> Wiggly, pat me on the back, we're so thankful you ran that story, so proud of you to have the courage to do it. I mean, we did everything but put the Murdaugh name in the story, but the story did no good.

It is difficult to comprehend how a reasonable person could not infer from these statements that DeWitt was intentionally trying to connect a member of the Murdaugh family, if not Mr. Murdaugh specifically, to the killing of Mr. Smith.

The statements recount that Ms. Smith was desperate to know how her son was killed, that DeWitt had intentionally published news stories in an attempt to shed light on this question, and that DeWitt had intentionally omitted Mr. Murdaugh's last name from the stories because of fears he would be sued if he overtly linked Mr. Murdaugh to Mr. Smith, even though everyone would know who he was referencing. By stating how thankful and proud the community was of his acts, DeWitt implies that there was some potential benefit to his actions, i.e., that there was truth to the Murdaugh connection, but that "the story did no good", meaning that no charges were ever brought against Mr. Murdaugh despite his efforts. Defendants argue that it would be impossible to show that DeWitt intended to imply that Mr. Murdaugh was connected to Mr. Smith's death, but why would DeWitt want to publish a story linking Mr. Smith's death to the Murdaugh family unless he believed this to be true?

When taken in consideration with all further facts that would be known to the recipient, including the fact that Mr. Murdaugh was a former high school classmate of Mr. Smith's who had been linked to him through rumor, it becomes clear that DeWitt was intentionally implying that Mr. Murdaugh was connected to Mr. Smith's death and that he made efforts to bring this theory to the public's attention to pressure law enforcement, with the ultimate goal of obtaining resolution and closure for the Smith family. The juxtaposition of the first third of DeWitt's statement (that Ms. Smith wanted answers and closure), with the middle third (that he attempted to draw attention

to a supposed Murdaugh connection) and the last third (that his efforts did not produce any results), in conjunction with any evidence that will be developed through discovery, is clearly sufficient to state a defamation by implication claim against DeWitt, even under a heightened actual malice standard.

Defendants have not shown or argued that Mr. Murdaugh will not be able to acquire more evidence through discovery, including DeWitt's deposition, demonstrating that DeWitt did intend to convey the defamatory meaning, or that he was at least reckless with regard to the fact that a reasonable listener would interpret it to possess a defamatory meaning. Evidence of DeWitt's investigation and his subjective knowledge of the circumstances and facts surrounding the death of Mr. Smith will be probative of whether Plaintiff can satisfy the actual malice requirement, if necessary. Mr. Murdaugh has alleged that DeWitt purposefully ignored information demonstrating the falsity of the defamatory meaning conveyed by his statements, including information that individuals unrelated to Mr. Murdaugh were responsible for Mr. Smith's death, and that DeWitt purposefully chose to omit this and other information from his statements that would have exonerated Mr. Murdaugh in an attempt to manufacture a narrative and incite interest. (ECF No. 1-1, pp. 9-10). DeWitt has not come forward with any extrinsic evidence rebutting these allegations, which in themselves would be sufficient to prove actual malice under a Rule 12(b)(6) standard. Since Defendants have not pointed to any evidence or law showing that is impossible for Mr. Murdaugh to state a valid defamation by implication claim, they have not carried their burden for demonstrating fraudulent joinder, and Mr. Murdaugh's Motion to Remand should be granted.

**III.     Plaintiff has not "contorted" DeWitt's statements, and instead it is Defendants who ask the Court to ignore South Carolina law and read each statement in a vacuum wholly removed from the remaining statements and circumstances surrounding the controversy.**

8

Essentially, Defendants ask the Court to parse and read each segment of DeWitt's statements in isolation from the others, such that no defamatory meaning can be derived from the statements as a whole.[5] Defendants assert that each individual segment, when read in a vacuum, is facially true, and that Mr. Murdaugh has no possibility of prevailing on a defamation claim based on truthful statements. This assertion completely ignores the law of this State, which is unsurprising given that Defendants only cite South Carolina case law five times in their entire brief, while citing the law of mostly federal jurisdictions over 40 times. Interpreting DeWitt's statements in the manner presented by Defendants would require the Court to eschew ordinary interpretive principles and act contrary to South Carolina law:

> [T]he intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous, but from the context; all of the parts of the publication must be considered in order to ascertain the true meaning, and words are not to be given a meaning other than that which the context would show them to have.

*Boone v. Sunbelt Newspapers, Inc.*, 347 S.C. 571, 582, 556 S.E.2d 732, 738 (Ct. App. 2001). South Carolina law provides that even if the words and facts published are true, they can still be actionable as defamation if the innuendo ascribed to them is false. *Adams v. Daily Tel. Printing Co.*, 292 S.C. 273, 279, 356 S.E.2d 118, 122 (Ct. App. 1986) (stating that a trial court missed the point by holding that the facts of a broadcast were true without ascribing any innuendo to them).

---

[5] Defendants also raise an alternative argument that Mr. Murdaugh has not pled a defamation by implication cause of action and that his Motion to Remand seeks to amend his Complaint. The Complaint alleges that DeWitt made the aforementioned statements, and that when put in context with the remainder of the Netflix documentary, it is clear that DeWitt was falsely accusing Mr. Murdaugh of being involved in Mr. Smith's death. (ECF No. 1-1, p. 14). South Carolina only requires the plaintiff to make "a short and plain statement of the facts showing that the pleader is entitled to relief" and does not require specific, particularized allegations describing in detail every theory underlying a cause of action. Rule 8, SCRCP. Additionally, under South Carolina law a plaintiff does not as a matter of law have to plead innuendo if the innuendo is clear from the facts as plead. *Mains v. K Mart Corp.*, 297 S.C. 142, 147-48, 375 S.E.2d 311, 314 (Ct. App. 1988). Mr. Murdaugh's Complaint is sufficient to state a claim for defamation by implication under South Carolina law. Regardless, even if Mr. Murdaugh's Complaint were somehow deficient, this would be a "merits determination" that would have no impact on the Court's fraudulent joinder analysis. *Montanaro v. State Farm Mut. Auto. Ins. Co.*, 29 F. Supp. 3d 662, 667-68 (D.S.C. 2014).

"[A]ny words which raise a *strong suspicion* of the plaintiff's guilt in the minds of the hearers are sufficient upon which to base a cause of action for slander or libel." *Id.* When taken as a whole, it is possible that DeWitt's statements in the Netflix documentary could be interpreted by a reasonable juror as implying a false message that DeWitt had concrete information confirming the truth of the rumors linking Mr. Murdaugh to Mr. Smith's death, leading him to desire to link the Murdaughs with Mr. Smith in his reporting.

Defendants cite *Fountain v. First Reliance Bank*, 398 S.C. 434, 730 S.E.2d 305 (2012), presumably to support the spurious argument that a constitutional defamation by implication claim would never be possible under South Carolina law. (ECF No. 58, p. 27) ("South Carolina state and federal courts, exercising their gatekeeper role, have repeatedly dismissed conclusory defamation by implication claims like Plaintiff's."). In *Fountain*, a banking officer stated in a meeting that the bank would not be making a loan to a business if the plaintiff was involved. *Id.* at 439-40, 730 S.E.2d at 308. In finding that the statement was not actionable, the court first examined the facial meaning of the statement, which it found to be true; the bank was not going to make a loan so long as the plaintiff was involved with the business. *Id.* at 442, 730 S.E.2d at 309. Despite the statement's literal meaning, the plaintiff argued that it insinuated he was an unfit businessman. The court disagreed and granted summary judgment, finding that (1) the statement was not capable of any reasonable defamatory construction because the plaintiff had failed to adduce any facts demonstrating that a reasonable listener could derive a defamatory meaning from the statement, and more importantly, (2) *because there was uncontested evidence demonstrating that the alleged defamatory inference, that the plaintiff was a poor lending risk, was undisputedly true. Id.* at 443, 730 S.E.2d at 310. This distinguishes *Fountain* from the facts presently before the Court and the

procedural posture of this case. Mr. Murdaugh has alleged and will prove that he has no connection to Mr. Smith's death.

For every case from this District cited by Defendants in support of their argument that it would be impossible for Mr. Murdaugh to prevail on a defamation by implication claim against DeWitt (ECF No. 58, p. 27) ("South Carolina state and federal courts, exercising their gatekeeper role, have repeatedly dismissed conclusory defamation by implication claims like Plaintiff's"), there is South Carolina case law supporting that it would be possible to prevail on such a claim. *See Parrish v. Allison*, 376 S.C. 308, 320-26, 656 S.E.2d 382, 388-91 (Ct. App. 2007) (finding that a statement that the plaintiff had "conned" a family member could be interpreted as conveying that plaintiff had committed a crime of moral turpitude); *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 531, 506 S.E.2d 497, 513 (1998) (Toal, J., concurring) (finding that the statement "there simply was no family support to encourage her to continue her education" could carry a defamatory implication); *Adams*, 292 S.C. at 279-80, 356 S.E.2d at 122 (finding that statements that a father refused to be examined while under a "truth serum", that he had employed an attorney, and that he was not cooperating with law enforcement were sufficient to create a jury issue as to whether they defamed father by implying he had murdered his son); *Capps v. Watts*, 271 S.C. 276, 282, 246 S.E.2d 606, 609-10 (1978) (finding that the words "paranoid sonofabitch" were susceptible of a defamatory construction when viewed in light of the extrinsic facts).

Further, the cases cited by Defendants are factually and procedurally distinguishable from this action. In *Toussaint v. Palmetto Health*, Civil Action No. 3:15-02778-MGL, 2017 WL 1950955 (D.S.C. May 10, 2017), the court granted summary judgment to the defendant on the plaintiff's claim that he was defamed by a letter sent to his patients by the defendant informing them that the plaintiff "will no longer practice at Palmetto Health Neurosurgery Associates." *Id.*

11

9:24-cv-04914-RMG     Date Filed 12/18/24     Entry Number 63     Page 12 of 16

at *2. The plaintiff claimed that this letter caused his patients to reasonably believe that he had abandoned them. The plaintiff argued that the statement was defamatory by implication because the defendant omitted certain facts from its letter, including that the plaintiff was still treating patients and had found new employment with a different medical center.

The court found that there was no juxtaposition or omission of facts that could be attributed to the defendant because there was not sufficient evidence to demonstrate that the defendant knew that the plaintiff had obtained new employment and because the defendant was ethically prohibited from speculating in the letter that the plaintiff had found new employment. Thus, whether or not the statement could be reasonably understood as defamatory was not central to the court's analysis (especially because the plaintiff had produced affidavits from five recipients demonstrating that they understood the letter to mean the plaintiff had abandoned their treatment), and instead the court appeared to make an implicit finding that summary judgment was appropriate because there was no dispute as to whether the defendant could have acted with malice. Regardless, the court confusingly found that there were no extrinsic facts or juxtaposition/omission of facts that could lead a reasonable recipient to infer that the defendant had conveyed a defamatory meaning concerning the plaintiff. *Id.* at *3.

In *Boykin v. Prisma Health*, C/A No. 3:23-cv-1234-CMC-KDW, 2023 WL 5488448 (D.S.C. Aug. 8, 2023), the plaintiff brought a defamation claim against her former employer, alleging that the employer made degrading and racially offensive comments about the plaintiff's hairstyle, accused the plaintiff of being "unprofessional", required its employees to monitor the plaintiff, and imposed a pretextual write-up and terminated the plaintiff. *Id.* at *5. The plaintiff alleged that the defendant's statements and conduct implied that the plaintiff was unfit for her profession. On a Rule 12(b)(6) motion to dismiss, the court found that the plaintiff had failed to

12

plead any defamatory statements with requisite particularity because the complaint provided no specificity as to what was actually said to whom, and that the plaintiff had forecasted no evidence that a third party could infer a defamatory meaning simply from the defendant, as an employer, monitoring, writing up, and terminating the plaintiff as an employee. *Id.* at *6.

In *Robins v. Nat'l Enquirer, Inc.*, Civil Action No. 3:95-224-17, 1995 WL 776708 (D.S.C. April 10, 1995), the plaintiff sued the National Enquirer after it published an article concerning the day leading up to the murder of Susan Smith's children. In the article, entitled "Night That Turned Mom Into Killer", the National Enquirer published a statement from the plaintiff in which she speculated that Smith may have been "pushed over the edge" by an incident that occurred between Smith, Smith's boyfriend, and the plaintiff the night before the deaths. On a motion to dismiss, the court found that even if the statement and headline, when read in conjunction with one another, could be found to imply that the plaintiff was partially responsible for the children's death, those items had to be read along with all of the remaining parts of the article, including its narrative, from which could not be reasonably interpreted that the plaintiff was in any way responsible for the murders.

This is not a case where Mr. Murdaugh is claiming that his employer defamed him simply because it wrote a letter stating that he no longer worked for it, or because it chose to terminate him after monitoring his work performance. Mr. Murdaugh has pointed to specific statements made by DeWitt that when heard alongside his subsequent and previous statements could be interpreted as implying that Mr. Murdaugh is connected to the death of Mr. Smith. Mr. Murdaugh has alleged that DeWitt was actually aware of information contradicting this implication prior to publishing his statements and that he purposefully omitted this information. And unlike *Robins*, Mr. Murdaugh has argued and demonstrated how a jury could reasonably infer a defamatory

implication from DeWitt's entire statement, which speaks for itself. If anything, Defendants take the same tack as the plaintiff in *Robins* and wish to convince the Court that it should read individual segments of DeWitt's statement in isolation to come to the conclusion that as a whole it cannot be defamatory as a matter of law. Lastly, even if Defendants' cited cases were factually analogous to this action, which they are not, none of them were decided under the fraudulent joinder standard, and each was dismissed under a 12(b)(6) or summary judgment standard, which impose more lenient burdens on the defendant.

In sum, Defendants argue that DeWitt is a sham defendant because his statements are supposedly facially valid and none of his comments assert as fact that Mr. Murdaugh killed Mr. Smith. Mr. Murdaugh does not concede that anything DeWitt has said is true, and instead has argued that even if everything DeWitt has said was facially true under the defamation by implication theory what matters is the defamatory meaning that would be reasonably understood by the recipient. Because a reasonable person could interpret the entirety of DeWitt's statement as implying that Mr. Murdaugh either killed Mr. Smith or was involved in his death, and because this meaning is provably false and substantially different than if DeWitt had implied that Mr. Murdaugh did not kill Mr. Smith, it is actionable as defamation. This is not a case where Mr. Murdaugh asks will ask the Court or a jury to draw fine and shaded distinctions between what DeWitt said and the inference that can be drawn from it; it is patently obvious that the average listener could infer from DeWitt's remarks that he had learned of information demonstrating that Mr. Murdaugh was responsible for, or at least criminally implicated in, the death of Mr. Smith.

Defendants argue that the only implication that can be derived from DeWitt's statement is that Mr. Smith's death is an "unsolved mystery", and that DeWitt was only relating "rumors and speculation that were circulated in the community and reported to law enforcement." (ECF No.

58, p. 28). This argument is directly contradicted by the fact that DeWitt purposefully went out of his way to inform the recipient that there were rumors of a Murdaugh connection, that based on the information he had heard he wished to connect the Murdaugh name to Mr. Smith's death in his reporting, that he feared the backlash from the Murdaugh family, and that he had hoped something would come of his reporting, since "everybody knew" he was connecting the Murdaugh name to Mr. Smith's death. Regardless of whether DeWitt's statements deserve heightened protection under the First Amendment, a reasonable recipient could objectively interpret these statements as inferring that Mr. Murdaugh was connected to Mr. Smith's death, or that DeWitt was in possession of information proving that he was. Defendants have not carried their burden of demonstrating it would be impossible for Mr. Murdaugh to prove this in state court.[6]

## IV.  South Carolina authority provides that the defamation of a family is sufficient to create a jury issue as to whether the defamatory statement was "of and concerning" an individual family member.

In *Holtzscheiter*, the defendant newspaper ran a story the morning after a 17-year old was murdered quoting the deceased's doctor as saying " . . . there simply was no family support to encourage [Shannon] to continue her education." *Id.* at 508, 506 S.E.2d at 500. The plaintiff, who was the deceased's mother, alleged that this statement defamed her. After trial, the defendant argued that it was entitled to a directed verdict because the plaintiff failed to prove the statement

---

[6] To the extent that some of DeWitt's statements could be characterized as republication of rumors connecting Mr. Murdaugh to Mr. Smith's death, Defendants have argued that the common law rule on republication, as summarized by Restatement (Second) of Torts § 578, is abrogated by the First Amendment. Defendants have cited no South Carolina authority that supports this proposition. The fact that other jurisdictions have held that a plaintiff can prevail on a republication theory even if a defamation claim involves a public figure demonstrates that it would be possible for Mr. Murdaugh to prevail on such a theory in a South Carolina court. *See Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1145 (10th Cir. 2000). Regardless, it is clear from the statements that DeWitt was not simply relaying rumors to the audience. To the extent that Defendants claim that DeWitt's statements somehow deserve protection because they are a recitation of law enforcement's investigation of Mr. Smith's death, a review of DeWitt's statements reveals that he never mentions a law enforcement investigation, government suspicions of Mr. Murdaugh, or the existence of official government activity concerning Mr. Smith, so his statements cannot be reasonably framed as reporting official acts such that they would be protected by the fair report privilege.

that the deceased lacked family support was of and about the plaintiff. After noting that the general rule is that defamation of a group does not allow an individual member of that group to maintain an action, the court stated that "this rule is not applicable to a small group." *Id.* at 514, 506 S.E.2d at 504. In other words, the court held that as a group, a family is sufficiently small to create a jury issue as to whether a defamatory statement made about the family has any special or personal application to an individual member. Therefore, even if DeWitt's statements do not specifically single out Mr. Murdaugh, this does not mean it would be impossible for Mr. Murdaugh to prevail on a defamation claim against DeWitt in state court.[7]

## CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests that the Court grant his Motion to Remand.

KENT LAW FIRM, LLC

/s/ Shaun C. Kent
Shaun c. Kent Fed. Bar #9326
Post Office Box 117
Manning, SC 29102
(803) 433-5368
shaun@shaunkentlaw.com
*Attorney For Plaintiff*

---

[7] This Memorandum is submitted jointly as a reply to both Netflix and The Cinemart's Memorandum (ECF No. 58) and Gannett and DeWitt's Memorandum (ECF No. 60). Therefore, it should not be constrained by Local Rule 7.05(B)'s fifteen-page limit for a single reply memorandum.