# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Richard Alexander Murdaugh, Jr., <br><br> Plaintiff, <br> v. <br><br> Blackfin, Inc., *et al.*, <br><br> Defendants. | Case No. 9:24-cv-4914-RMG <br><br> **ORDER AND OPINION** |

Before the Court is the motion to sever by Defendants Warner Bros. Discovery, Inc., Warner Media Entertainment Pages, Inc., Blackfin, Inc. and Campfire Studios Inc. (collectively, the "Warner Defendants"). (Dkt. No. 14). Plaintiff Richard Alexander Murdaugh, Jr. opposes the Warner Defendants' motion and moves to remand this action to state court. (Dkt. No. 41). The Warner Defendants, Defendants Netflix, Inc. and The Cinemart LLC (collectively, the "Netflix Defendants") and Defendants Gannet Co., Inc. and Michael M. DeWitt Jr. (collectively, the "Gannet Defendants") oppose Plaintiff's motion to remand. (Dkt. Nos. 58, 59, 60). Plaintiff replied. (Dkt. No. 63). For the reasons set forth below, the Court grants the Warner Defendants' motion to sever (Dkt. No. 14) and grants Plaintiff's motion to remand (Dkt. No. 41).

**I.    Background**

Plaintiff filed suit in the Court of Common Pleas of Hampton County alleging that Defendants made and/or republished false and defamatory statements that "accuse[] the Plaintiff of being involved in the murder of Stephen Smith." (Dkt. No. 1-1, ¶ 30). The Netflix Defendants removed the case to federal court with the consent of the Warner and Gannet Defendants. (Dkt. No. 1).

1

The statements at issue were published by Defendants through three different documentary series centering on the Murdaugh family: (1) a series produced by Blackfin, Inc. and broadcast by Warner Bros. Discovery, Inc. titled "Murdaugh Murders: Deadly Dynasty," (2) a series produced by Campfire Studios Inc. and distributed and broadcast by Warner Bros. Discovery, Inc. and Warner Media Entertainment Pages, Inc. titled "Low Country: The Murdaugh Dynasty," and (3) a series produced by The Cinemart LLC and braodcast by Netflix titled "Murdaugh Murders: A Southern Scandal." (Dkt. No. 1-1, ¶¶ 19-27). Each documentary references the death of Stephen Smith, which occurred under mysterious circumstances on the night of July 8, 2015 while Smith was walking alongside a rural road in Hampton County, South Carolina. (*Id.*, ¶ 18). Specifically, Plaintiff alleges:

- "During a ten-minute segment of the 'Murdaugh Murders: Deadly Dynasty' series, the Plaintiff is alluded to a number of times as the murderer of Stephen Smith." (*Id.*, ¶ 19).

- "[Low Country: The Murdaugh Dynasty] publishes false statements that suggest the Plaintiff, along with others, murdered Stephen Smith by striking him with a baseball bat. A sequence in the show accuses the Plaintiff of killing Stephen Smith because of his sexual identity and further insinuates that the Plaintiff killed Stephen Smith in relation to a romantic relationship between Plaintiff and Smith." (*Id.*, ¶ 22).

- "Murdaugh Murders: A Southern Scandal" . . . depicts a young man with red hair carrying a baseball bat. The Plaintiff has red hair, and it is readily ascertainable from the content of the series that the creators were depicting the Plaintiff as the murderer of Stephen Smith. The series publishes statements such as 'everyone keeps coming up to me and saying it was the Murdaugh boys' and 'listening to these statements it is pretty clear; Stephen's death is intertwined with the Murdaughs.' The series falsely contains statements that the Plaintiff was engaged in a romantic relationship with Stephen Smith and that it was Plaintiff, and maybe two other individuals, who killed Stephen Smith." (*Id.*, ¶ 25).

Defendant Michael M. DeWitt Jr., who appeared in Netflix's "Murdaugh Murders: A Southern Scandal" and serves as the editor of *The Hampton County Guardian*, is the only named Defendant who resides within South Carolina. (*Id.*, ¶ 16). The Netflix Defendants contend in their notice of removal that Plaintiff includes in his Complaint "a facially meritless claim against Defendant Michael DeWitt" "[i]n a blatant attempt to avoid federal diversity jurisdiction." (Dkt. No. 1, ¶ 3). They argue that because DeWitt was fraudulently joined, the Court retains jurisdiction over the case. (*Id.*, ¶¶ 37-60). The Warner Defendants adopt the Netflix Defendants' view that DeWitt was fraudulently joined, and in the alternative move to sever Plaintiff's claims against them from the claims asserted against the Netflix Defendants and Gannett Defendants. (Dkt. No. 14). Plaintiff requests that his claims against all Defendants be remanded to the Hampton County Court of Common Pleas. (Dkt. No. 41-1 at 2). The motions are ripe and ready for this Court's review.

## II.   Legal Standard

### A.  Motion to Remand

Federal courts are courts of limited jurisdiction. *Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008) (citation omitted). A defendant may remove a civil action to federal court if the court would have had original jurisdiction over the matter. 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332(a), a federal district court has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States[.]" 28 U.S.C. § 1332(a). There must be complete diversity, meaning "no party shares common citizenship with any party on the other side." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)). Therefore, if a case originally brought in state court could have been instituted in federal court

under diversity jurisdiction, the defendant may remove the action to federal court so long as certain procedures are followed and specific conditions are met. 28 U.S.C. §§ 1441, 1446.

To remove a case to federal court, "the defendant or defendants must file a 'notice of removal[ ] containing a short and plain statement of grounds for removal.'" *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 259 (4th Cir. 2013) (quoting 28 U.S.C. § 1446(a)). All defendants who have been properly joined in a case must "join in or consent to removal, creating the so-called 'rule of unanimity.'" *Id.* (citation omitted). A defendant removing a case to federal court bears the burden of establishing that federal jurisdiction is proper. *Strawn*, 530 F.3d at 296 (citation omitted). If there is any doubt regarding the existence of federal jurisdiction, the case must be remanded. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) (citation omitted).

### B. Motion to Sever

Rule 20 governs the permissive joinder of parties and provides that "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). "Rule 20 grants courts wide discretion concerning the permissive joinder of parties." *Aleman v. Chugach Support Servs. Inc.*, 485 F.3d 206, n.5 (4th Cir. 2007). Additionally, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Rule 21 provides that a court may "sever any claim against a party." Fed. R. Civ. P. 21. "Under Rule 21, 'a court has virtually unfettered discretion in determining whether or not

severance is appropriate.'" *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-CV-02992-DCN, 2014 WL 1512029, at *2 (D.S.C. Apr. 8, 2014) (quoting *17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.*, 373 F. Supp. 2d 584, 604 n.9 (E.D. Va. 2005)). The court should consider the following factors in determining whether severance is proper: "(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed." *Grayson*, 2014 WL 1512029, at *2 (quoting *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007)).

**III.    Discussion**

Plaintiff moves this Court to remand his case to state court, citing the Court's lack of diversity jurisdiction because Defendant Michael M. DeWitt, Jr. shares a domicile with Plaintiff. (Dkt. No. 41).  If there is any possibility Plaintiff would be able to establish a cause of action against DeWitt in state court and properly join DeWitt as a party in that action, the entire case must be remanded. *See Pollock v. Goodwin*, No. C//A3:07-3983CMC, 2008 WL 216381, at *5 (D.S.C. Jan. 23, 2008) ("Removal of separate and independent claims is allowed despite the joinder of those claims with a non-removable claim but *only* when the court's subject matter jurisdiction is founded on 28 U.S.C. § 1331 (federal question jurisdiction)" (citing 28 U.S.C. § 1441(c)); *see also* 29A Federal Procedure, Lawyers Edition § 69:41 ("Since its 1990 amendment, 28 U.S.C.A. § 1441(c) does not permit the removal of a separate and independent claim based on diversity of the

5

parties."). Defendants argue that this Court may retain diversity jurisdiction over the case under two theories: fraudulent joinder and procedural misjoinder.

### A. Plaintiff's Motion to Remand

"[T]he fraudulent joinder doctrine 'effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)). "'The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor.'" *Id.* (quoting *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir. 1999)). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424 (citation omitted). "The removing party must show either 'outright fraud in the plaintiff's pleading of jurisdictional facts or that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Johnson*, 781 F.3d at 704 (emphasis in original) (quoting *Hartley,* 187 F.3d at 424). "[I]n determining 'whether an attempted joinder is fraudulent, the court is not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available.'" *Mayes*, 198 F.3d at 464 (quoting *AIDS Counseling & Testing Centers v. Group W Television, Inc.*, 903 F.2d 1000, 1004 (4th Cir. 1990)).

The Court considers whether "there is no possibility that the plaintiff would be able to establish a cause of action against [DeWitt] in state court." *Johnson*, 781 F.3d at 704. The elements required to establish defamation under South Carolina law are "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault on the part

6

of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 506 (S.C. 1998). "Defamatory communications take two forms: libel and slander. Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct." *Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653, 664 (S.C. 2006). "An opinion may constitute actionable defamation, but only if the opinion can be reasonably interpreted to declare or imply untrue facts." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990)). Otherwise, "[w]hen a speaker plainly expresses a subjective view, an interpretation, a theory, conjecture or surmise, rather than [a] claim[ ] to be in possession of objectively verifiable facts, the statement is not actionable." *Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 186 (4th Cir. 1998) (internal quotations omitted). "Truth of the matter or substantial truth is a complete defense to a claim for defamation." *A Fisherman's Best, Inc. v. Recreational Fishing All.*, 310 F.3d 183, 196 (4th Cir. 2002) (citing *WeSav Fin. Corp. v. Lingefelt*, 450 S.E.2d 580, 582 (S.C. 1994)).

Defendants argue that DeWitt did not make any defamatory statement regarding Plaintiff. In the relevant series—Netflix's Murdaugh Murders: A Southern Scandal—DeWitt states:

- "Within one month of [Smith's] body being found, we were hearing all these rumors about a possible Murdaugh connection." ("Possible Connection Statement") (Netflix Episode 3, Tr. at 10:51-57);

- "I've learned as a reporter that if you hear the same rumors from different groups of people wherever you go, it's either a very good rumor, or there's some truth to it." ("Good Rumor Statement") (Netflix Episode 3, Tr. at 10:58-11:08);

- "[W]e could not put the Murdaugh name in a story unless we wanted to face lawsuits. We said a prominent, well-known family was rumored to be involved. Everybody knew who we were talking about. We published a story, and we waited. People would come up to me in the Piggly-Wiggly,

> pat me on the back. We're so thankful you ran that story, so proud of you to have the courage to -- to do it. I mean, we did everything but put the Murdaugh name in -- in the story, but the story did no good. Nobody ever came forward." ("Piggly-Wiggly Statement") (Netflix Episode 3, Tr. at 11:23 – 12:7);

- "I began to have a bad taste in my mouth toward members of the Murdaugh family, just like a lot of people in the community did. And our coroner, Angela Topper, she goes back looking through Hampton County coroner records, and she stood up and pointed out there was something fishy about 2018, Gloria Satterfield, another case that went under the radar. She's saying that this death was ruled natural, even though it was a trip and fall. She's seeing that there was no autopsy ever done, so she wrote a letter to SLED and asked SLED to help her investigate this. At the same time, SLED has got reason to investigate Alex's financial crimes. Eventually, the Satterfield family were reading articles all over the state of South Carolina about how there was a death settlement. Her sons didn't know anything about a settlement, and they looked at each other and said, "I didn't get any money. Did you get any money?" ("Bad Taste Statement") (Netflix Episode 3, Tr. at 31:44-32:44).

Per the Netflix Defendants, "DeWitt's joinder in this case was fraudulent because based on what DeWitt actually said in the Series, no viable cause of action can possibly be asserted against him." (Dkt. No. 1, ¶ 4; Dkt. No. 58 at 14-17). They highlight that "DeWitt never specifically references Plaintiff," which is "fatal to Plaintiff's purported claim, as it is axiomatic that a defamatory statement must be specifically 'of and concerning' the Plaintiff to be actionable." (Dkt. No. 1, ¶ 48) (quoting *Burns v. Gardner*, 493 S.E.2d 356, 359 (S.C. Ct. App. 1997)). They further contend that "DeWitt's comments in the Series are not actionable assertions of fact," but rather, express subjective views and theories that constitute protected speech. (*Id.*, ¶¶ 51-52). Finally, they argue "the statements DeWitt actually made are undeniably true" given that "[t]here *were* rumors that "the Murdaughs were connected in some way to Stephen Smith's murder." (*Id.*, ¶ 55).

As a preliminary matter, the Court disagrees that DeWitt's statements cannot be classified as "of and concerning" Plaintiff. "To prevail in a defamation action, the plaintiff must establish

that the defendant's statement referred to some ascertainable person and that the plaintiff was the person to whom the statement referred." *Burns v. Gardner*, 493 S.E.2d 356, 359 (S.C. Ct. App. 1997). "While the general rule is that defamation of a group does not allow an individual member of that group to maintain an action, this rule is not applicable to a small group." *Holtzscheiter v. Thomson Newspapers,* 506 S.E.2d 497, 504 (S.C. 1998). Because the Court considers that DeWitt's statements could be interpreted as "of and concerning" Plaintiff, the Court proceeds to consider the alleged defamatory nature of each contested statement.

In evaluating whether Plaintiff could establish a cause of action against DeWitt in state court on the basis of the challenged statements, the Court is guided by the principle that the analysis "is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)" and remand should be denied only upon a showing of "outright fraud in the plaintiff's pleading of jurisdictional facts or that there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Hartley*, 187 F.3d at 424. "'[T]here need be only a slight possibility of a right to relief' to defeat a claim of fraudulent joinder." *Mayes v. Rapoport*, 198 F.3d 457, 466 (4th Cir. 1999) (quoting *Hartley*, 187 F.3d at 426).

In this Court's view, Defendants cannot overcome this highly favorable standard. Courts in South Carolina have found *no possibility* of success on a claim under "this rigorous standard" where a claim is factually or legally impossible. *See, e.g.*, *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (factually impossible for non-diverse defendant to have committed alleged conduct such that it could not possibly be held liable); *Benjamin v. Wal-Mart Stores, Inc.*, 413 F. Supp. 2d 652, 657 (D.S.C. 2006) (denying Plaintiffs' motion to remand where "no legal possibility of a successful claim against [Defendants] existed because court determined they owed no legal

9

duty to Plaintiffs). The Fourth Circuit has cautioned that "a jurisdictional inquiry is not the appropriate stage of litigation to resolve these various uncertain questions of law and fact" and rather, such questions are "are properly left to the state court for later stages of litigation." *Hartley*, 187 F.3d at 425. Here, Plaintiff has plausibly plead "a slight possibility of a right to relief" on his defamation claim against DeWitt, and Defendants cannot establish fraudulent joinder as to DeWitt. As a result, remand of Plaintiff's case to state court is warranted.

The Court proceeds to consider whether severance is appropriate with reference to the Warner Defendant's Motion to Sever. (Dkt. No. 14).

### B. The Warner Defendants' Motion to Sever

The Warner Defendants move to sever their case from Plaintiff's claims against the Netflix and Gannett Defendants, alleging that Plaintiff "improperly attempts to lump" "three entirely separate documentaries" into a single case in order "[t]o land in Hampton County." (Dkt. No. 14 at 2). The Warner Defendants argue that severance is warranted under Rules 20 and 21 as well as pursuant to the procedural misjoinder doctrine.

"[C]ourts have not been consistent in whether this doctrine should be styled 'procedural misjoinder' or 'fraudulent misjoinder', with some courts even using the term[s] interchangeably." *Sehovic v. Pfizer, Inc.*, No. 2:14-cv-3254-RMG, 2015 WL 12831697, at *1 n.1 (D.S.C. Jan. 27, 2015).

> Fraudulent joinder and fraudulent misjoinder are two distinct legal doctrines that provide exceptions to the well-pled complaint rule as it applies to removal based on diversity jurisdiction by allowing courts to disregard the citizenship of certain parties. Fraudulent joinder is applicable where a defendant seeking removal argues that other defendants were joined when there is no possible cause of action against those defendants or where the complaint pled fraudulent facts. Fraudulent misjoinder, on the other hand, is an assertion that claims against certain defendants, while provable,

> have no real connection to the claims against other defendants in the same action and were only included in order to defeat diversity jurisdiction and removal.

*Wyatt v. Charleston Area Med. Ctr.*, 651 F. Supp. 2d 492, 496 (S.D.W. Va. 2009) (internal citations omitted). This Court recognized the doctrine of fraudulent misjoinder in *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prods. Liab. Litig.*, No. 2:14-MN-02502-RMG, 2016 WL 7339811, at *3 (D.S.C. Oct. 24, 2016), holding that "to establish fraudulent misjoinder, the removing party must show (1) outright fraud or (2) that there is **no possibility** that plaintiffs would be able to properly join the claims involving a non-diverse party in state court." *Id.* at *6 (emphasis in original). This analysis requires the court to look to the procedural law of the state in determining whether joinder of the contested party would be possible in state court. *In re Lipitor*, 2016 WL 7339811, at *4. South Carolina Rule of Civil Procedure 20 is identical in substance to Fed. R. Civ. P. 20, and provides that "[a]ll persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." S.C. R. Civ. P. 20. Severance is appropriate where the Court determines that parties have been misjoined. S.C. R. Civ. P. 21; *Farmer v. CAGC Ins. Co.*, 819 S.E.2d 142, 145 (S.C. Ct. App. 2018).

Plaintiff contends that "absolute identity of all events is unnecessary for joinder, citing *Courthouse News Service v. Schaefer*, where the Fourth Circuit affirmed the district court's denial of the defendant's motion to dismiss for misjoinder where the plaintiff news service named two defendant courthouses for related activity—their failure to timely provide the public timely access to recent filings. 2 F.4th 318, 325 (4th Cir. 2021). (Dkt. No. 41-1 at 31-32). He analogizes the Fourth Circuit's analysis to the present case, arguing that "it is not necessary that the same

11

wrongful conduct give rise to each defendant's liability . . . for there to be a possibility of permissive joinder." (*Id.* at 32). He argues the "series of transactions or occurrences" from which his claims against Defendants arise are similarly related, citing "the tragic death of Mr. Smith, the rumors that arose in Hampton County shortly after Mr. Smith's death, the crimes of Alex Murdaugh that renewed interest in the circumstances surrounding Mr. Smith's death, and the investigations which followed and ultimately culminated in all Defendants publishing and republishing statements implicating or asserting that Mr. Murdaugh murdered Mr. Smith or was involved in his death." (*Id.* at 32-33). Per Plaintiff, joinder is appropriate because "all claims pertain to and arise from the same limited subject matter." (*Id.*).

Under Plaintiff's interpretation, he could join a wide-ranging array of claims to one lawsuit, as long as they have something to do with the Murdaughs alleged wrongful conduct. This is not the Rule 20 standard. As the Warner Defendants aptly note, "[w]hile Plaintiff asserts defamation claims against all of the Defendants, the bases for these claims are completely distinct: the Warner Documentaries with respect to the Warner Defendants, and the Netflix Documentary with respect to the Netflix Documentary Defendants." (Dkt. No. 14 at 10). Plaintiff must prove his claims against each set of Defendants independently, relying on distinct factual proof as to the contested statements and their context within each of the three documentaries. Plaintiff himself concedes that he "has separate claims against each Defendant for their own publications and republications." (Dkt. No. 41-1 at 33). Resolution of Plaintiff's claims against the Warner Defendants will in no way affect the resolution of his claims against the Netflix Defendants, and vice versa. As a result, the Court finds that Plaintiff's claims against the Warner Defendants are misjoined and severs them from Plaintiff's remanded claims against the Netflix and Gannett Defendants pursuant to S.C. R. Civ. P. 21.

### IV.     Conclusion

In light of the foregoing, the Court **GRANTS** the Warner Defendants' motion to sever (Dkt. No. 14) and **GRANTS** Plaintiff's motion to remand as to the Gannett Defendants and the Netflix Defendants (Dkt. No. 41). The Gannett Defendants and Netflix Defendants are **DISMISSED** from this case. Plaintiff must file his responses to the Warner Defendants' motions to dismiss (Dkt. Nos. 49, 50) within ten days of this Order. (Dkt. No. 57).

**AND IT IS SO ORDERED.**


                                                                _s/ Richard M. Gergel_
                                                                Richard Mark Gergel
                                                                United States District Judge

February 19, 2025
Charleston, South Carolina