IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| RICHARD ALEXANDER MURDAUGH, JR., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 9:24-cv-04914-RMG |
| v. | ) ) ) | JURY TRIAL DEMANDED |
| BLACKFIN, INC., WARNER BROS. DISCOVERY, INC., WARNER MEDIA ENTERTAINMENT PAGES, INC., CAMPFIRE STUDIOS, INC., THE CINEMART LLC, NETFLIX, INC., GANNETT CO., INC. and MICHAEL M. DEWITT, JR., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S MOTION FOR RECONSIDERATION, MOTION TO CERTIFY AND AMEND ORDER PURSUANT TO 28 U.S.C. § 1292(b), AND MOTION TO STAY

PLEASE TAKE NOTICE that the Plaintiff, Richard Alexander Murdaugh, Jr., pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, moves the Court to reconsider and clarify its February 19, 2025 Order severing his claims against Defendants Blackfin, Inc., Warner Bros. Discovery, Inc., Warner Media Entertainment Pages, Inc., and Campfire Studios, Inc. ("the Warner Defendants") from the remaining Defendants and retaining federal jurisdiction over those claims because the Order contains a clear error of law, applies the wrong standard to its severance analysis, and does not address an issue raised by Plaintiff and Defendants. Further, if the Court does not reconsider its Order, Plaintiff moves to certify and amend the Order for immediate appellate review under 28 U.S.C. § 1292(b), as the Order contains a controlling issue of law upon which the Fourth Circuit has not provided any guidance and the Circuits that have addressed the issue are split, and an immediate appeal would advance the ultimate termination of this litigation. Lastly, Plaintiff moves pursuant to Rule 6(b) of the Federal Rules of Civil Procedure and Local

Civil Rule 6.01 to stay the deadline to respond to Defendants' Rule 12(b)(6) Motions to Dismiss

(ECF No. 48, 49, 50) for good cause pending resolution of Plaintiff's Motion for Reconsideration

and Motion to Certify and Amend.

**I.      The Court should reconsider its February 19, 2025 Order because it applied the federal standard for misjoinder under Rules 20 and 21 and exercised its discretion to determine if severance was appropriate instead of applying the impossibility standard articulated by the Court in *In re Lipitor* and Fourth Circuit precedent.**

Plaintiff moves for reconsideration of the Court's Order on the Warner Defendants' Motion

to Sever, which is an interlocutory order. Motions for reconsideration of interlocutory orders are

not subject to the strict standards applicable to motions for reconsideration of a final judgment.

*See* 12 James W. Moore et al., Moore's Federal Practice ¶ 60.23 ("Rule 60(b) does not govern

relief from interlocutory orders . . . ."). This is because a district court retains the power to

reconsider and modify its interlocutory judgments at any time prior to final judgment when such

is warranted. *See Fayetteville Investors v. Com. Builders, Inc.*, 936 F.2d 1462, 1469 (4th Cir. 1991)

("An interlocutory order is subject to reconsideration at any time prior to the entry of a final

judgment."); *cf.* Fed. R. Civ. P. 54(b) (providing that interlocutory orders that resolve fewer than

all claims are "subject to revision at any time before the entry of [final] judgment"). Rule 54(b)

involves "broader flexibility to revise interlocutory orders before final judgment . . . ." *Carlson v.*

*Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

Rule 20, SCRCP, concerns permissive joinder of parties.

> All persons may be joined in one action as defendants if there is asserted against
> them jointly, severally, or in the alternative, any right to relief in respect of or
> arising out of the same transaction, occurrence, or series of transactions or
> occurrences and if any question of law or fact common to all defendants will arise
> in the action. A plaintiff or defendant need not be interested in obtaining or
> defending against all the relief demanded. Judgment may be given . . . against one
> or more defendants according to their respective liabilities.

In its Order, the Court states that "severance is appropriate where the Court determines that parties have been misjoined", and therefore, because Plaintiff must prove his claims against each set of Defendants independently, and resolution of his claims against the Warner Defendants will "in no way affect the resolution of his claims against the Netflix Defendants", then Plaintiff's claims against all Defendants are misjoined and must be severed. Respectfully, assuming that it is even proper for a federal court to sever removed claims when there was no federal diversity jurisdiction in the first place, the Order's first proposition is clear error and a misstatement of the Court's own law within the removal context, and the second and third propositions are incorrect from a practical standpoint and ignore arguments made by Plaintiff in his response to the Warner Defendants' Motion to Sever.

Under the Court's own previous decision, *In re Lipitor*, the Warner Defendants' Motion to Sever did not require the Court to exercise its own discretion to determine whether the Defendants should be severed. Instead, the Court was required to determine *whether it would have been impossible* for Plaintiff to join the Defendants with the Netflix Defendants in a single action in state court under South Carolina's Rules of Civil Procedure regarding permissive joinder and misjoinder. In other words, the Court was not asked to determine whether federal law permitted it to exercise its discretion to sever; the question for the Court was whether there was any binding South Carolina authority or precedent specifying that under the facts of this case, it would be impossible for any South Carolina court to ever exercise its discretion regarding severance in Plaintiff's favor.

The Order addresses the legal standard for severance within the context of removal/remand as follows:

> Rule 21 provides that a court may "sever any claim against a party." Fed. R. Civ. P. 21. "Under Rule 21, 'a court has virtually unfettered discretion in determining

whether or not severance is appropriate.'" *Grayson Consulting, Inc. v. Cathcart,* No. 2:07-CV-02992-DCN, 2014 WL 1512029, at *2 (D.S.C. Apr. 8, 2014) (quoting *17th St. Assocs., LLP v. Markel Int'l Ins. Co. Ltd.,* 373 F. Supp. 2d 584, 604 n.9 (E.D. Va. 2005)). The court should consider the following factors in determining whether severance is proper: "(1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed." *Grayson,* 2014 WL 1512029, at *2 (quoting *Equal Rights Ctr. v. Equity Residential,* 483 F. Supp. 2d 482, 489 (D. Md. 2007)).

(ECF No. 64, pp. 4-5). The Order's language articulates a standard for severance in the context of fraudulent misjoinder that is vastly less onerous than that which has previously been articulated by this Court in *In re Lipitor*. The Court does not have unfettered discretion to determine whether severance is appropriate.

The Order then goes on to explain, without citing South Carolina law, that fraudulent misjoinder applies when there is "no real connection to the claims against other defendants", and that severance is appropriate where the Court determines that parties have been misjoined. (ECF No. 64, p. 11). The Order concludes, without considering or analyzing any South Carolina precedent interpreting Rule 20, SCRCP, that "[r]esolution of Plaintiff's claims against the Warner Defendants will in no way affect the resolution of his claims against the Netflix Defendants, and vice versa", that Plaintiff "must prove his claims against each set of Defendants independently, relying on distinct factual proof as to the contested statements and their context within each of the three documentaries", and therefore "the claims against the Warner Defendants are misjoined." (ECF No. 64, p. 12).

This finding is in error because (1) it applies the wrong analysis by answering whether the *Grayson* factors for misjoinder under Rule 21, which have never been adopted by a South Carolina decision, are met such that the Court would have discretion to sever the claims, instead of

4

answering whether it would be impossible to permissively join the claims in a South Carolina court under South Carolina precedent interpreting Rule 20's "same transaction, occurrence, or series of transactions or occurrences" language, and (2) it ignores that there are issues of fact and law in this action that are common to all the Defendants, will rely on the same factual proof, and will affect all Defendants upon resolution, and may have a preclusive effect against Plaintiff in the parallel court proceedings.

In *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation*, 2016 WL 7339811 (D.S.C. Oct. 24, 2016), this Court determined that the fraudulent misjoinder standard would be the same as the fraudulent joinder standard and requires the removing party to show that there is no possibility that the plaintiff would be able to properly join the claims in state court under state rules. To the extent that Order finds this to be the case because resolution of the claims against the Warner Defendants purportedly will not affect the resolution of the claims against the Netflix Defendants, and because the claims purportedly rely on distinct factual proof, the Order's finding is clearly in error and fails to include a clear analytical explanation for why Plaintiff's defamation claims against the Netflix Defendants, Gannett Defendants, and Warner Defendants are so factually distinct and unrelated that they could never be joined in state court.

Under Fourth Circuit law concerning the fraudulent misjoinder and fraudulent joinder "impossibility" standard, a lack of guiding state law weighs against retained federal jurisdiction, and federal law is not to be substituted for South Carolina precedent in determining what a South Carolina court would do:

> This Court could hazard an educated guess about what a South Carolina court may do here under the disputed facts of this case, but that is exactly what the Fourth Circuit instructs district judges not to do when state law is not clear. *See* [*Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 425 (4th Cir. 1999)] (concluding that the district

court describing the case as "novel" and saying that other courts might look at it differently should have led the district court to "resolve[] its doubts in favor of remanding the case to state court").

*Covington v. Hancock*, Civil Action No. 2:23-cv-05266-BHH, 2024 WL 2126863, at *3 (D.S.C. May 13, 2024). Here, there is simply no South Carolina precedent interpreting the "same transaction" language of Rule 20, SCRCP, and there is no guiding South Carolina law indicating under the facts of this case what a South Carolina court would or would not do.[1] The Court's independent exercise of its own discretion to determine that the claims could not be joined in state court without relying on binding South Carolina authority is not in keeping with the Fourth Circuit's own guidance under the impossibility standard or the Court's own fraudulent misjoinder rule, and as such the Order is erroneous.

The Order's analysis, and the parties' arguments, are primarily concerned with the language of Rule 20 setting forth that all persons may be joined in one action as defendants if there is asserted against them any right to relief in respect of *or* arising out of the same transaction, occurrence, or *series of transactions or occurrences* and if any question of law or fact common to all defendants will arise in the action. Rule 20, SCRCP. In this instance, there is a real, logical connection between the defamation claims against every Defendant in this action, including the Warner Defendants, because at their root they arise from the same series of occurrences and undisputedly involve common questions of law. The Warner Defendants assert that the right to relief must arise from an identical series of transactions or occurrences for each defendant, or the same wrongful conduct, and the Court's Order seems to agree with this argument, but neither the

---

[1] Plaintiff cited *Courthouse News Serv. v. Schaefer*, 2 F.4th 325 (4th Cir. 2021), not to convince the Court that it could not sever the Warner Defendants in its own discretion, but to demonstrate that under these circumstances (same claim, same common questions of law, different underlying facts) a different court could reasonably look at the facts differently than the Warner Defendants.

Order nor Defendants cite a single decision from any jurisdiction supporting this principle, while Fourth Circuit precedent dictates that it is in fact flat wrong:

> But absolute identity of all events is unnecessary for joinder. Instead, Rule 20 permits joinder of all *reasonably related* claims for relief by or against different parties. For this reason, two claims arise from the same transaction – and therefore can be joined in the same action – when there is *a logical relationship between them*.

*Schaefer*, 2 F.4th at 324. While the Order mentions *Schaefer* in passing, it makes no attempt to distinguish the facts of this case from the Fourth Circuit's logic in *Schaefer* and does nothing to explain why the factual overlap between the allegations against the different groups of Defendants in this case is not sufficient to make Plaintiff's defamation claims against each logically or reasonably related. The Fourth Circuit has explained that the "same transaction" requirement can be satisfied, even when the factual circumstances of each "transaction" differ, where the plaintiff alleges that "similar" transactions, involving "similar" types of misconduct and violations, involve different parties. *Courthouse News Service v. Schaeffer*, 429 F. Supp. 3d 196, 202 (E.D. Va. 2019) (quoting *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001)).

South Carolina law provides that the transaction requirement from Rule 20(a), SCRCP is not a rigid test, and that it is a flexible concept that should be used by the court to implement the purpose of Rule 20 and should be read as broadly as possible to promote judicial economy. *See Farmer v. CAGC Ins. Co.*, 424 S.C. 579, 586, 819 S.E.2d 142, 145-46 (Ct. App. 2018) (stating that Rule 20, along with Rules 17, 19, and 20, "evidence the general purpose . . . to eliminate the old restrictive and inflexible rules of joinder . . . and to allow joinder of interested parties liberally to the end that an unnecessary multiplicity of actions" might be avoided); *see also* 7 Wright, Miller & Kane, Federal Practice & Procedure § 1653 (2001). Other jurisdictions have considered whether there is a logical relationship between the claims, similar precipitating events, and whether there

is *any* overlapping proof in determining that claims could be permissibly joined under Rule 20.

*See Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980); *Mosley v. Gen.*

*Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) ("The analogous interpretation of the terms as

used in Rule 20 would permit all reasonably related claims for relief by or against different parties

to be tried in a single proceeding. Absolute identity of all events is unnecessary"); *Little v.*

*Bellsouth Telecommunication*, CIV. A. 95-1646, 1995 WL 468256, at *1 (E.D. La. 1995).

As demonstrated in Plaintiff's Complaint and his briefing thus far in this matter, the first

element of Plaintiff's defamation claim requires him (or Defendants, depending on whether his

defamation claim is a constitutional or common law claim) to prove the falsity of the implied

meaning of the alleged statements. *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 518,

506 S.E.2d 497, 506 (1998) (describing the first element of a defamation claim as requiring proof

of a false and defamatory statement concerning the plaintiff). The Complaint alleges that all

Defendants, including the Warner Defendants, in substance made statements with the same

defamatory innuendo: that Plaintiff murdered Stephen Smith. (ECF No. 1-1 ¶¶ 19, 22, 25, 28).

The Complaint describes the same precipitating series of occurrences leading to the rumors of

Plaintiff's involvement in the murder of Mr. Smith as common to the claims against all Defendants:

> On July 8, 2015, Stephen Smith, whose care had given out of gas, was walking
> along a rural road in Hampton County, South Carolina. It was late at night. As he
> was walking along the road he was allegedly struck by a part of a vehicle and killed.
> News sources now report his death is being considered by a statewide grand jury,
> and the media has reported on individuals unrelated to Plaintiff allegedly being
> involved in his death. The Plaintiff, even though he has been falsely accused of
> harming Stephen Smith as described below, has not been notified by any law
> enforcement entities of any allegations against him related to Stephen Smith's
> death.

(ECF No. 1-1 ¶ 18).

As already noted by Plaintiff, one of the primary issues of fact that will be the subject of extensive litigation and intense public interest in this case will be the determination of the first element of Plaintiff's defamation claim, that is, whether Plaintiff in fact did or did not kill Mr. Smith. Resolution of this issue will turn on the same evidence and witness testimony, including evidence of Mr. Murdaugh's location at the time of Mr. Smith's death and alibi, regardless of claim. *See* Wright, Miller & Kane, *supra*, § 1653 (explaining that courts are inclined to find that claims arise out of the same transaction or occurrence when the likelihood of overlapping proof and duplication in testimony indicates that separate trials would result in delay, inconvenience, and added expense to the parties and to the court). As also already noted by Plaintiff, the legal issues of whether Plaintiff is a private figure, limited public figure, or public figure, and whether common law malice or constitutional malice is the appropriate standard, will be based on the same sets of facts common to all Defendants. Contrary to the Order's assertion that Plaintiff would join "a wide-ranging array of claims to one lawsuit, as long as they have something to do with the Murdaughs", Plaintiff in reality seeks to promote judicial economy by joining different parties in a single proceeding where there is a likelihood of overlapping proof and duplication in testimony because the claims involve a common series of occurrences.

Therefore, if all Defendants are joined in one action, Plaintiff's claims against the Warner Defendants will not be completely predicated on distinct factual proof irrelevant to his claims against the remaining Defendants, and will in part be based on the same overlapping evidence that is common to all Defendants, and resolution of these factual issues will very much be as impactful on Plaintiff's claims against the Netflix Defendants as they will be on his claims against the Warner Defendants. Additionally, if the Court were to continue on this course, any findings by the Court or a jury on these factual and legal issues could have a preclusive effect against Plaintiff in his

state court defamation action against the Netflix Defendants, or vice versa, depending on how the parallel proceedings progress. *See e.g. Carroll v. Trump*, 690 F. Supp. 3d 396 (S.D.N.Y. 2023) (finding that jury's findings in separate action that statement had defamatory meaning and was false had issue-preclusive effect).

While the Order's dicta on these issues is provably erroneous, in the end it is largely irrelevant because it relates primarily to the first two factors of the *Grayson* analysis under Federal Rule of Civil Procedure 21 in scenarios in which the Court has federal jurisdiction to begin with, whereas here, the Court has already determined that it did not have diversity jurisdiction, and the rule from *In re Lipitor* does not ask the Court to exercise its own discretion, but to scrutinize the removing party's arguments to determine if it has pointed to any South Carolina authority conclusively demonstrating that it would be impossible to join all Defendants in a single action in a South Carolina state court. *See Alvarado v. Sweetgreen, Inc.*, Case No. 23-cv-8948 (LJL), 2024 WL 182761, at *11 n.5 (S.D.N.Y. Jan. 17, 2024) (stating that invoking Rule 21 to justify fraudulent misjoinder "puts the cart before the horse" and only applies after a federal court has jurisdiction).

To be honest, the Court's Order seems to have entirely forgotten that it did not have federal jurisdiction in this case in the first instance. Since within the removal context the Court does not have wide discretion to sever the claims, the Order should explain, by pointing to relevant South Carolina authority, why it would be impossible for the overlapping facts and precipitating series of occurrences underlying all the defamation claims to be considered "the same transaction, occurrence, or series of transactions or occurrences" under Rule 20, SCRCP, by a South Carolina court. *See State v. Hawes*, 411 S.C. 188, 191, 767 S.E.2d 707, 708 (2015) ("A failure to exercise discretion amount to an abuse of that discretion."). Given the dearth of South Carolina authority interpreting Rule 20, it is virtually impossible for this Court to determine how a South Carolina

court would decide on the issue of permissive joinder, given the vast discretion such a court would have to make its determination and the absence of South Carolina authority demonstrating it would be legally impossible to join all Defendants in one action in state court. Because there are material factual connections and common questions of law and fact between the claims against all Defendants, the Court's Order is in error and should be reconsidered.

Additionally, Plaintiff moves for clarification of the Court's Order. The Court's Order does not address Plaintiff's contention that the Court does not have jurisdiction to make a determination regarding misjoinder, and that the doctrine of fraudulent misjoinder is an impermissible expansion on federal court jurisdiction. (ECF No. 41-1, p. 28, n. 6-7) ("Plaintiff maintains, as many jurisdictions do, that fraudulent misjoinder is contrary to Federal Rule of Civil Procedure 82 and constitutes an impermissible judicial expansion of removal jurisdiction"). The Warner Defendants have argued that *In re Lipitor* is good law and that other courts in the Fourth Circuit have adopted fraudulent misjoinder. (ECF No. 59, p. 10 n.5). The Court should clarify its Order and include a specific finding as to whether fraudulent misjoinder is permissible or whether it expands federal removal jurisdiction without statutory authority.

Due to the divergent conclusions on the doctrine's applicability amongst the Circuits, the various federal district courts around the country, and the courts within this District, and the Fourth Circuit's well-settled rule that removal jurisdiction is to be strictly construed, the more practical choice for the Court would be for it to deny the Warner Defendants' Motions without prejudice, to remand this action to the Hampton County Court of Common Pleas, and to permit the Warner Defendants to file their Motion to Sever in state court. This would avoid the question of whether the District of South Carolina should be deciding issues of state joinder law in the first instance and keep the Court out of the "thorny thicket of unsettled law" that makes up the doctrine of

fraudulent misjoinder. *See Geffen v. Gen. Elec. Co.*, 575 F. Supp. 2d 865, 871 (N.D. Ohio Sep. 12, 2008). The better course of action is for a South Carolina state court to rule on the propriety of joinder under South Carolina's Rule 20, and if that court severs the case and diversity then exists, the Warner Defendants could seek removal of the action to this Court.

II.     **The Court should amend its Order to certify it for immediate appeal because it contains a controlling issue of law upon which there is substantial ground for differences of opinion, and an appeal would materially advance the ultimate termination of the litigation by ending this action and avoiding potentially inconsistent trials or stays of the federal or state litigation.**

28 U.S.C. § 1292(b) states that

> When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

Therefore, a district court is authorized to certify an order for interlocutory appeal where the following criteria are satisfied: (1) "such order involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from that order may materially advance the ultimate termination of the litigation[.]" *Capital Credit Plan, Inc. v. Shaffer*, 912 F.2d 749, 751 (4th Cir. 1990). The statement that the order is certified can be contained in the order which is being appealed or in an amendment to the order. *See James v. Circuit City Stores, Inc.*, 370 F.3d 417, 419 (4th Circ. 2004) (noting that district court entered subsequent order amending original to certify issues for immediate appeal).

Here, the Court's Order encompasses a controlling question of pure law for which there is substantial ground for difference of opinion: whether the Court's application of the fraudulent misjoinder doctrine impermissibly expands federal removal jurisdiction. The Fourth Circuit has

not adopted the fraudulent misjoinder doctrine since it was first articulated by the Eleventh Circuit in 1996. *Stallings v. Arch Ins. Co.*, Civil Action No. 2:21-3349-BHH, 2022 WL 4663250, at *5 (D.S.C. Sep. 30, 2022). The circuits remain split on whether the fraudulent misjoinder doctrine ought to exist at all. *See generally Proulx v. Mintzer*, 2020 WL 3105034, at *7 (D. Mass. 2020) ("The First Circuit has not to date recognized the doctrine of fraudulent misjoinder."); *Gipe v. Medtronic, Inc.*, 416 F. Supp. 3d 687, 697-98 (W.D. Ky. 2019) ("The Sixth Circuit has not adopted the fraudulent-misjoinder doctrine . . . . The Court likewise declines to apply it in this case."); *Ashworth v. Eurofins Donor & Product Testing, Inc.*, Civil Action No. 23-1958, 2024 WL 3993225, at *2 (E.D. Penn. Aug. 29, 2024) ("[T]he Third Circuit has not adopted the fraudulent-misjoinder doctrine . . . .").

District courts within the Circuits also differ on whether state or federal joinder law governs the analysis and whether something beyond "mere misjoinder" is necessary to support a claim of fraudulent misjoinder. *Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1320-21 (S.D. Miss. 2003) (noting the uncertainty over whether state or federal procedural rules control). There is considerable disagreement within the District of South Carolina as well concerning whether the doctrine should be adopted, leading to inconsistent results within the District depending upon which judge is assigned to which case. *See Stallings*, 2022 WL 4663250, at *5; *In re Lipitor*, 2016 WL 7373887, at *18-19; *Palmetto Health All. v. S.C. Elec. & Gas Co.*, No. 3:11-cv-2060-JFA, 2011 WL 5027162, at *2 (D.S.C. Oct. 21, 2011); *Beaty v. Bridgestone Americas Tire Operations, LLC*, Civil Action No. 4:10-3303-RBH, 2011 WL 939001, at *3 (D.S.C. March 16, 2011).

Here, the Court's Order essentially creates two actions from one: the original state court defamation action that has been remanded and a new federal defamation action. Plaintiff requests that the Court certify the following question of law to the Fourth Circuit for review: Whether the

doctrine of fraudulent misjoinder is an improper judicial expansion, without statutory authorization, of the scope of federal jurisdiction when invoked by courts to create diversity jurisdiction where there was none at the time of removal. The question presents a controlling question of law. "A question of law is generally considered to be controlling within the meaning of § 1292(b) if the action would have been terminated had the district court ruled the opposite way." *City of Charleston, S.C. v. Hotels.com, LP*, 586 F. Supp. 2d 538, 542 (D.S.C. 2008). "[W]hat the framers of § 1292(b) had in mind is more of an abstract legal issue or what might be called one of 'pure' law, matters the court of appeals 'can decide quickly and cleanly without having to study the record.'" *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004). "[T]he kind of question best adapted to discretionary interlocutory review is a narrow question of pure law whose resolution will be completely dispositive of the litigation[.]" *Fannin v. CSX Transp., Inc.*, No. 88-8120, 1989 WL 42583, at *5 (4th Cir. April 26, 1989). The proposed certified question will not require any reliance on the scant record that exists in this case, and a favorable ruling for Plaintiff would be dispositive of the federal action.

As explained above, there is ample ground for differences of opinion concerning the question of whether the doctrine of fraudulent misjoinder is proper, most importantly because the Fourth Circuit has not adopted or rejected the doctrine, and there is disagreement within the District of South Carolina as to whether the doctrine should be adopted. Further, an immediate appeal would significantly advance the ultimate termination of the federal litigation.

> This is not a difficult requirement to understand. It means that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation. *See generally* 16 Charles Alan Wright, et al., *Federal Practice & Procedure* § 3930 at 432 (2d ed. 1996); *see also In re Virginia Elec. & Power Co.*, 539 F.2d 357, 364 (4th Cir. 1976) (§ 1292(b) appeal appropriate where resolution of controlling question could prevent substantial delay); *U.S. Fidelity & Guar. Co. v. Thomas Solvent Co.*, 683 F. Supp. 1139, 1176 (W.D. Mich. 1988) (§ 1292(b) appeal appropriate where resolution of controlling questions could shorten

the time, effort, and expense of the litigation); *Ashmore v. Northeast Petrol. Div.*,
855 F. Supp. 438, 440 (D. Me. 1994) (§ 1292(b) appeal inappropriate where the
same parties and issues would remain in district court regardless of resolution of
issues on appeal).

*McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004). As explained above,

appellate review in Plaintiff's favor would immediately terminate this action, resolve the Court's

involvement with Plaintiff's claims, and lessen the delay, effort, expense, and inconvenience to

Plaintiff and the courts that would be created by maintaining two separate trials in two separate

courts.

Additionally, remanding all Defendants into one action in state court will facilitate the

termination of the state court action as well. Plaintiff's counsel will not have to devote limited

resources to two separate, ongoing cases and trials, one in federal court and one in state court, or

engage in unnecessarily duplicative discovery and motions practice. Allowing the immediate

appellate review of this undecided question would preserve judicial economy and shorten the time,

effort, and expense of the parties. *See Mosley*, 497 F.2d at 1332 ("Single trials generally tend to

lessen the delay, expense and inconvenience to all concerned."). Conversely, if this case is allowed

to go forward at this time, and the severability issue is favorably addressed by the Fourth Circuit

after trial, then Plaintiff will not only have to commence litigation against the Warner Defendants

anew in state court, he may also be permanently deprived of the legal and practical value of his

right as master of the complaint to have his claims heard against all Defendants by a single jury in

a single action in the forum of his choice (Hampton County), depending on the competing progress

of the ongoing state and federal claims.

If the Court were to certify the question pursuant to 28 U.S.C. § 1292(b), it would not be

the first time the fraudulent misjoinder issue has been certified to a Circuit for interlocutory

appellate review. In fact, the only Circuit to have adopted the fraudulent misjoinder doctrine, the

Eleventh Circuit, exercised its jurisdiction under section 1292(b) to immediately review the fraudulent misjoinder issue after the district court indicated in its order that it involved "a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1356 n.4 (11th Cir. 1996).

**III.    The Court should stay the deadlines to respond to Defendants' Rule 12(b)(6) Motions while Plaintiff's Motion for Reconsideration and Motion for Certification are pending.**

Plaintiff lastly moves the Court for an Order vacating the 10-day deadline to respond to the Warner Defendants Motions to Dismiss and staying the 12(b)(6) Motions pending the Court's ruling on Plaintiff's Motion for Reconsideration and Motion to Certify and Amend its Order for immediate appellate review. The basis for Plaintiff's Motion to Stay is that the creation and filing of responsive briefing may be wholly unnecessary and would needlessly burden both Plaintiff and the Court, given the uncertainty surrounding Plaintiff's motions and the effect they could have on the Court's jurisdiction to rule on Defendants' Motions.

The Warner Defendants have filed three Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF Nos. 48, 49, 50). Plaintiff's responsive briefing is due on March 3, 2025. Plaintiff has alternatively requested an extension to this deadline and has previously received one stay of the deadline to respond while his Motion to Remand was pending. (ECF Nos. 56, 57, 67). In their 12(b)(6) Motions to Dismiss, the Warner Defendants argue for a variety of unconvincing reasons that the Complaint fails to state a valid claim for defamation against each Defendant, that the allegedly defamatory statements are either true or statements of opinion and therefore are not actionable, or that the statements are protected by the fair report privilege.

District Courts have broad, inherent discretionary power to grant a stay in order to control their dockets, conserve judicial resources, and provide for a just determination of the cases pending before them. *Webb v. R. Rowland & Co., Inc.*, 800 F.2d 803, 808 (8th Cir. 1986). Stays can be granted to preserve the resources of the courts, counsel, and litigants. *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). It is widely accepted that after removal, a federal court should resolve a motion to remand before deciding on a motion to dismiss because the issues raised by a motion to remand are jurisdictional, and therefore, if the motion to remand is granted then federal court loses jurisdiction to hear the motion to dismiss. *Ball v. CSX Transp., Inc.*, Civil Action No. 3:14-13369, 2014 WL 1874560, at *2 (S.D. W. Va. May 9, 2014); *Applegarth v. Power Home Solar, LLC*, Case No. 2:24-cv-1309, 2024 WL 2862281, at *1 (S.D. Ohio June 6, 2024); *Hill v. Nat. Ins. Underwriters, Inc.*, Case No. 12-62498-CIV-ZLOCH, 2013 WL 11971265, at *1 (S.D. Fla. Aug. 7, 2013); *Showalter v. Sunlight Financial, LLC*, Case No. 21-00391-CV-W-GAF, 2021 WL 9667334, at *1-2 (W.D. Mo. June 25, 2021).

A stay of briefing until Plaintiff's Motion for Reconsideration of and Motion to Certify and Amend the Court's Order are resolved serves the interests of the parties and judicial economy. Plaintiff will be prejudiced in responding to and fully briefing Defendants' 12(b)(6) Motions because there is now a Motion for Reconsideration of the Court's Order severing the Warner Defendants, leaving the question of jurisdiction still open and undecided. Under the current briefing deadlines, Plaintiff will have to respond to each Motion in kind, and each response will have to be briefed with citations to federal case law. A review of Defendant Blackfin, Inc.'s Memorandum in support of its Motion to Dismiss reveals that while the brief cites South Carolina authority only 8 times, it cites District Court, Fourth Circuit, and other federal authorities over fifty

times. (ECF No. 48-1). Plaintiff's briefing will have to address the federal authorities cited by Defendants as well as their arguments relying on those federal authorities.

If Plaintiff were to fully brief a response to each Warner Defendant's Memorandum, and the Court were to reconsider its Order then remand this action to state court, Plaintiff would be required to start anew with the briefing to more fully account for the South Carolina authority a state court would rely upon. Additionally, certain issues raised by the Warner Defendants in their Motions, such as the plausibility standard provided by *Ashcroft v. Iqbal* and *Bell Atlantic Corp. v. Twombly*, are not applicable in a South Carolina state court. Plaintiff will effectively be forced to perform additional research and rewrite any responsive briefing if this action is remanded.

More importantly, if this case is remanded to state court, it is not a certainty that Plaintiff will have to respond to the Warner Defendants' briefing at all. As known by all parties involved in this matter and anyone who has ever litigated in South Carolina, in South Carolina state courts, briefing is not required for motions that come before a circuit court. Alternatively, while Plaintiff at his election may brief some of the issues raised by Defendants with recitations to South Carolina law for the state court, it is highly unlikely that he would fully brief all the issues raised by the Warner Defendants' briefing in state court because many of the Warner Defendants' arguments can be effectively addressed by oral argument at the circuit court's hearing without the necessity of briefing, whereas here, it is not a given that the Court will resolve the Motions with a hearing, so full briefing of the issues is required.

In the event that the Order is reconsidered and the case is remanded, all the prejudice, in the form of waste and unnecessary allocation of resources, will be borne by Plaintiff, as the only prejudice that could be suffered by the Warner Defendants is self-manufactured. If the 12(b)(6) Motions are stayed and the case is not remanded, the Warner Defendants will have suffered no

prejudice, as their Motions to Dismiss will still be filed and awaiting Plaintiff's responses, and a stay will not affect any other deadlines as no scheduling order has been filed by the Court. There is no reason for the parties to expend further resources until the outstanding jurisdictional issues have been finally resolved. Further briefing on Defendants' Motions can be stayed by the Court until it rules on Plaintiff's Motion for Reconsideration and Motion to Certify and Amend its Order for immediate appellate review.

## CONCLUSION

For the foregoing reasons, the Court should reconsider its Order and remand this action to the Hampton County Court of Common Pleas in its entirety. In the alternative, the Court should amend and certify its Order for immediate appellate review. Lastly, the Court should hold the deadlines to respond to the Warner Defendants' 12(b)(6) Motions to Dismiss in abeyance until Plaintiff's Motions are resolved.

I herby certify in conformance with Local Rule 7.02 that the undersigned has conferred with opposing counsel and attempted in good faith to resolve the matter contained in Plaintiff's Motions.

KENT LAW FIRM, LLC


/s/ Shaun C. Kent
Shaun C. Kent, Federal Bar #9326
Post Office Box 117
Manning, SC  29102
(803) 433-5368
shaun@shaunkentlaw.com

February 25, 2025
Manning, South Carolina