IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| RICHARD ALEXANDER MURDAUGH, JR., | ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 9:24-cv-04914-RMG |
| v. | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| BLACKFIN, INC., WARNER BROS. DISCOVERY, INC., WARNER MEDIA ENTERTAINMENT PAGES, INC., CAMPFIRE STUDIOS, INC., THE CINEMART LLC, NETFLIX, INC., GANNETT CO., INC. and MICHAEL M. DEWITT, JR., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## PLAINTIFF'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR RECONSIDERATION AND MOTION TO CERTIFY AND AMEND ORDER PURSUANT TO 28 U.S.C. § 1292(b)

Defendants Blackfin, Inc., Warner Bros. Discovery, Inc., Warner Media Entertainment Pages, Inc., and Campfire Studios, Inc. ("Defendants") contend that the Court should deny Plaintiff Richard Alexander Murdaugh, Jr.'s Motion for Reconsideration because there is no "same transaction, occurrence, or series of transactions and occurrences" from which the defamation claims against them and the remanded Defendants (The Cinemart LLC, Netflix, Inc., Gannett Co., Inc., and Micheal M. Dewitt, Jr.) arise, and because a void of guiding South Carolina law regarding whether all Defendants could possibly be joined in one action in a South Carolina court is not sufficient to create a scintilla of doubt as to whether joinder would be impossible. Defendants also contend that the doctrine of fraudulent joinder does not impermissibly expand the Court's removal jurisdiction, and that it was appropriate for the Court to exercise its discretion under Rule 21 as part of a fraudulent misjoinder analysis.

Defendants, and the Court's severance Order, are in error because there is unquestionably a common series of events and occurrences in relation to the defamation claims against all Defendants, including those remanded to state court, and the case law from other jurisdictions, including South Carolina, indicates that under these circumstances it would be possible to join the Defendants in one action under Rule 20, SCRCP. Additionally, the Court's Order is in error because it impermissibly blurs the lines between (1) the Court's fraudulent misjoinder rule, which does not ask the Court to exercise its own discretion but instead to predict if it is legally impossible that a South Carolina court would exercise *its* discretion to permit joinder under Rule 20 SCRCP, and (2) how the Court would exercise its own discretion under Fed. R. Civ. P. 21 if it had federal jurisdiction in the first place.

As to Mr. Murdaugh's Motion to Certify, Defendants argue that there is no controlling question of law, that there is no substantial disagreement amongst the Circuits and District Courts on the issue of fraudulent misjoinder, and that an immediate ruling in Mr. Murdaugh's favor by the Fourth Circuit would not materially advance the termination of this litigation. Defendants misunderstand or improperly frame Mr. Murdaugh's arguments, and in doing so, entirely avoid addressing them. The question of whether it was permissible for the Court to apply the fraudulent misjoinder doctrine in the first place is a controlling question of pure law that in no way requires an examination of the Court's discretion or the record in this case, has never been answered by the Fourth Circuit, is a source of disagreement amongst Courts within this District, and a favorable answer could have the result of hastening the termination of this action, which is in itself litigation separate and distinct from Mr. Murdaugh's state court defamation action. For these and the following reasons, the Court should grant Mr. Murdaugh's Motion for Reconsideration, or in the

alternative, Mr. Murdaugh's Motion to Certify and Amend the Court's Order for immediate appeal.

I. **The Order is clearly erroneous because there is a shared, precipitating series of events that is material to the first element of Mr. Murdaugh's defamation claims against all Defendants and because a Fed. R. Civ. P. 21 analysis is inapplicable to the Court's own fraudulent misjoinder rule.**

The Court's Order, and Defendants, misunderstand Mr. Murdaugh's argument as to the similar, precipitating "series of transaction or occurrences" giving rise to his defamation claims against all Defendants and justifying permissive joinder, including the joinder of those Defendants remanded to state court. The Court and Defendants both note that Rule 20, SCRCP permits joining multiple defendants if a plaintiff as asserted against them a "right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences." Another state court has observed that "the core purpose" of this language "is to permit a single trial of claims having similar foundation or similar issues." *Kennedy v. Lasting Paints, Inc.*, 404 Md. 427, 444, 947 A.2d 503, 513 (Md. 2008). However, in determining that severance was appropriate, the Court's Order misstates, or misunderstands, Mr. Murdaugh's basis for joining the claims against all Defendants:

> Under Plaintiff's interpretation, he could join a wide-ranging array of claims to one lawsuit, as long as they have *something to do with the Murdaughs alleged wrongful conduct*. This is not the Rule 20 standard. As the Warner Defendants aptly note, [w]hile Plaintiff asserts defamation claims against all of the Defendants, the bases for these claims are completely distinct: the Warner Documentaries with respect to the Warner Defendants, and the Netflix Documentary with respect to the Netflix Documentary Defendants.' (Dkt. No. 14 at 10). *Plaintiff must prove his claims against each set of Defendants independently, relying on distinct factual proof as to the contested statements and their context within each of the three documentaries*. Plaintiff himself concedes that he 'has separate claims against each Defendant for their own publications and republications.' (Dkt. No. 41-1 at 33). *Resolution of Plaintiff's claims against the Warner Defendants will in no way affect the resolution of his claims against the Netflix Defendants, and vice versa*.

(ECF No. 64 p. 12) (emphasis added).

3

Respectfully, Mr. Murdaugh's defamation claims have absolutely nothing to do with any wrongful conduct by any member of the Murdaugh family, and this characterization of Mr. Murdaugh's argument for joinder is a distortion of what he has argued and has led to an erroneous decision. As alleged by Mr. Murdaugh's Complaint, the defamation claims against all Defendants all surround the central factual issue of who killed Stephen Smith. (ECF No. 1-1 ¶¶ 18, 19, 22, 25). Mr. Murdaugh has alleged that all Defendants published statements with an identical defamatory implication: that Mr. Murdaugh murdered Mr. Smith, and the murder was subsequently covered up by the Murdaugh family.

Under South Carolina law, the first element of a defamation claim is the existence of a defamatory statement. *Holtzscheiter v. Thomson Newspapers, Inc.*, 332 S.C. 502, 530, 506 S.E.2d 497, 512 (1998). Depending on the status of the plaintiff and defendant(s), and the content of the publication, either the plaintiff is also required to prove the falsity of the statement or its meaning, or the defendant may prove its truth as an absolute defense. *Id.* at 531, 506 S.E.2d at 513. Therefore, either Mr. Murdaugh will have the burden of proving that he did not murder Mr. Smith, or Defendants will have the burden of proving that he did murder Mr. Smith. In order to prove or disprove the falsity or truth of the identical defamatory implications made by each Defendant, the parties will all rely on the exact same factual proof to demonstrate who killed Mr. Smith, and this proof is and will be entirely derived from the exact same foundational series of events, from the days and moments leading up to Mr. Smith's death, the ensuing investigation and origins of any rumor connecting Mr. Murdaugh to Mr. Smith, to the initiation of grand jury proceedings against individuals who are not Mr. Murdaugh.

As argued by Plaintiff in his initial opposition to the Motion to Sever, these events and proceedings will encompass and constitute proof that will be common and central to both the state

4

and federal actions, will drive the majority of the public interest in these cases, and will be material to the first element of Mr. Murdaugh's defamation claims. (ECF No. 41-1, pp. 32-34). To the contrary of the Order's and Defendants' belief, the resolution of the key factual issue of whether the defamatory implication of Defendants' series is false in either state or federal court will very much affect its resolution in the other court. The same evidence will be used in order to prove the issue of falsity against all Defendants in both courts, and this evidence will be solely derived from the same precipitating set of events giving rise to the notion that Mr. Murdaugh is connected to Mr. Smith's death. Mr. Murdaugh has alleged the same series of events leading to Mr. Smith's death lead to the publication of all three series, including Mr. Smith's activities on the night he was killed and the subsequent reporting on and investigation into Mr. Smith's death. (ECF No. 1-1 ¶ 18).

Mr. Murdaugh's burden to prove falsity, or Defendants' burden to prove truth, will also rely on evidence documenting and demonstrating Mr. Murdaugh's whereabouts at the time Mr. Smith was killed, autopsy findings demonstrating that Mr. Smith was not killed in the manner implied by Defendants' three series, as well as evidence of the ongoing law enforcement investigation and grand jury proceedings involving other suspects and persons of interest in Mr. Smith's death. Key to disproving the implication that Mr. Murdaugh murdered Mr. Smith will not only be proving that Mr. Murdaugh was unconnected to Mr. Smith's death but also proving where the rumor connecting Mr. Murdaugh to Mr. Smith's death originated. This will also rely on identical factual proof regardless of Defendant, and will include but not be limited to the contents of the MAIT investigation into Mr. Murdaugh's death, which memorializes the activities of law enforcement in the immediate days, weeks, and months following Mr. Smith's death, prior interviews with members of the Hampton County community by law enforcement and reporters,

and depositions of members of the community who have personal knowledge of the events leading

up to and following Mr. Smith's death, all of which transpired prior to and gave rise to Defendants'

defamatory publications.

Thus, while each series may contain separate statements, interviews, and segments, they

all evolved and arose from the exact same series of precipitating events, from the time preceding

Mr. Smith's death to the evolution of rumors involving Mr. Murdaugh and subsequent

republication and embellishment of those rumors by all Defendants.  This is important not because

it all has "something to do with the Murdaughs", but instead because the content of the timeline

of events preceding and following Mr. Smith's death will serve as proof of who actually killed Mr.

Smith, how he was killed, and where the notion that Mr. Murdaugh was somehow connected to

Mr. Smith arose. The proof is all derived from this exact same series of events, transactions, and

occurrences. And as Mr. Murdaugh has explained above, in his Motion for Reconsideration, and

in his opposition to the Warner Defendants' Motion to Sever, this proof is material and relevant to

the first element of his defamation claim against each Defendant.

Therefore, Mr. Murdaugh does not just seek to join all Defendants because they all have

something to do with "the Murdaughs alleged wrongful conduct", and instead he seeks to join

them all in one action because the claims against them all arise from the same events, and the

defamatory implication at the heart of each claim will have its falsity or truth proven or disproven

by evidence of what actually happened during that same series of events. The claims against all

Defendants are logically related because they are all alleged in relation to this identical series of

events. *See* Rule 20, SCRCP (stating that claims asserted against multiple defendants may be

joined "***in respect of or*** arising out of the same transaction, occurrence, or series of transactions or

occurrences."). Nowhere within the plain language of Rule 20 does it require that claims must arise

from a single event that triggers a legal right to assert the claims in order to be permissively joined, and Defendants and the Court's Order are in error to the extent that they would write this language into the Rule in favor of severance.

Defendants also incorrectly assert that there is guiding South Carolina law on Rule 20's "same transaction, occurrence, or series of transactions or occurrences" language. Defendants cite numerous cases for this proposition, but the bulk of them are unpublished appellate decisions and circuit court orders, which cannot serve as precedent and under the South Carolina Rules of Civil Procedure are not even supposed to be cited. *See* Rule 268, SCACR. To Plaintiff's best knowledge, there are only three published decisions directly discussing the application of Rule 20(a), SCRCP beyond a superficial mentioning of the Rule, and none of them analyze the boundaries of the Rule's "same transaction" language. The first, *McGann v. Mungo*, 287 S.C. 561, 340 S.E.2d 154 (1986), recites the exact language of the Rule, then states the following prior to affirming the circuit court's denial of the defendants' misjoinder arguments:

> Quite clearly the claims by the several plaintiffs involve one or more common questions of law and fact of "sufficient importance in proportion to the rest of the action to render it desirable that the whole of the matter should be disposed of at the same time." The mere fact that the plaintiffs may be entitled to different amounts of damages does not prevent them from banding together and asserting their rights jointly in one action.

*Id.* at 569, 340 S.E.2d at 158. There is no more language in the decision concerning Rule 20.

In *Farmer v. CAGC Ins. Co.*, 424 S.C. 579, 819 S.E.2d 142 (Ct. App. 2018), the Court of Appeals noted that that Rule 20 had two requirements, the "same transaction" requirement and the "common question" requirement, and only examined the "right to relief" language of the Rule in concluding that a complaint for declaratory relief was such a right to relief. *Id.* at 586-87, 819 S.E.2d at 145-46. In *Hoyler v. State*, 428 S.C. 279, 833 S.E.2d 845 (Ct. App. 2019), the Court of Appeals again examined whether a plaintiff's permissive joinder satisfied Rule 20, but did not

7

analyze the language of Rule 20's "same transaction" requirement. *Id.* at 302-03, 833 S.E.2d at 857-58. Therefore, there very much is a lack of guiding state law on the meaning and limits of Rule 20(a), SCRCP's "same transaction" language.

This cautions against the Order's finding that it would be impossible to join all Defendants in a single action in a South Carolina state court because South Carolina circuit courts have such wide discretion concerning misjoinder arguments, and there is no binding case law instructing South Carolina circuit courts on how narrowly or broadly they may interpret the "same transaction" language. *See Covington v. Hancock*, Civil Action No. 2:23-cv-05266-BHH, 2024 WL 2126863, at *3 (D.S.C. May 13, 2024) ("This Court could hazard an educated guess about what a South Carolina court may do here under the undisputed facts of this case, but that is exactly what the Fourth Circuit instructs district judges not to do when state law is not clear."); *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 425 (4th Cir. 1999) ("The very fact that courts may differ in their resolutions of this issue shows there is a possibility of recovery."). And while the Court may look to the law of federal and other state jurisdictions to attempt to predict how a South Carolina court would rule, the burden on Defendants is, and should be, especially onerous to prove that it would be absolutely impossible for a South Carolina circuit court to find that Defendants could be permissibly joined. Defendants and the Court's Order do not point to any cases that "squarely hold" that it would be legally impossible for Mr. Murdaugh to join all the Defendants in a single action. *Id.* at 426.

The Order should not have found that it would be impossible for Mr. Murdaugh to have joined all Defendants in a single action in a South Carolina court because courts in other state jurisdictions analyzing analogous fact patterns to those presented here have found that joinder would be permissible under Rule 20's "same transaction" language. (ECF No. 70 pp. 7-8). For

example, in *Wyatt v. Charleston Area Med. Ctr., Inc.*, 651 F. Supp. 2d 492 (S.D.W. Va. 2009), a plaintiff suffered injuries after a defective defibrillator malfunctioned and led to multiple shocks to her heart. *Id.* at 494. The plaintiff brought medical malpractice claims against her in-state medical providers for failing to properly monitor and treat her when she was injured. The plaintiff joined the out-of-state defibrillator manufacturer in the same action and alleged products liability claims against it. The manufacturer removed the case and argued that the claims against the in-state medical providers were fraudulently misjoined with the products liability claims.

The court found that the medical malpractice and products liability claims were not fraudulently misjoined. *Id.* at 498. Specifically, the court found that the claims arose from the same transaction or occurrence, despite the fact that the events and occurrences giving rise to the products liability claims, which involved the defective design, manufacture, and sale of the defibrillator, were separate and distinct from the events and occurrences giving rise to the medical malpractice claim, which involved the medical providers' negligence in treating the plaintiff. Because both the products liability and medical malpractice claims were related to the plaintiff's surgery and its aftereffects, the court found that they arose out of the same transaction or occurrence. Similarly, even though Mr. Murdaugh's defamation claims were directly triggered by separate tortious conduct by separate Defendants, all claims arose out of the same precipitating events: the death of Mr. Smith, the investigation into his death, the origin and spread of rumors connecting Mr. Smith to Mr. Murdaugh, the interest and reporting on the subject in the aftermath of Mr. Murdaugh's brother and mother being killed, and the Defendants' subsequent republication of the defamatory rumors.

If a District of West Virginia court could find joinder to be permissible under those facts, then it is not impossible that a South Carolina circuit court would find joinder to be permissible

under the present ones. The burden imposed on Defendants under the impossibility standard articulated by the Court in *In re Lipitor* has been described as a "heavy burden", more stringent than the standard applied to motions to dismiss, and subject to a "black-and-white analysis", with "shades of grey" resolved in favor of remand. *Hartley*, 187 F.3d at 24; *Clowney for Owens v. Hunt Valley Holdings, LLC*, Case No. 6:15-cv-03524-TMC, 2016 WL 11643616, at *2 (D.S.C. April 13, 2016). The Order is in error because in this case, there is no "black-and-white proof" that Mr. Murdaugh could not permissibly join all Defendants in one action in a South Carolina state court.

For similar reasons, the Court's utilization of a Rule 21 analysis to support its determination of fraudulent misjoinder in this case is erroneous because it relies on a discretionary analysis of factors that inherently inject "shades of grey" into the fraudulent misjoinder issue. The Court's Order implicitly relies on the first two factors of the Rule 21 analysis in determining that Mr. Murdaugh's claims were fraudulently misjoined. *See Grayson Consulting, Inc. v. Cathcart*, No. 2:07-CV-02992-DCN, 2014 WL 1512029, at *2 (D.S.C. Apr. 8, 2014) (stating that courts should consider "(1) whether the issues sought to be tried separately are significantly different from one another" and "(2) whether the separable issues require different witnesses and different documentary proof"). Ignoring that the issues sought to be tried against all Defendants are not significantly different, and that multiple legal and factual issues for the claims against all Defendants will require the same witnesses and documentary proof, by undertaking an analysis of these factors, which have never been adopted by a South Carolina court, the Court has exercised its own discretion instead of predicting if it would be impossible for a South Carolina court to exercise its discretion in favor of joinder.

"Federal courts have frowned on using the Rule 21 severance vehicle to conjure removal jurisdiction that would otherwise be absent." *Brown v. Endo Pharms., Inc.*, 38 F. Supp. 3d 1312,

1326 (S.D. Ala. 2014) (collecting cases). A defendant lacking "the proper jurisdictional key with which to open the doors of federal court" should not be permitted to rely on Rule 21 severance "to climb in the window." *Perry v. Norwest Fin. Ala., Inc.*, Case No. Civ. A 98-0260-CB-C, 1998 WL 964987, at *2 (N.D. Ala. Dec. 9, 1998). Courts have rejected the Rule 21 severance approach on removal as relying on the same "confound[ing] . . . circular logic" by which a removing defendant asks the court to act without jurisdiction as a means to create jurisdiction. *Lopez v. Pfeffer*, Case No. 13-cv-03341 NC, 2013 WL 5367723, at *5 (N.D. Cal. Sep. 25, 2013). "Judicial reluctance to employ Rule 21 in the removal context stems from the concern that application of Rule 21 would circumvent the strict constraints of the removal statute and unduly expand diversity jurisdiction." *Sons of the Revolution in N.Y., Inc. v. Travelers Indem. Co. of Am.*, Case No. 14-CIV-03303 (LGS), 2014 WL 7004033, at *2 (S.D.N.Y. Dec. 11, 2014) (collecting cases). "***Unlike the heavy burden that applies to establishing jurisdiction on removal, a defendant could succeed on a Rule 21 motion on a far lesser standard simply by appealing to the court's discretion.***" *Hampton v. Insys Therapeutics, Inc.*, 319 F. Supp. 3d 1204, 1214 (D. Nev. 2018) (punctuation and citation omitted) (emphasis added).

By performing its own Rule 21 analysis, the Court's Order erroneously applies an ordinary misjoinder standard in finding fraudulent misjoinder instead of applying the Fourth Circuit's and *In re Lipitor*'s impossibility standard. Because all of Mr. Murdaugh's claims involve common questions of law and fact that will be proven by evidence derived from a shared precipitating series of events, because the Court improperly exercised its own discretion in conducting a Rule 21 analysis to find fraudulent misjoinder, and most importantly, because neither Defendants nor the Court's Order have pointed to any "black-and-white" proof that Mr. Murdaugh could never join

11

all Defendants in a single action in a South Carolina state court, the Court should reconsider its

Order and remand this action to the Hampton County Court of Common Pleas.

II.     **Certification of the Court's Order is appropriate because the question of whether the**
        **doctrine of fraudulent misjoinder impermissibly expands the Court's removal**
        **jurisdiction will not ask the Fourth Circuit to review a discretionary decision or the**
        **facts of the case, there is substantial disagreement amongst the Courts of this District**
        **and the Fourth Circuit as to the doctrine's propriety, and reversal of the Court's**
        **Order will immediately terminate the federal action.**

Defendants argue that the question Mr. Murdaugh has asked the Court to certify to the

Fourth Circuit does not present a controlling issue of law because it would not entirely dispose of

the litigation. The question of subject matter jurisdiction is controlling because a reversal of the

Court's Order would strip the Court of jurisdiction, terminate the federal case, and remand the

entire action to state court. *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 390

(S.D.N.Y. 2020); *see also Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).

Further, the question in no way implicates the Court's discretion (which was not the proper

procedure under *In re Lipitor*'s fraudulent misjoinder standard to begin with) or the facts of this

case because the question does not ask whether the Court properly exercised its discretion or

applied the law to the facts of the case, and instead asks a threshold question of whether the

doctrine of fraudulent misjoinder itself is an impermissible expansion of federal removal

jurisdiction. Therefore, the question is a "pure question of law, i.e., an abstract legal issue that the

court of appeals can decide quickly and cleanly" without the need "to delve beyond the surface of

the record in order to determine the facts." *United States ex rel. Michaels v. Agape Senior Cmty.,*

*Inc.*, 848 F.3d 330, 340-41 (4th Cir. 2017).

In arguing that the question does not present a substantial ground for difference of opinion,

Defendants again misrepresent the question for certification in concluding that an order severing

a party under Rule 21 is not immediately appealable because it is a discretionary decision. (ECF

No. 71, p. 35 n.20). The precise question is whether the doctrine of fraudulent misjoinder is a violation of the doctrine of separation of powers in that it judicially expands the federal removal statute. On this question there is substantial ground for difference of opinion. District Courts from the First Circuit, Third Circuit, Fourth Circuit, Fifth Circuit, Sixth Circuit, Seventh Circuit, Eight Circuit, and Ninth Circuit have declined to apply or have rejected the doctrine, including courts within this District. Richard E. Kaye, *Construction and Application of Fraudulent Misjoinder Exception to Complete Diversity Rule*, 65 A.L.R. Fed. 2d 527 § 7 (2012); *Palmetto Health All. v. S.C. Elec. & Gas Co.*, C/A No. 3:11-cv-2060-JFA, 2011 WL 5027162, at *2 (D.S.C. 2011); *Beaty v. Bridgestone Americas Tire Operations, LLC*, Civil Action No. 4:10-3303-RBH, 2011 WL 939001, at *3 (D.S.C. 2011); *Stallings v. Arch Ins. Co.*, Civil Action No. 2:21-3349-BHH, 2022 WL 4663250, at *5 (D.S.C. Sep. 30, 2022). The doctrine was formulated by the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), and appears to have been implicitly accepted by the Fifth Circuit. *Lafalier v. State Farm Fire and Cas. Co.*, 391 Fed. App'x 732, 739 (10th Cir. 2010).

No other Circuit has adopted the doctrine, although no Circuit has flat out rejected the doctrine either. The Fourth Circuit has no guidance whatsoever as to whether the doctrine is constitutional or how it should be applied. *Zirkle v. Valley Forge Ins. Co.*, Civil Action No. 1:15CV82, 2015 WL 4729327, at *3 (N.D.W. Va. Aug. 10, 2015). However, the status of the doctrine among District Courts is "muddled", with other District Courts in the Fourth Circuit declining to accept or reject the doctrine. *Larson v. Abbott Labs.*, Civil Action No. ELH-13-00554, 2013 WL 5937824, at *12 (D. Md. Nov. 5, 2013); *Lewchuk v. Lewchuk*, No. 7:13-CV-00238-BR, 2014 WL 869289, at *1 (E.D.N.C. March 5, 2014); *Dinwiddie Cnty., Va. v. Purdue Pharm, L.P.*,

Civil Action No. 3:19-cv-242, 2019 WL 2518130, at *5 (E.D. Va. June 18, 2019); *John S. Clark Co., Inc. v. Travelers Indem. Co. of Ill.*, 359 F. Supp. 2d 429, 436 (M.D.N.C. 2004).

Additionally, the District Courts, including courts in this District, are in disagreement as to what is the proper standard for the fraudulent misjoinder analysis. *See Wyatt v. Charleston Area Med. Ctr., Inc.*, 651 F. Supp. 2d 492, 498-99 (S.D. W. Va. 2009) (applying a proof of egregious misjoinder standard); *Stephens v. Kaiser Found. Health Plan of the Mid-Atlantic States, Inc.*, 807 F. Supp. 2d 375 (D. Md. 2011) (applying an ordinary misjoinder analysis, which is what the Court appears to have done here); *Ashworth v. Albers Med., Inc.*, 395 F. Supp. 2d 395 (S.D. W. Va. 2005) (applying an intermediate standard between ordinary misjoinder and egregious misjoinder); *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Prac. and Prod. Liab. Litig.*, MDL No. 2:14-mn-02502-RMG, 2016 WL 7339811, at *6 (D.S.C. Oct. 24, 2016) (applying an impossibility of joinder standard); *Cramer v. Walley*, Civil Action No. 5:14-cv-03857-JMC, 2015 WL 3968155, at *5 (D.S.C. June 30, 2015) (applying an ordinary misjoinder standard). To the contrary of Defendants' argument, this is not merely an issue on which authorities merely lack unanimity, but instead is an issue for which there is no guidance from the Fourth Circuit on a split within the Districts in the Circuit, including within this District itself, as to whether the doctrine should be adopted at all and if so, what standard should be applied.

Lastly, Defendants erroneously argue that certification would not materially advance the litigation since the litigation would continue in state court even if the Fourth Circuit reversed the Court's Order. This argument entirely fails to recognize that a reversal of the Court's Order would place all the parties before the state court, thereby effectively terminating the federal litigation. *See In re NASDAQ Market Makers Antitrust Litig.*, 938 F. Supp. 232, 235 (S.D.N.Y. 1996) (stating that a remand that completely eliminates the federal action materially advances the termination of

14

the litigation); *Deutsche Bank Nat. Trust Co. v. Weickert*, 638 F. Supp. 2d 826, 831 (N.D. Ohio 2009) (same). Defendants cite two District of South Carolina cases to support their argument, but the procedural posture and history of those two cases is completely inapposite to the current circumstances.

In *Palmetto Health Alliance*, the court declined to certify the question of fraudulent misjoinder for immediate appeal because it would protract the litigation. However, in that case, the court *denied* the defendant's motion to sever and *granted* the plaintiff's motion to remand, such that certification and a reversal in that case of the court's remand order would prolong the federal litigation instead of hastening it. *Palmetto Health All.*, 2011 WL 5027162, at *1. In *Nesbit v. South Carolina Electric & Gas Co.*, the court denied the plaintiff's motion to certify its order denying remand not because it specifically found that a reversal of its order would not materially advance the case, but instead because the plaintiff "fail[ed] to provide specific argument as to how the issues addressed in the April Order satisfy the prerequisites for granting relief under section 1292(b)." *Nesbit*, Civil Case No. 3:15-cv-04893-JMC, 2016 WL 3085802, at *3 (D.S.C. June 2, 2016). Here, Mr. Murdaugh seeks reversal of an order continuing a federal action separate from his state court action, and he has adequately explained how certification of the order satisfies the requirements of section 1292(b). If the Court does not reconsider its Order, it should certify it for immediate appeal to clarify and provide guidance from the Fourth Circuit on the Court's application of the fraudulent misjoinder doctrine.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's Motion for Reconsideration, or in the alternative, certify and amend its Order for immediate appeal pursuant to 28 U.S.C. § 1292(b).

KENT LAW FIRM, LLC

/s/ Shaun C. Kent
Shaun C. Kent, Federal Bar #9326
Post Office Box 117
Manning, SC  29102
(803) 433-5368
shaun@shaunkentlaw.com

March 24, 2025
Manning, South Carolina