IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| RICHARD ALEXANDER MURDAUGH, JR., <br><br> Plaintiff, <br><br> v. <br><br> BLACKFIN, INC., WARNER BROS. DISCOVERY, INC., WARNER MEDIA ENTERTAINMENT PAGES, INC., AND CAMPFIRE STUDIOS, INC., <br><br> Defendants. | Civil Action No.: 9:24-cv-04914-RMG <br><br> **AMENDED COMPLAINT** <br> JURY TRIAL DEMANDED |

The Plaintiff alleges that:

1.     The Defendant, Blackfin, Inc. is a corporation organized and existing under the laws of New York with its principal place of business in New York, but it is subject to the jurisdiction of the Court by reason of doing business in South Carolina and by the commission of the below described wrongful acts.

2.     Defendant Blackfin, Inc. has transacted and engaged in a persistent course of business within this State, sent its agents into this State to collect information and create artistic work, derived substantial revenue from goods and services consumed in this State, entered contracts to be performed in this State, and produced goods with the reasonable expectation they would be used or consumed in this State, all in the process of producing some of the artistic works that give rise to the cause of action described herein.

3.     The Defendant, Warner Bros. Discovery, Inc., is a corporation organized and existing under the laws of Delaware with its principal place of business in New York, but it is subject to the

jurisdiction of the Court by reason of doing business in South Carolina and by commission of the below described wrongful acts.

4.   Defendant Warner Bros. Discovery, Inc. has transacted and engaged in a persistent course of business within this State, derived substantial revenue from goods and services consumed in this State, entered contracts to be performed with thousands of subscribers within this State, and produced goods with the reasonable expectation they would be used or consumed in this State, all in the process of distributing some of the artistic works that give rise to the cause of action described herein.

5.   The Defendant, Warner Media Entertainment Pages, Inc., is a corporation organized and existing under the laws of Georgia with its principal place of business in Georgia, but it is subject to the jurisdiction of the Court by reason of doing business in South Carolina and by commission of the below described wrongful acts. Warner Media Entertainment Pages, Inc. is a subsidiary of Warner Bros. Discovery, Inc.

6.   Defendant Warner Media Entertainment Pages, Inc. as owner of some of the artistic works described herein has transacted and engaged in a persistent course of business within this State, derived substantial revenue from goods and services consumed in this State, and sold and distributed its artistic works with the reasonable expectation they would be used or consumed specifically in this State.

7.   The Defendant, Campfire Studios Inc., is a corporation organized and existing under the laws of California with its principal place of business in California, but it is subject to the jurisdiction of the Court by reason of doing business in South Carolina and by commission of the below described wrongful acts.

8. Defendant Campfire Studios Inc. has transacted and engaged in a persistent course of business within this State, sent its agents into this State to collect information and create artistic work, derived substantial revenue from goods and services consumed in this State, entered contracts to be performed in this State, and produced goods with the reasonable expectation they would be used or consumed in this State, all in the process of producing some of the artistic works that give rise to the cause of action described herein.

9. Plaintiff is a citizen and resident of South Carolina. Plaintiff is a private figure who prior to the events giving rise to this action had not achieved fame or notoriety to any extent and does not exert any influence or control over government affairs.

10. Venue of the case is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred in this District.

11. On July 8, 2015, Stephen Smith, whose car had given out of gas, was walking along a rural road in Hampton County, South Carolina. It was late at night. As he was walking along the road he was allegedly struck by a part of a vehicle and killed. News sources now report his death is being considered by a statewide grand jury, and the media has reported on individuals unrelated to Plaintiff allegedly being involved in his death. The Plaintiff, even though he has been falsely accused of harming Stephen Smith as described below, has not been notified by any law enforcement entities of any allegations against him related to Stephen Smith's death.

12. On or about June 17, 2022, Defendant Warner Bros. Discovery, Inc. began streaming and broadcasting a series, "Murdaugh Murders: Deadly Dynasty", throughout the entire country, including South Carolina, through its platform discovery+ and the Investigation Discovery television channel, which falsely implies and subtly accuses the Plaintiff of being the murderer of Stephen

Smith. During a ten-minute segment of the "Murdaugh Murders: Deadly Dynasty" series, the Plaintiff is alluded to a number of times as the murderer of Stephen Smith.

13. These statements about the Plaintiff are defamatory in that when viewed as a whole, they falsely imply that Plaintiff committed a crime of moral turpitude. The statements have been published to hundreds of thousands, if not millions, of viewers who watched the show, including viewers in South Carolina, and the defamatory statements continue to be republished as of the filing of this action on a broad array of streaming platforms and channels owned by Defendant Warner Bros. Discovery, Inc. Defendant Warner Bros. Discovery, Inc. has hundreds of thousands of subscribers to its discovery+, Investigation Discovery, and other streaming and broadcasting services and channels within South Carolina, was aware of the acute regional interest in the series, and intended for South Carolina viewers to watch "Murdaugh Murders: Deadly Dynasty". Defendant Warner Bros. Discovery, Inc. purposefully and specifically directed marketing and advertising efforts for the series to South Carolina citizens.

14. Defendant Blackfin, Inc. created and produced the series "Murdaugh Murders: Deadly Dynasty" and in doing so published the above-described defamatory statements concerning Plaintiff and profited from Defendant Warner Bros. Discovery, Inc.'s republishing of the statements. In creating and producing the series, Defendant Blackfin, Inc. engaged in persistent series-development, investigation, and filming activities within this State to create an artistic work that would have specific appeal to viewers within this State and would be consumed by viewers within this State.

15. Beginning on November 3, 2022, the Defendants Warner Bros. Discovery, Inc., and Warner Media Entertainment Pages, Inc. began distributing and streaming a three-part series to the public on the Murdaugh family entitled "Low Country: The Murdaugh Dynasty" through Defendant Warner Bros. Discovery, Inc.'s platform HBO Max (now entitled Max) throughout the entire country

and specifically within this State. The series publishes statements that falsely suggest the Plaintiff, along with others, murdered Stephen Smith by striking him with a baseball bat. A sequence in the show accuses the Plaintiff of killing Stephen Smith because of his sexual orientation and further insinuates that the Plaintiff killed Stephen Smith in relation to a romantic relationship between Plaintiff and Smith. These statements are untrue in their entirety.

16. These statements are defamatory in that they falsely imply that Plaintiff committed murder. The false statements have been published to hundreds of thousands, if not millions, of viewers who watched the show, including viewers in South Carolina, and the defamatory statements continue to be republished as of the filing of this action across a broad array of streaming platforms and channels owned by Defendant Warner Bros. Discovery, Inc.

17. Defendant Campfire Studios Inc. created and produced the series "Low Country: The Murdaugh Dynasty" and in doing so published the above-described defamatory statements concerning Plaintiff and profited from Defendant Warner Bros. Discovery, Inc.'s republishing of the statements. In creating and producing the series, Campfire Studios Inc. engaged in persistent series-development, investigation, and filming activities within this State to create an artistic work that would have specific appeal to viewers within this State and would be consumed by viewers within this State.

18. Defendants' publications are unprivileged or exceed the scope of any privilege recognized by South Carolina and/or federal law. Defendants' publications are the product of their own investigations and interviews and not a report of an official law enforcement proceeding. Defendants' publications and republications of the defamatory statements are unfair and biased in that Defendants deliberately chose to omit from the series information, including the information

5

described below, that would have detracted from the series' intended, sensational inference that Plaintiff was responsible for the death of Mr. Smith.

19. The publications were made with reckless indifference to the truth and with knowledge of information that would have cast serious doubts on the intended defamatory meaning of the Defendants' publications. In publishing these statements Defendants purposefully ignored information demonstrating their falsity that was readily available to and within the Defendants' knowledge, including information indicating that individuals unrelated to Plaintiff were responsible for Mr. Smith's death. Accident investigation notes from the South Carolina Department of Public Safety's ("DPS") Multi-Disciplinary Accident Investigation Team ("MAIT") that were available to and reviewed by Defendants prior to publishing and republishing their series demonstrate that at least four individuals other than Plaintiff were rumored to be involved in the death of Mr. Smith or were potential suspects, that there was evidence indicating Mr. Smith's death was the result of a hit-and-run and not a homicide, and that the only sources of information tying Plaintiff to Mr. Smith were based on unfounded speculation, rumor, and hearsay. Defendants had no reliable or credible information indicating that Mr. Smith's death was the result of his sexual orientation or connected to Plaintiff.

### FOR A FIRST CAUSE OF ACTION AS TO DEFENDANTS BLACKFIN, INC. AND WARNER BROS. DISCOVERY, INC.
(Defamation by Implication)

20. Plaintiff hereby incorporates and re-alleges paragraphs 1 through 19 as if fully set forth herein.

21. Episode 1 of Blackfin, Inc.'s and Warner Bros. Discovery, Inc.'s series "Murdaugh Murders: Deadly Dynasty" is entitled "Pandora's Box".

22. The introductory sequence of the episode, which runs for approximately its first minute, introduces numerous themes through the juxtaposed statements of reporters, investigators, and community members which serve to drive the Defendants' narrative throughout the remainder of the series. Four of those themes of particular relevance to Plaintiff's claims are as follows: (1) Plaintiff's family is an all-powerful legal dynasty in Hampton with improper influence on local law enforcement and the judicial system, (2) the Murdaugh family has a sinister, depraved, and menacing presence within the Hampton community, (3) the Murdaugh family has covered up and will continue to cover up crimes to preserve their family legacy, and (4) Mr. Smith's death is connected to Plaintiff and the Murdaugh family. This sequence is initiated by the title sequence of the show, which includes an on-screen graphic of "Murdaugh Murders: Deadly Dynasty".

23. Samples of the juxtaposed, editorialized statements include "Who killed them? Why is this happening to these people?", "This was an incredibly powerful family", "The death of a 19-year-old man which for years had been unresolved, but has now been reopened . . .", "He was murdered. And somebody in Hampton County knows exactly who did it", "Everyone around this guy seems to die", "Your Honor, this is the tip of the iceberg", and "Pandora's Box is open. And the demons are loose." The juxtaposition of these statements intentionally vilifies the Murdaugh family and thematically sets the stage for Defendants to later encourage the audience to take a logical leap and conclude that Plaintiff killed Mr. Smith with a baseball bat as a result of a romantic relationship between the two.

24. Several sequences further on in the episode reinforce the theme that the members of the Murdaugh family hold "incredible power and influence", were guarded by "a great protector", and are never held accountable for their acts because they are covered up by the family and its influence. For example, one sequence approximately 13 minutes into the episode concludes that

7

"There was a sense of invincibility, immunity and impunity around the Murdaugh family . . . . This is just probably going to be swept under the rug like everything else." "This family was seen as untouchable."

25. The episode also contains statements intended to falsely demonstrate that people in the Hampton community were afraid of the Murdaugh family and that there were sinister and depraved elements within the family's ranks. Statements by a reporter and community member imply that other community members were afraid of the Murdaugh family, that the family lacked empathy for others, and that one of the Murdaugh children, Plaintiff's deceased brother, would "kill little baby animals" and "could kill anyone".

26. Episode 2 of "Murdaugh Murders: Deadly Dynasty" is entitled "Something Wicked This Way Comes."

27. Episode 2 picks up where Episode 1 left off, and within the first fifteen minutes republishes a statement by a community member implying that it was known within the community ("We all knew this was gonna happen") that Mr. Smith's death was "dirty business" connected to the Murdaughs.

28. The episode then superimposes on-screen stock footage of virulent, anti-LGBTQ demonstrations while a reporter discusses how difficult it would have been for Mr. Smith to be openly gay in the South. This sequence foreshadows Defendants' later implication that Mr. Smith's death was the result of his sexual orientation, as well as a false thread established by the series' narrative tying Mr. Smith romantically to Plaintiff.

29. The next sequence stitches together interview statements that, when observed by an objective audience member who has watched the preceding parts of the series, could reasonably lead to the inference (1) that the initial investigation, which indicated that Mr. Smith's death may have

8

been caused by a gun-shot wound, was covered up or deliberately bungled, (2) that there was no evidence or possibility his death was the result of a hit-and-run, and (3) that Mr. Smith may have been killed by a baseball bat. The sequence also indicates that a DPS investigator "knew something was not right" from the start.

30. This sequence is followed by an on-screen graphic stating "Someone else is also thinking about Stephen's family." The series then states that Plaintiff's uncle, Randy Murdaugh, called the Smith family to see if they needed representation, and that this was "extraordinary." "Why would Randy Murdaugh call Stephen Smith's house, after he's found dead in the road and offer to represent the family?" The series purposefully omits information that would have been known and is known to the Defendants, including information that Randy Murdaugh was representing Mr. Smith's father, Joel Smith, in an ongoing, unrelated case at the time of Stephen Smith's death.

31. The series publishes statements from a DPS investigator stating that he believed that he was being followed whenever he would travel into Hampton to investigate Mr. Smith's death by "law enforcement, some other agency, or – or some group . . . ." A reasonable inference from these statements, in light of the themes that have been presented to the observer thus far in the series and the investigator's previous interview excerpts, is that ill-intentioned forces have been assembled by the Murdaugh family to frustrate any outside law enforcement investigation into Plaintiff.

32. All of the above-described sequences, excerpts, and statements from the series were intentionally calculated to prime the recipient for the next segment of the series, in which Defendants' editorialization of a number of excerpts from interviews conducted by law enforcement implies and subtly asserts that Plaintiff was responsible for the death of Mr. Smith, that there would be no conviction because his family would cover it up due to its powerful influence, that the Murdaugh family would do it to preserve its reputation and legacy, and that Plaintiff and Mr. Smith were in a

9

romantic relationship preceding his death. During this sequence, the series depicts side-by-side images on the screen of Plaintiff and Mr. Smith, with the image of Plaintiff purposefully arranged such that it appears he is looking in Mr. Smith's direction and laughing, and concludes "But then, later on, it just kept coming up, Murdaughs, Murdaughs, Murdaughs. And then everything was just, like, swept under the rug." All of the recorded statements are unfounded and are solely based on rumor.

33. The Defendants' series is false and defamatory in that, when viewed in its entirety, it ultimately conveys the defamatory inference that Plaintiff killed Mr. Smith in connection with a romantic relationship, and that it was covered up by the Murdaugh family using its influence and connections, without any factual basis. The series interweaves statements supporting its thematic narratives with accounts from the law enforcement investigation into Mr. Smith's death in order to lend itself a sheen of authenticity while maximizing its sensational appeal to the audience by depicting Mr. Smith's death as being connected to Plaintiff and covered up by the Murdaugh family. The implication that Plaintiff killed Mr. Smith is provably false and defamatory.

34. Defendants' deliberate editorial choices and narrative themes suggest that they intended, or at least endorsed, the inference that Plaintiff killed Mr. Smith. This inference is created by the juxtaposition of certain statements within the show, even if they are opinion and/or facially true, to create a defamatory implication, alongside certain omissions of information that would have tended to show that Plaintiff was not involved in the death of Mr. Smith.

**FOR A FIRST CAUSE OF ACTION AS TO DEFENDANTS WARNER MEDIA ENTERTAINMENT PAGES, INC. AND CAMPFIRE STUDIOS, INC.[1]**
(Defamation by Implication)

---

[1] This cause of action also incorporates and continues Plaintiff's defamation by implication claim against Defendant Warner Bros. Discovery, Inc.

35. Plaintiff hereby incorporates and re-alleges paragraphs 1 through 34 as if fully set forth herein.

36. Episode 1 of Warner Bros. Discovery, Inc., Warner Media Entertainment Pages, Inc., and Campfire Studios, Inc.'s series "Low Country: The Murdaugh Dynasty" is entitled "Kings of the Lowcountry".

37. Episode 1 introduces numerous themes through the juxtaposed statements of reporters, local attorneys, and community members which serve to drive the Defendants' narrative throughout the remainder of the series. Three of those themes of particular relevance to Plaintiff's claims are as follows: (1) Plaintiff's family is an all-powerful legal dynasty in Hampton with improper influence on local law enforcement and the judicial system, (2) the Murdaugh family has a sinister, depraved, and menacing presence within the Hampton community, and (3) the Murdaugh family has covered up and will continue to cover up crimes to preserve their family legacy. These themes intentionally build to the next episode in the series, in which it is insinuated that Plaintiff killed Mr. Smith and that the Murdaugh family has covered up the crime and interfered with its investigation.

38. Samples of the juxtaposed, editorialized statements include "If you didn't know the Murdaughs, you wasn't from Hampton. And whether you knew 'em or not, they knew you", "Where the Murdaughs go, death seems to follow", "There is no justice in Hampton County. Yeah, if it comes out of Hampton, it's not going nowhere", "People that could erase it like it never happened", and "Enough evil had been done by the family. It's gone too far this time". The juxtaposition of these statements intentionally vilifies the Murdaugh family and thematically sets the stage for Defendants to later encourage the audience to take a logical leap and conclude that Plaintiff killed Mr. Smith with a baseball bat as a result of a romantic relationship between the two.

11

39. Several sequences further on in the episode reinforce the theme that "Hampton is pretty much historically dominated by one family: the Murdaughs", that members of Plaintiff's family were "like the puppet master", and that Plaintiff's family was involved in law enforcement corruption and could use their connections to cover up crimes. For example, one sequence approximately 22 minutes into the episode concludes that "You didn't want to get on the Murdaughs' bad side. It would be beneficial to stay out of the Murdaughs' radar" and that "The Murdaughs were like the Mafia. You know you just don't mess with 'em."

40. The episode also contains statements intended to falsely demonstrate that people in the Hampton community were afraid of the Murdaugh family and that there were sinister and depraved elements within the family's ranks. Statements by a reporter and community member imply that other community members were afraid of the Murdaugh family, that the family did not believe the law applied to them, and that one of the Murdaugh family members, Plaintiff's great-grandfather, would "hurt you any way he could", could turn family opponents into "crab bait", and "could have somebody taken out in a minute."

41. Episode 2 of "Low Country: The Murdaugh Dynasty" is entitled "Something in the Road."

42. Episode 2 picks up where Episode 1 left off, stating that "What you got from a lot of people was, 'It's the Murdaughs. Nothing's going to happen.'", and within the next six minutes, it depicts a series of juxtaposed images of newspaper articles concerning the death of Mallory Beach, the murders of Plaintiff's mother and brother, and the death of Stephen Smith.

43. The episode then features interview excerpts discussing how difficult it would have been for Mr. Smith to be openly gay in the South, including statements implying that it is unsafe to be gay in Hampton County. This sequence foreshadows Defendants' later implication that Mr.

12

Smith's death was the result of his sexual orientation, as well a false thread established by the series' narrative tying Mr. Smith romantically to Plaintiff.

44. The next sequence stitches together interview statements that, when observed by an objective audience member who has watched the preceding parts of the series, could reasonably lead to the inference (1) that the initial investigation, which indicated that Mr. Smith's death may have been caused by a gun-shot wound, was covered up or deliberately bungled, (2) that there was no evidence or possibility his death was the result of a hit-and-run, (3) that Mr. Smith must have been murdered, and (4) that Mr. Smith's death was the result of some unknown, mysterious, premeditated conspiracy. The sequence also contains a DPS investigator's assertion that "there were several red flags from the start in this investigation" and that they were "missing a whole lot of pieces that we should have not been missing."

45. The series asserts that Randy Murdaugh called Mr. Smith's father the morning after Mr. Smith's death and asked for Mr. Smith's electronic devices, passwords, and access to this social media accounts, and that Randy Murdaugh was seen on the site of the accident investigation while it was still ongoing. Additional statements imply that Randy Murdaugh knew about Mr. Smith's death and was on the scene before Mr. Smith's family was even notified. These statements are false and were purposefully inserted into the series to bolster the inference that Plaintiff killed Mr. Smith.

46. All of the above-described sequences, excerpts, and statements from the series were intentionally calculated to prime the recipient for the next segment of the series, in which Defendants' editorialization of a number of excerpts from interviews implies and subtly asserts that Plaintiff was responsible for the death of Mr. Smith, that there would be no conviction because his family would cover it up due to its powerful influence, that the Murdaugh family would do it to preserve its

reputation and legacy, and that Plaintiff and Mr. Smith were in a romantic relationship preceding his death. All of the recorded statements are unfounded and are solely based on rumor.

47. Statements made by interviewees during this segment include: "The rumors that's going around Hampton that everybody keeps coming up to me and saying it was Murdaugh boys", "the Murdaughs knew of Stephen's death before, probably, some of even Stephen Smith's family members did", "I just heard that one of my classmates did it . . . . Buster Murdaugh", "Because when someone told me that it was Buster, and I was like they were saying, if it's him nothing was going to be done about it because of who he was", "I did hear names, or heard a name, and that name was – he goes by Buster Murdaugh", "One of the rumors that we heard was that Buster and a couple of other guys had been out, seen Stephen, and they got in some type of argument and that a 2x4 or a bat was used to strike Stephen in the head area and that's what caused his death", and that there is "a classic Murdaugh mentality of thinking he was completely above the law and that ignoring the problem would make it go away." The excerpts also imply that an autopsy confirmed that Mr. Smith was struck with a baseball bat, that Plaintiff fled the country after Mr. Smith's death, that witnesses "disappeared" or were paid by the Murdaugh family not to speak to investigators, and that Mr. Smith had become entangled with the Murdaugh family prior to his death. None of the implications that can be drawn from these statements have any connection to reality or a factual basis.

48. The segment concerning Plaintiff and Mr. Smith concludes with the following statements: "Them Murdaughs killed my son", "The Murdaughs killed my son because he was gay", and "I can't [prove it], but I just know them Murdaugh boys killed my boy." "Being the underdogs in town, I guess, in their head, we're nothing, so who's gonna notice nothing being gone?"

49. The Defendants' series is false and defamatory in that, when viewed in its entirety, it ultimately conveys the defamatory inference that Plaintiff killed Mr. Smith in connection with a

14

romantic relationship, and that it was covered up by the Murdaugh family using its influence and connections, without any factual basis. The series interweaves statements supporting its thematic narratives with accounts from the law enforcement investigation into Mr. Smith's death in order to lend itself a sheen of authenticity while maximizing its sensational appeal to the audience by depicting Mr. Smith's death as being connected to Plaintiff and covered up by the Murdaugh family. The implication that Plaintiff killed Mr. Smith is provably false and defamatory.

50. Defendants' deliberate editorial choices and narrative themes suggest that they intended, or at least endorsed, the inference that Plaintiff killed Mr. Smith. This inference is created by the juxtaposition of certain statements within the show, even if they are opinion and/or facially true, to create a defamatory implication, alongside certain omissions of information that would have tended to show that Plaintiff was not involved in the death of Mr. Smith.

51. All of the above-described statements, and the relevant portions of each series as a whole, are defamatory in that they falsely imply that Plaintiff was involved in the murder of Stephen Smith; as a result of the juxtaposition of specific statements made by Defendants and republished by Defendants, in conjunction with the Defendant's purposeful omissions of facts contrary to the false implications, the Plaintiff's reputation has been irreparably damaged, and he has suffered mental anguish. In the time since Defendants' publications were initially broadcast to the public, social media and online forums have become rife with posts republishing Defendants' assertions and demonstrating that Plaintiff's reputation has been lowered in the estimation of the community. The brunt of damage to Plaintiff's reputation has been suffered in South Carolina, where Plaintiff is known, domiciled, and resides. Plaintiff is entitled to actual damages and punitive damages because of the reckless and intentional conduct of the Defendants, in complete disregard of the truth, in

creating and publishing statements falsely accusing him of being involved in the murder of Stephen Smith.

WHEREFORE, Plaintiff prays for actual damages, punitive damages, and the costs of this action.

BY: /s/ Shaun Courtney Kent<br>
Shaun Courtney Kent<br>
Federal Bar ID 9326<br>
Kent Law Firm, LLC<br>
P.O. Box 117<br>
Manning, SC 29102<br>
Phone: (803) 433-5368<br>
shaun@shaunkentlaw.com<br>
ATTORNEYS FOR PLAINTIFF

April 1, 2025
Manning, South Carolina