**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

**BEAUFORT DIVISION**

RICHARD ALEXANDER MURDAUGH, JR.,
Plaintiff,

vs.

BLACKFIN, INC., WARNER BROS. DISCOVERY, INC., WARNER MEDIA ENTERTAINMENT PAGES, INC., AND CAMPFIRE STUDIOS INC.,
Defendants.

Case No. 9:24-cv-04914-RMG

**REPLY IN SUPPORT OF MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT BLACKFIN, INC., JOINED BY WARNER BROS. DISCOVERY, INC. AND WARNER MEDIA ENTERTAINMENT PAGES, INC.**

# TABLE OF CONTENTS

ARGUMENT ..... 1

I. THE OPPOSITION CONFIRMS THE AMENDED COMPLAINT AND THE LEGAL THEORY ON WHICH IT IS BASED FAIL TO COMPLY WITH RULE 8. ..... 1

II. PLAINTIFF'S OPPOSITION CONFIRMS THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIM. ..... 4

III. PLAINTIFF FAILS TO MAKE THE REQUIRED "RIGOROUS SHOWING." ..... 7

IV. PLAINTIFF FAILS TO MEANINGFULLY CHALLENGE THAT ANY FACTUAL IMPLICATION CONVEYED BY THE BLACKFIN DOCUMENTARY IS TRUE. ..... 9

V. PLAINTIFF FAILS TO SUFFICIENTLY PLEAD COMMON LAW MALICE. ..... 10

VI. PLAINTIFF HAS FAILED TO REBUT THE APPLICATION OF THE FAIR REPORT PRIVILEGE REGARDLESS OF WHICH LAW APPLIES. ..... 11

VII. DISMISSAL WITH PREJUDICE IS WARRANTED. ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addahoumi v. Pastides*,
No. 3:16-cv-1571-CMC-SVH, 2018 WL 636122 (D.S.C. Jan. 30, 2018)....13

*Aitch v. Maybin*,
No. CIVA 9:08-2242 HMH G, 2008 WL 2943348 (D.S.C. July 29, 2008), *aff'd*, 325 F. App'x 281 (4th Cir. 2009)....12

*Beasley v. Arcapita Inc.*,
436 F. App'x 264 (4th Cir. 2011)....11

*Biospherics, Inc. v. Forbes, Inc.*,
151 F.3d 180 (4th Cir. 1998)....6

*Block v. Matesic*,
Case No. 21-61032-CIV-ALTMAN/Hunt, 2023 WL 8527670 (S.D. Fla. Dec. 8, 2023)....2, 3

*Carter v. Dozier*,
No. CIV.A. 2:10-2812-RMG, 2011 WL 2457547 (D.S.C. May 31, 2011)....12

*Chapin v. Knight-Ridder, Inc.*,
993 F. 2d 1087 (4th Cir. 1993)....7, 8, 9

*Cobin v. Hearst-Argyle Television, Inc.*,
561 F. Supp. 2d 546 (D.S.C. 2008)....11, 12

*Daniel v. HBO, Inc.*,
No. CV ELH-23-233, 2023 WL 8478867 (D. Md. Dec. 7, 2023)....1

*Harvey v. Cable News Network, Inc.*,
48 F.4th 257 (4th Cir. 2022)....11, 13

*Herbert v. McCall*,
No. CV 4:23-6242-JD-KDW, 2024 WL 4276995 (D.S.C. Aug. 9, 2024)....4, 9, 10

*Holt v. Stroman*,
No. 3:12-cv-03539, 2015 WL 1061990 (D.S.C. Mar. 11, 2015)....3

*McLaughlin v. Darlington Cnty.*,
C/A No. 4:21-1504-SAL-KDW, 2021 WL 4691379 (D.S.C. Sep. 17, 2021)....13

*McNeil v. S.C. Dep't of Corr.*,
404 S.C. 186, 743 S.E.2d 843 (Ct. App. 2013)....1, 2

*Milkovich v. Lorain J. Co.*,
497 U.S. 1 (1990)....................5, 6

*Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*,
829 F.2d 1280 (4th Cir. 1987)....................6

*Potter v. FIA Card Servs., N.A.*,
No. 2:12-CV-1722-RMG, 2012 WL 13005806 (D.S.C. Sept. 28, 2012)....................10

*Robins v. Nat'l Enquirer, Inc.*,
C.A. No. 3:95-224-17, 1995 WL 776708 (D.S.C. April 10, 1995)....................7

*Schilling v. James*,
No. C/A/NO. 3:08-539-CMC, 2008 WL 783785 (D.S.C. Mar. 21, 2008)....................12

*Tannerite Sports LLC v. NBCUniversal News Grp.*,
864 F.3d 236 (2d Cir. 2017)....................2, 9

*Toney v. WCCO Television, Midwest Cable & Satellite, Inc.*,
85 F.3d 383 (8th Cir. 1996)....................1

*Tully v. Pate*,
372 F. Supp. 1064 (D.S.C. 1973)....................12

*Turner v. KTRK Television, Inc.*,
38 S.W.3d 103 (Tex. 2000)....................1

*Va. Citizens Def. League v. Couric*,
910 F.3d 780 (4th Cir. 2018)....................7

*Vaughan v. United States*,
No. CR 2:94-511-RMG, 2021 WL 4993537 (D.S.C. Oct. 27, 2021) (Gergel, J.)....................4, 10

*Weise v. Colorado Springs*,
C.A. No. 17-cv-02696-PAB-NYW, 2020 WL 13701854 (D. Colo. Nov. 30, 2020)....................9

*Wellin v. Wellin*,
C.A. No. 2:13-CV-1831-DCN, 2016 WL 7626536 (D.S.C. Mar. 8, 2016)....................11

*Wells v. Liddy*,
186 F.3d 505 (4th Cir. 1999)....................11, 12

*White v. Wilkerson*,
328 S.C. 179, 493 S.E.2d 345 (1997)....................12

Defendant Blackfin, joined in full by the Warner Entities,[1] files this Reply in support of the Motion to Dismiss the Amended Complaint (Dkt. 88-1 ("Motion" or "Mot.")) in response to Plaintiff's opposition to the Motion (Dkt. 95 ("Opposition" or "Opp.")).

**ARGUMENT**

## I. THE OPPOSITION CONFIRMS THE AMENDED COMPLAINT AND THE LEGAL THEORY ON WHICH IT IS BASED FAIL TO COMPLY WITH RULE 8.

The Opposition confirms the Amended Complaint necessitates dismissal for failure to "provide sufficient factual information to put defendants on notice of their wrongdoing." Mot. at 22-24 (citation omitted). Plaintiff claims he does not need to identify any specific segment as defamatory because "the entire series when read as a whole represents its own individual act or statement of defamation" so "it should be sufficient that the Amended Complaint has alleged the defamatory meaning implied by Defendant's publications" (i.e., that "Mr. Murdaugh killed Mr. Smith"). Opp. at 11-12. The Opposition does not provide any legal authority for the notion that Plaintiff can avoid Rule 8 simply by labeling a "whole" publication as defamatory without identifying the specific statements that allegedly create the defamatory inference.[2] To the contrary,

[1] This Reply adopts the terms as defined in the Motion.

[2] The cases Plaintiff cites all involved complaints that specifically identified the content alleged to create a defamatory implication. *See* Opp. at 14-15, 21-22 (citing the following cases); *Toney v. WCCO Television, Midwest Cable & Satellite, Inc.*, 85 F.3d 383, 396 (8th Cir. 1996) (holding "a ***single*** statement [] created a defamatory implication when artificially juxtaposed with ***another statement***"); *Daniel v. HBO, Inc.*, No. CV ELH-23-233, 2023 WL 8478867, at *15-17 (D. Md. Dec. 7, 2023) (analyzing "fictitious statements" in a specifically identified scene before determining that a "reasonable factfinder could conclude from ***these statements***" that the plaintiff had engaged in sexual relations); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 119, 122 (Tex. 2000) (analyzing specific omissions and statements) (all emphases added). Plaintiff seems to argue that South Carolina law would not require pleading the content of specific statements, and includes a parenthetical suggesting that *McNeil v. S.C. Dep't of Corr.*, 404 S.C. 186, 195, 743 S.E.2d 843, 848 (Ct. App. 2013) supports that notion. Opp. at 11. Leaving aside that federal (not state) pleading standards apply here, the South Carolina Court of Appeals in *McNeil* affirmed dismissal of a claim for defamation for failing to "set forth with any ***specificity*** what the alleged false statements were." *McNeil*, 404 S.C. at 195 (emphasis added).

the Opposition approvingly cites cases that hold a defamation plaintiff must plead the specific defamatory content, even in a case involving defamation by implication. *See* Opp. at 14 (citing *Tannerite Sports LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017)[3] & *Block v. Matesic*, Case No. 21-61032-CIV-ALTMAN/Hunt, 2023 WL 8527670, at *10 (S.D. Fla. Dec. 8, 2023)). The district court's decision in *Block* is instructive because it defined claims for defamation-by-implication the same way Plaintiff does in his Opposition, specifically that such a claim exists when a publication "(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitted facts." *Compare* Opp. at 21, *with Block*, 2023 WL 8527670, at *9 (citation omitted). In dismissing the defamation-by-implication claim, the court in *Block* held that Matesic failed to specifically identify "the *true* facts Block has manipulated in an effort to defame him *by implication*," explaining:

> "Matesic hasn't adequately pled a claim for defamation by implication because he hasn't sufficiently identified the 'literally true facts.' In other words, he hasn't specifically identified the facts Block has either 'juxtaposed' in order 'to imply a defamatory connection between them' or 'omitted' in a way that 'creates a defamatory implication.' While Matesic has provided ample contextual material from which a defamation-by-implication claim could (theoretically) proceed, he hasn't connected the dots. Indeed, once we strip from the Counterclaim those assertions that (1) pertain to Block's (allegedly) false statements and which (2) are insufficiently vague, we're left with nothing."

*Block*, 2023 WL 8527670, at *9-10 (internal citations omitted). Likewise, Plaintiff has not adequately pleaded a claim for defamation by implication because he has not "specifically" identified "the facts" that the Defendants "either 'juxtaposed' in order 'to imply a defamatory

[3] The Second Circuit in *Tannerite* explained that a defamation plaintiff is required "to identify not only the publication, but also the respect in which it was allegedly false. A publication of even brief length often includes thousands of direct statements and implied messages whose veracity could be questioned by a defamation plaintiff. ***Some specificity is necessary so defendants and courts may address themselves to the parts of a communication alleged to be false and defamatory instead of those not objected to***." *Id.* (citations omitted) (emphasis added).

connection between them' or 'omitted' in a way that 'creates a defamatory implication.'" *Id*. This court, like the one in *Block*, is "left with nothing" on which to find a sufficiently pleaded claim for defamation-by-implication. Adopting Plaintiff's interpretation would lead to absurd results by permitting a defamation plaintiff to escape scrutiny at the dismissal stage simply by declaring that an entire series defames him by implication. *See* Opp. at 10-15.

The Opposition itself exposes the unfairness of adopting Plaintiff's pleading standard. While repeatedly emphasizing it "does not matter" if the statements in the Documentary are "facially true, speculation, opinion, or otherwise protected" because Plaintiff "is not claiming that any specific statement made during Defendant's series is actionable or defamatory in itself" (Opp. at 2, 10-11), Plaintiff simultaneously states there *are* "facially defamatory or untrue statements." *See id*. at 10 n.1 (pointing to "example" of "Buster did it" (citing Dkt. 88-1 at 15))[4]; *see also id.* at 23 n.11 (alleging that a statement in the series "itself is facially defamatory in that it asserts the false fact that the Murdaugh family has 'swept' its own misconduct and wrongdoing 'under the rug' numerous times, 'like everything else'"); *see also id*. at 17 n.4 (referring to narratives that are "not in themselves factually true"). Plaintiff's amorphous articulation of the content on which his claim rests deprives Blackfin of notice about the *actual* allegedly wrongful conduct against which it must defend itself. Blackfin and this Court should not have to guess. *See Holt v. Stroman*, No. 3:12-cv-03539, 2015 WL 1061990, at *3-5 (D.S.C. Mar. 11, 2015) (dismissing complaint under Rule 8 where defendants and the Court were "left to guess which facts and Defendants pertain to which counts.").

---

[4] The Opposition includes only an excerpt of the cited statement, which ignores that it is a direct quotation of a police interview in which a third-party stated: "Someone was talking about how he died. And then it was like, 'Well, you guys did it' And I was like, 'Nope. Didn't.' And he was like, 'Well, Buster did it.'" *Compare* Mot. at 15, *with* Opp. at 10 n.1.

## II. PLAINTIFF'S OPPOSITION CONFIRMS THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIM.

Plaintiff's Opposition largely leaves unanswered most of Blackfin's substantive arguments, which amounts to conceding he has no answer. *Compare* Mot. at 24-30, *with* Opp. at 15-20.[5] He does not engage with much of the actual content of the Documentary highlighted in the Motion—including the audio recordings of the law enforcement interviews indicating that third parties were conveying speculation, not fact. *Id*. Plaintiff concedes that the Documentary did not expressly reach any conclusion about how Ms. Smith died, if he was murdered, or, if so, who was responsible, but nevertheless insists that the Documentary "very much speaks in certainties" by including "numerous statements implying that the community 'knew' an investigation into Mr. Smith's death tied to the Murdaugh family would happen, that it was 'impossible' Mr. Smith's death was not a homicide, that investigators 'knew' something was not right with the ongoing investigation and that Mr. Smith was murdered, and that 'Buster did it.'" Opp. at 26-27 (citing Mot. at 13, 20, 21, 28). The "Buster did it" statement—which is the only one cited *about Plaintiff*—occurred in the context of the audio recording of a law enforcement interview in which a third-party conveyed speculation they had heard, which renders it protected both by the fair report privilege (*infra* § VI) and the First Amendment. *See* Mot. at 15; *see also* Ex. E at 26 (graphics on screen indicate that the segment includes "Actual Police Interview Audio"). No reasonable viewer would believe the Documentary *itself* implicitly concluded that Mr. Murdaugh murdered Mr. Smith by republishing audio of a law enforcement interview in which a third party conveyed

---

[5] *Herbert v. McCall*, No. CV 4:23-6242-JD-KDW, 2024 WL 4276995, at *3 (D.S.C. Aug. 9, 2024), *report and recommendation adopted,* No. 4:23-CV-6242-JD-KDW, 2024 WL 4556896 (D.S.C. Oct. 23, 2024) ("a litigant's failure to address arguments in responding to dispositive motions amounts to a concession of such arguments"); *Vaughan v. United States*, No. CR 2:94-511-RMG, 2021 WL 4993537, at *5 n.1 (D.S.C. Oct. 27, 2021) (Gergel, J.) (same).

speculation. Nor does it logically follow from the actual content and context of the cited statements contained in the Priming Portions that a reasonable viewer would understand the Documentary to convey any facts about Plaintiff. The Opposition does not respond to Blackfin's argument that virtually none of the statements identified by Plaintiff in the Priming Potions conveyed facts at all, let alone facts about Plaintiff. *See* Mot. at 29-30.[6] Nor does Plaintiff attempt to explain how the Blackfin Documentary reasonably could imply that *he*, in fact, murdered Mr. Smith when he admits that it also disclosed to viewers that his brother, Paul, was speculated to have been responsible. Mot. at 30; Opp. at 20. Plaintiff also does not attempt to reconcile his admission that the "***only*** sources of information tying Plaintiff to Mr. Smith" (i.e. the audio recordings that the Blackfin Documentary played) consisted of "unfounded speculation, rumor, and hearsay" with his burden to show that the Blackfin Documentary conveyed facts. *Compare* Mot. at 25-25, *with* Opp. at 16-20 (Documentary plays "gossip and hearsay"). Plaintiff's failure to address the arguments in the Motion or point to any statement or combination of statements in the Documentary that conveyed any such implication as fact warrants dismissal.

The crux of Plaintiff's response to the First Amendment's bar on his defamation claim is that the "question is not whether Defendant's published statements assert as a verifiable fact that Mr. Murdaugh killed Mr. Smith, the question is whether a reasonable observer could draw an inference from Defendant's series that Defendant is asserting between the lines that Mr. Murdaugh killed Mr. Smith." Opp. at 18; *id*. at 17, 18 n.5. The United States Supreme Court has said otherwise, explaining that the federal constitution "provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual.'" *Milkovich v. Lorain J.*

[6] Plaintiff implicitly concedes that the statements about other members of the Murdaugh family do not convey facts by failing to address the argument. *Compare* Mot. at 28, *with* Opp. at 20-25.

*Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50 (1988) (brackets in original)); *see Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (*Milkovich* prohibits liability attaching to statements where "no fact finder could reasonably interpret any of them as stating or implying actual facts" (citations and quotations omitted) (cleaned up)). The First Amendment's protection of statements that do not convey facts is *distinct* from the legal requirement that a statement carry a defamatory meaning to be actionable, notwithstanding Plaintiff's attempt to conflate the two concepts. The Fourth Circuit in *Biospherics* affirmed a district court's finding that "***while the challenged statements 'might be construed as defamatory,' they were nevertheless constitutionally protected***." *Id.* at 183 (emphasis added);[7] *accord Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1288 (4th Cir. 1987) (rejecting the notion "that any 'question of fact' which can be decided by a jury can be actionable as defamation" because such a "test ignores the underlying purposes of the fact/opinion distinction, and would lead to results that could not be reconciled with the developing case law in other circuits"). Accordingly, and contrary to Plaintiff's assertion, Plaintiff must demonstrate that the Documentary conveyed a *factual* implication even if *arguendo* the implication was defamatory. Here, Plaintiff's lawsuit does not "comport with the First Amendment" because the Blackfin Documentary "cannot reasonably be interpreted" as having stated *as a fact* that Plaintiff murdered Mr. Smith. Mot. at 24-30 (citing cases).[8]

---

[7] The *Biospherics* court summarized the case as presenting two distinct legal arguments: "(1) neither the article as a whole nor any of its specific statements could be reasonably interpreted to have a defamatory meaning ***and, in any event,*** (2) all of the statements in the article were entitled to First Amendment protection." 151 F.3d at 182-83 (emphasis added).

[8] Plaintiff's theory is built on an elaborate web of possible inferences (Opp. at 18 n.5, 20), which is self-defeating of his burden to prove that the Documentary itself conveys a factual implication. *See* Mot. at 27-30. Plaintiff's only response is to attempt to amend by opposition to argue for the first time that the Documentary conveys fact that "'are either incorrect or incomplete.'" Opp. at 17 n.4. There is no basis in the Amended Complaint for the Court to reach any such conclusion.

## III. PLAINTIFF FAILS TO MAKE THE REQUIRED "RIGOROUS SHOWING."

Plaintiff acknowledges he must make the "especially rigorous showing" that (1) the Documentary can be "reasonably" viewed to impart he murdered Mr. Smith ***and*** (2) that Defendants intended or endorsed that implication. Opp. at 21. He does not meet his burden as to either prong.

Plaintiff attempts to meet the first prong largely by repeating the allegations of the Amended Complaint virtually verbatim (*compare* Opp. at 22-27, *with* Am. Compl. ¶¶ 21-31) and concluding that that content "when viewed as a whole, reveals that its juxtapositions of statements, graphics, and music, alongside the omissions of certain evidence that would exonerate or reduce the intensity of suspicion cast onto Mr. Murdaugh, not only could reasonably lead a viewer to infer the defamatory meaning, but also serve as affirmative proof that Defendant made purposeful and deliberate choices to edit the series in such a manner as to suggest the inference." Opp. at 22. Regurgitating the allegations of the Amended Complaint and asserting a legal standard for defamation by implication does not meet Plaintiff's "rigorous" burden to *show* that the alleged defamatory implication is "present in the plain and natural meaning of the words used" in the Documentary. Mot. at 31-35. As Plaintiff in his own Opposition states, it is not the Court's job to "hunt for a forced and strained construction to put on ordinary words" where, as here, the "plain and natural" language of the Documentary raises questions and theories about the death of Mr. Smith without reaching any conclusions. Opp. at 29 (citation omitted); *supra* § II; Mot. at 31-35.[9]

---

[9] *Accord Chapin*, 993 F.2d at 1094 (language "cannot be tortured 'to make that certain which is in fact uncertain'"); *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 786 (4th Cir. 2018) ("Even with the benefit of every inference, the edited footage is not reasonably capable of suggesting" defamatory meaning); *Robins v. Nat'l Enquirer, Inc.*, C.A. No. 3:95-224-17, 1995 WL 776708, at *3 (D.S.C. April 10, 1995) (rejecting Plaintiff's "hypothesiz[ing] that a reasonable reader of the article could falsely conclude that Plaintiff was 'partially' responsible for the murder of Smith's two boys" based upon "the combination of the article's headlines, the use of Plaintiff's photograph, and the article's language").

Plaintiff's conclusory assertion that the Blackfin Documentary "speaks in certainties" and does not "raise questions as to who may have been involved in the death of Mr. Smith, then decline to answer them" is directly contradicted by the Documentary itself, including the portions on which he relies. Opp. at 25-27, *see supra* § II.

As far as the second prong, Plaintiff attempts to meet his "rigorous" burden in a footnote in his Opposition that argues Blackfin's "editorial choices" provide sufficient "prima facie evidence" of endorsement. Opp. at 22 n.9. Plaintiff does not identify any edits in the Documentary that "affirmatively suggest" based on the "plain and natural meaning of the words used" that Blackfin intended or endorsed the inference that he murdered Smith. *Chapin v. Knight-Ridder, Inc.*, 993 F. 2d 1087, 1092-93 (4th Cir. 1993) (emphasis added); *see* Mot. at 31-36. He implicitly admits the Documentary does *not* include any such endorsement on its face by arguing it would be "unfair" to require he plead facts demonstrating endorsement because he has not engaged in discovery. Opp. at 22 n.9. Plaintiff's admission that he cannot demonstrate endorsement based on the "plain and natural meaning of the words used" of the Documentary is fatal to his claim and warrants dismissal. If Plaintiff could meet the *Chapin* endorsement simply by referencing general "editorial choices" that also form the basis for his attempt to meet the first prong, it would permit a defamation-by-implication plaintiff to automatically meet the "rigorous" second prong of *Chapin* simply by satisfying the first and would turn the second prong into a nullity.

Separate from *Chapin*, Plaintiff in his Opposition does not identify any facts that meet the juxtaposition or omission standard he constructs. He does not point to any truthful facts that are juxtaposed to imply that Plaintiff murdered Mr. Smith. *See* Mot. at 32-35; Opp. at 21-28. Nor does he identify any specific factual omissions that "would have made for a more balanced presentation" and negated the alleged defamatory inference, relying instead only on the same insufficient

conclusory allegation that the Documentary omitted "key facts." *Compare* Opp. at 30, 34 n.16, *with* Mot. at 34-35.[10] Plaintiff has not carried his "rigorous" burden to show that the Blackfin Documentary implied, and that the Defendants intended to imply, he murdered Mr. Smith.

## IV. PLAINTIFF FAILS TO MEANINGFULLY CHALLENGE THAT ANY FACTUAL IMPLICATION CONVEYED BY THE BLACKFIN DOCUMENTARY IS TRUE.

Plaintiff fails to address the substance of Defendants' substantial truth argument by insisting it is "irrelevant because the Fourth Circuit has recognized that a defamation by implication claim may be based on literally true statements." Opp. at 21 (citing *Chapin*, 993 F.2d at 1092-93).[11] Plaintiff, again, confuses distinct legal doctrine. *Even if* a publication conveys a defamatory meaning based on literally true statements, a claim for defamation cannot lie if the gist or "sting" of the meaning conveyed is substantially true. *Chapin*, 993 F.2d at 1092; *Weise v. Colorado Springs*, C.A. No. 17-cv-02696-PAB-NYW, 2020 WL 13701854, at *5 (D. Colo. Nov. 30, 2020).[12] Here, there can be no claim for defamation because Plaintiff has not demonstrated that the alleged defamation would be "more damaging" to his "reputation in the mind of the average

---

[10] The Opposition includes footnotes about a "second independent autopsy" and "numerous other individuals" identified in the Investigative Materials. Opp. at 24 n.13; *id*. at 34 n.16. There are no such allegations in the Amended Complaint, and the Court cannot consider them in the context of a motion to dismiss. *Chapin*, 993 F.2d at 1098; *Tannerite Sports LLC*, 864 F.3d at 251. Plus, Plaintiff does not, and cannot, explain how the inclusion of such information "would have made for a more balanced presentation." For example, Plaintiff's claim that one person "confessed to striking and killing Mr. Smith" misstates the cited portion of the Investigative Files, which does not reference a confession but rather refers to hearsay conveyed in the form of a tip that someone made "because Randy Murdaugh" told him to. Opp. at 34 n.16 (citing ECF No. 51-2 at 29). Plaintiff has not attempt to explain how the absence of such information, *including* about the involvement of Plaintiff's uncle in curating this tip, created the defamatory implication about Plaintiff. *See* Mot. at 34-35.

[11] The Court may treat Plaintiff's failure to meaningfully address the substantial truth doctrine as a concession. *See Herbert*, 2024 WL 4276995, at *3.

[12] Plaintiff cites *Chapin* but ignores the part of the opinion holding that *even if* one of the alleged defamatory statements could "construed as an assertion" of defamatory fact, it still would not state a claim because that assertion "would be substantially true." *Id*. at 1094.

listener, than a truthful statement would have been." Mot. at 36-37 (citing *Coker v. Norwitch Com. Grp., Inc.*, No. CV 3:20-03071-MGL, 2023 WL 3791106, at *6 (D.S.C. June 2, 2023) and other cases). In other words, Plaintiff must, but cannot, demonstrate that average viewers of the Documentary would come away with a different impression of him then they would from the admitted fact that his name surfaced in numerous interviews with law enforcement as part of the investigation into Mr. Smith's death.

## V. PLAINTIFF FAILS TO SUFFICIENTLY PLEAD COMMON LAW MALICE.

To survive dismissal, Plaintiff concedes he must plead facts demonstrating that each of the Defendants acted with common law malice, which he defines as "reckless indifference to the truth." Opp. at 35. Plaintiff relies solely on paragraphs 18, 19 and 30 without addressing (and therefore conceding) the reasons explained in the Motion why such allegations are insufficient to plead common law malice as a matter of law. *Compare id.*, *with* Mot. at 37-41; *Herbert*, 2024 WL 4276995, at *3; *Vaughan*, 2021 WL 4993537, at *5 n.1.[13] The only argument in the Motion that Plaintiff addresses in Opposition is as to his improper group pleading, which he attempts to defend by stating the Amended Complaint includes "individualized allegations" about the "editorial choices" made. Opp. at 35 n.17. Editorial decisions do not demonstrate that anyone at Blackfin "had reason to doubt" the veracity of the alleged implication in the Documentary. Mot. at 37-41. For the unaddressed reasons Defendants articulated in the Motions to Dismiss, Plaintiff has failed to sufficiently plead common law malice.[14]

---

[13] As discussed above, Plaintiff attempts to amend his complaint by opposition by referencing an "individual" in the Investigative Files who his uncle told someone to report to law enforcement. Plaintiff cannot explain how the decision to omit that tip evinced any sort of reckless disregard.

[14] Plaintiff cites *Potter v. FIA Card Servs., N.A.*, No. 2:12-CV-1722-RMG, 2012 WL 13005806, at *2 (D.S.C. Sept. 28, 2012) (cited in Opp. at 35), but it does not help his argument because in that case a plaintiff sufficiently pleaded malice by alleging that he "repeatedly told" the defendants that he was not an obligor on an account and that the defendants even "agreed he was not an obligor

## VI. PLAINTIFF HAS FAILED TO REBUT THE APPLICATION OF THE FAIR REPORT PRIVILEGE REGARDLESS OF WHICH LAW APPLIES.

Plaintiff concedes that the fair report privilege covers some portion of the Blackfin Documentary (Opp. at 31), but does not specify any portion that would fall outside its scope. This alone warrants dismissal. *Supra* § I; *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 275 (4th Cir. 2022) (dismissing defamation claim because plaintiff "cannot show that the statements" were not privileged); *Cobin v. Hearst-Argyle Television, Inc.*, 561 F. Supp. 2d 546, 552 (D.S.C. 2008) ("Context and presentation matter for purposes of the privilege" and a court "cannot fully determine the applicability of the privilege without the opportunity to evaluate the context of the statements, the purpose for including details of the police report" in the publications, "and the way in which those details were included"). The only statements in the Relevant Portion of the Blackfin Documentary arguably involving Plaintiff—and the *only* statement about him identified in the Opposition (Opp. at 10 n.1, 26-27)—are protected because they are contained in the audio recordings of law enforcement interviews with witnesses telling investigators about speculation that Plaintiff was involved in Smith's death. *See* Mot at 41.[15] Accordingly, the Court can dismiss the Amended Complaint because it is predicated on statements that are absolutely privileged pursuant to New York law. Mot. at 41-43.[16]

---

on the account" but nonetheless continued to state the opposite. Plaintiff's Amended Complaint is devoid of any allegation that he provided any information or denials to the Defendants.

[15] Plaintiff does not challenge and therefore concedes that the Court can take judicial notice of the state Investigative Materials and can consider the transcripts of the Blackfin Documentary because they are integral to the Amended Complaint. Mot.at 4 n.3 & n.4; *Beasley v. Arcapita Inc.*, 436 F. App'x 264, 266 (4th Cir. 2011) (court may consider documents integral to the Complaint provided by defendants in connection with motions to dismiss).

[16] The bulk of Plaintiff's argument as to privilege is that South Carolina law should apply under the doctrine of *lex loci delicti* (Opp. at 31-32) while ignoring that other courts in this district have relied on the "most significant relationship" test in multi-state tort contexts because, as the Fourth Circuit has explained, the *lex loci delicti* test is "cumbersome, if not completely impractical" in multi-state defamation actions. *See Wells v. Liddy*, 186 F.3d 505, 527 (4th Cir. 1999); *Wellin v.*

Even if the Court applies South Carolina's qualified fair report privilege, it protects Blackfin from this lawsuit. Plaintiff is wrong that the privilege is unavailable because Blackfin is not a "news organization." *Compare* Opp. at 32-33, *with* Mot. at 41-43; *see, e.g.*, *Carter v. Dozier*, No. CIV.A. 2:10-2812-RMG, 2011 WL 2457547, at *3 (D.S.C. May 31, 2011), *report and recommendation adopted*, No. CIV.A. 2:10-2812-RMG, 2011 WL 2434145 (D.S.C. June 16, 2011) (applying privilege to firefighter); *Schilling v. James*, No. C/A/NO. 3:08-539-CMC, 2008 WL 783785, at *4 (D.S.C. Mar. 21, 2008) (applying fair report privilege to private citizen); *Aitch v. Maybin,* No. CIVA 9:08-2242 HMH G, 2008 WL 2943348, at *2 (D.S.C. July 29, 2008), *aff'd*, 325 F. App'x 281 (4th Cir. 2009) (same); *White v. Wilkerson*, 328 S.C. 179, 186, 493 S.E.2d 345, 348 (1997) (radio station protected by fair report privilege).[17] Likewise, his argument that "the privilege would not protect any matter added to the contents of the MAIT investigation" or because the Investigative Files are not expressly referenced every time the Documentary conveys information about the investigation misstates the legal standard and is unsupported by any authority. Opp. at 33; *see* Mot. at 41-43 (cases explaining fair report attaches to statements with a "factual predicate" derived from the official document); *see Cobin*, 561 F. Supp. 2d at 554-56 ("The privilege does not require that the published report be verbatim of the official report but it must only be substantially correct" even if it uses "'shorthand' to summarize the contents");

---

*Wellin*, C.A. No. 2:13-CV-1831-DCN, 2016 WL 7626536, at *3-5 (D.S.C. Mar. 8, 2016); *Tully v. Pate*, 372 F. Supp. 1064, 1071-72 (D.S.C. 1973). As Plaintiff does not even attempt to claim that South Carolina has a more significant interest than New York, the Court can dismiss the Complaint in its entirety based on New York fair report privilege. *See* Opp. at 31-34. If the *lex loci delicti* applies, the Court still should apply New York law since it was the location of publication. *Wells*, 186 F.3d at 521-22.

[17] Plaintiff's reliance on *Tharp* in support is misguided, evident by his own parenthetical which reflects that the court in *Tharp* held that the privilege did not extend to the defendants because the publication was "originally based upon their own investigation and interviews, rather than a government report or action." Opp. at 33.

*McLaughlin v. Darlington Cnty.*, C/A No. 4:21-1504-SAL-KDW, 2021 WL 4691379, at *4 (D.S.C. Sep. 17, 2021), *report and recommendation adopted*, 2021 WL 4691055 (D.S.C. Oct. 7, 2021) (same).

Plaintiff cannot overcome South Carolina's fair report privilege because the Amended Complaint fails to sufficiently plead actual malice for the same reasons why it does not plead facts sufficient to demonstrate common law malice. *Supra* § V. Actual malice is an even higher bar, and conclusory allegations that the series is "not fair, impartial, and unbiased" are insufficient as a matter of law. Opp. at 34; *Harvey* 48 F.4th at 274, 275 n.9 (declining to consider "forfeiture" of privilege given "naked assertion" failing to allege actual malice and presence of applicable privilege). For the (largely unrebutted) reasons described in the Motion, the Court should dismiss the Amended Complaint based on the fair report privilege.

## VII. DISMISSAL WITH PREJUDICE IS WARRANTED.

The Court should dismiss this lawsuit with prejudice and reject Plaintiff's repeated suggestion that he could and should be permitted to attempt to cure the pleading failures if given leave to amend. Opp. at 15, 28, 30. The defects of the Amended Complaint are *incurable* as a matter of law, including because the Documentary cannot be reasonably interpreted as asserting as fact that Plaintiff murdered Smith (Mot. at 24-30); there is no content that can be "read to impart" that Plaintiff murdered Mr. Smith *or* that "affirmatively suggest[s]" that the relevant Defendants intended or endorsed that inference (*id.* at 31-36); the statements about Plaintiff are true (*id.* at 36-37); there is no basis to find that the relevant Defendants acted with common law malice (*id.* at 37-41); and they are protected by the fair report privilege (*id.* at 41-43). Even if it were possible for Plaintiff to overcome the failure to state a claim, he already had a chance to do so and should not receive a third bite at the apple. *See generally Addahoumi v. Pastides*, No. 3:16-cv-1571-CMC-SVH, 2018 WL 636122, at *3-4 (D.S.C. Jan. 30, 2018) (dismissing claim where

plaintiff was "already had two opportunities to amend his complaint," "failed to clarify which claims are against which Defendants," and did not comply with Rule 8). Plaintiff could have, but chose not to, file an amended complaint as of right after Defendants filed motions to dismiss *more than seven months ago*, and he could have waited to move for leave to file an amended complaint until after receiving the Court's guidance in an opinion on the motion to dismiss. Plaintiff could have made all these strategic decisions, but he chose not to, and Blackfin should not bear the burden of briefing another motion opposing leave to amend and to dismiss a complaint that undoubtedly will be deficient.

## CONCLUSION

For the reasons discussed herein, the Moving Defendants respectfully request the Court dismiss Plaintiff's claim of defamation as to the Blackfin Documentary with prejudice.

Respectfully submitted,

s/ MERRITT G. ABNEY

NELSON MULLINS RILEY & SCARBOROUGH, LLP
David E. Dukes, Esq. (Federal Bar No. 00635)
E-Mail: david.dukes@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000

Merritt G. Abney, Esq. (Federal Bar No. 09413)
E-Mail: merritt.abney@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC 29401-2239
(843) 853-5200

WILLKIE FARR & GALLAGHER LLP

Meryl C. Governski, *pro hac vice*
Kristin Bender, *pro hac vice*
1875 K Street N.W.
Washington, DC 20006-1238
(202) 303-1000
mgovernski@willkie.com
kbender@willkie.com

*Attorneys for Defendants Blackfin, Inc., Warner Bros. Discovery, Inc., Warner Media Entertainment Pages, Inc. and Campfire Studios, Inc.*

Charleston, South Carolina
June 2, 2025