# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

# BEAUFORT DIVISION

| | |
|---|---|
| RICHARD ALEXANDER MURDAUGH, JR.,<br>          Plaintiff,<br><br>vs.<br><br>BLACKFIN, INC., WARNER BROS. DISCOVERY, INC., WARNER MEDIA ENTERTAINMENT PAGES, INC., AND CAMPFIRE STUDIOS INC.,<br>          Defendants. | Case No. 9:24-cv-04914-RMG<br><br>**REPLY IN SUPPORT OF MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OF DEFENDANT CAMPFIRE STUDIOS, INC., JOINED BY WARNER BROS. DISCOVERY, INC. AND WARNER MEDIA ENTERTAINMENT PAGES, INC.** |

**TABLE OF CONTENTS**

ARGUMENT ................................................................................................................. 1

   I.   THE OPPOSITION CONFIRMS THE AMENDED COMPLAINT AND THE LEGAL THEORY ON WHICH IT IS BASED FAIL TO COMPLY WITH RULE 8. ............................ 1

   II.   PLAINTIFF'S OPPOSITION CONFIRMS THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIM. .................................................................................................. 4

   III.   PLAINTIFF FAILS TO MAKE THE REQUIRED "RIGOROUS SHOWING." ........... 7

   IV.   PLAINTIFF FAILS TO MEANINGFULLY CHALLENGE THAT ANY FACTUAL IMPLICATION CONVEYED BY THE CAMPFIRE DOCUMENTARY IS TRUE. ............. 10

   V.   PLAINTIFF FAILS TO SUFFICIENTLY PLEAD COMMON LAW MALICE. ......... 11

   VI.   PLAINTIFF HAS FAILED TO REBUT THE APPLICATION OF THE FAIR REPORT PRIVILEGE REGARDLESS OF WHICH LAW APPLIES. .................................. 12

   VII.   DISMISSAL WITH PREJUDICE IS WARRANTED. .................................................. 14

CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addahoumi v. Pastides*,
  No. 3:16-cv-1571-CMC-SVH, 2018 WL 636122 (D.S.C. Jan. 30, 2018) ............................... 15

*Aitch v. Maybin*,
  No. CIVA 9:08-2242 HMH G, 2008 WL 2943348 (D.S.C. July 29, 2008),
  *aff'd*, 325 F. App'x 281 (4th Cir. 2009) ................................................................. 13

*Beasley v. Arcapita Inc.*,
  436 F. App'x. 264 (4th Cir. 2011) ........................................................................... 14

*Biospherics, Inc. v. Forbes, Inc.*,
  151 F.3d 180 (4th Cir. 1998) ............................................................................. 6, 7

*Block v. Matesic*,
  Case No. 21-61032-CIV-ALTMAN/Hunt, 2023 WL 8527670 (S.D. Fla. Dec. 8, 2023) ........................................................................................................ 2, 3

*Carter v. Dozier*,
  No. CIV.A. 2:10-2812-RMG, 2011 WL 2457547 (D.S.C. May 31, 2011) ................. 13, 14

*Chapin v. Knight-Ridder, Inc.*,
  993 F. 2d 1087 (4th Cir. 1993) ...................................................................... 8, 9, 10

*Cobin v. Hearst-Argyle Television, Inc.*,
  561 F. Supp. 2d 546 (D.S.C. 2008) ................................................................. 12, 13

*Daniel v. HBO, Inc.*,
  No. CV ELH-23-233, 2023 WL 8478867 (D. Md. Dec. 7, 2023) ............................... 3

*Harvey v. Cable News Network, Inc.*,
  48 F.4th 257 (4th Cir. 2022) ......................................................................... 12, 14

*Herbert v. McCall*,
  No. CV 4:23-6242-JD-KDW, 2024 WL 4276995 (D.S.C. Aug. 9, 2024) ............. 4, 10, 11

*Holt v. Stroman*,
  No. 3:12-cv-03539, 2015 WL 1061990 (D.S.C. Mar. 11, 2015) ............................. 4, 14

*McLaughlin v. Darlington Cnty.*,
  C/A No. 4:21-1504-SAL-KDW, 2021 WL 4691379 (D.S.C. Sep. 17, 2021) ................ 13

*McNeil v. S.C. Dep't of Corr.*,
  404 S.C. 186, 743 S.E.2d 843 (Ct. App. 2013) ................................................... 1, 2

*Milkovich v. Lorain J. Co.*,
    497 U.S. 1 (1990)..................................................................................................6, 7

*Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*,
    829 F.2d 1280 (4th Cir. 1987) ...............................................................................6

*Potter v. FIA Card Servs., N.A.*,
    No. 2:12-CV-1722-RMG, 2012 WL 13005806 (D.S.C. Sept. 28, 2012) ................11

*Robins v. Nat'l Enquirer, Inc.*,
    C.A. No. 3:95-224-17, 1995 WL 776708 (D.S.C. April 10, 1995) ..........................9

*Schilling v. James*,
    No. C/A/NO. 3:08-539-CMC, 2008 WL 783785 (D.S.C. Mar. 21, 2008) ..............13

*Tannerite Sports LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017)..............................................................................2, 9

*Toney v. WCCO Television, Midwest Cable & Satellite, Inc.*,
    85 F.3d 383 (8th Cir. 1996) ...................................................................................3

*Tully v. Pate*,
    372 F. Supp. 1064 (D.S.C. 1973)........................................................................12

*Turner v. KTRK Television, Inc.*,
    38 S.W.3d 103 (Tex. 2000)....................................................................................3

*Va. Citizens Def. League v. Couric*,
    910 F.3d 780 (4th Cir. 2018) .................................................................................9

*Vaughan v. United States*,
    No. CR 2:94-511-RMG, 2021 WL 4993537 (D.S.C. Oct. 27, 2021) (Gergel,
    J.)......................................................................................................................4, 11

*Weise v. Colorado Springs*,
    C.A. No. 17-cv-02696-PAB-NYW, 2020 WL 13701854 (D. Colo. Nov. 30,
    2020) ....................................................................................................................10

*Wellin v. Wellin*,
    C.A. No. 2:13-CV-1831-DCN, 2016 WL 7626536 (D.S.C. Mar. 8, 2016)............12

*Wells v. Liddy*,
    186 F.3d 505 (4th Cir. 1999) ..........................................................................12, 13

*White v. Wilkerson*,
    328 S.C. 179, 493 S.E.2d 345 (1997) ..................................................................13

Campfire, joined in full by the Warner Entities,[1] files this Reply in support of the Motion to Dismiss the Amended Complaint (Dkt. 89-1 ("Motion" or "Mot.")) in response to Plaintiff's opposition to the Motion (Dkt. 96 ("Opposition" or "Opp.")).

## ARGUMENT

**I.    THE OPPOSITION CONFIRMS THE AMENDED COMPLAINT AND THE LEGAL THEORY ON WHICH IT IS BASED FAIL TO COMPLY WITH RULE 8.**

The Opposition confirms that the Amended Complaint necessitates dismissal for failure to "provide sufficient factual information to put defendants on notice of their wrongdoing." Mot. at 22-24 (citation omitted). Plaintiff claims that he does not need to identify any specific content as defamatory because "the entire series when read as a whole represents its own individual act or statement of defamation" so "it should be sufficient that the Amended Complaint has alleged the defamatory meaning implied by Defendant's publication" (i.e. that "Mr. Murdaugh murdered Mr. Smith"). Opp. at 10; *id* at 11-12. Adopting Plaintiff's interpretation would lead to absurd results by permitting a defamation plaintiff to escape scrutiny at the dismissal stage simply by declaring that an entire series defames him by implication. That is not, and cannot, be how little the law requires, and the Opposition does not cite to a single case that says as much. *See* Opp. at 9-14.[2] To the contrary, Plaintiff *approvingly* cites, without making any attempt to distinguish, two of the cases Campfire relies on in the Motion that demonstrate a defamation plaintiff—even in a case involving defamation by implication—*must* plead the specific defamatory content. *See* Opp. at 13-

---

[1] This Reply adopts the terms as defined in the Motion.

[2] Plaintiff seems to argue that South Carolina law would not require pleading the content of specific statements and includes a parenthetical suggesting that *McNeil v. S.C. Dep't of Corr.*, 404 S.C. 186, 195, 743 S.E.2d 843, 848 (Ct. App. 2013) supports that notion. Opp. at 10. Leaving aside that federal (not state) pleading standards apply here, the South Carolina Court of Appeals in *McNeil* affirmed dismissal of a claim for defamation for failing to "set forth with any ***specificity*** what the alleged false statements were." *McNeil*, 404 S.C. at 195 (emphasis added).

1

14 (citing *Tannerite Sports LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 251 (2d Cir. 2017)[3] & *Block v. Matesic*, Case No. 21-61032-CIV-ALTMAN/Hunt, 2023 WL 8527670, at *10 (S.D. Fla. Dec. 8, 2023)).

The district court's decision in *Block* is instructive because the court defined claims for defamation-by-implication the same way Plaintiff does in his Opposition, specifically that such a claim exists when a publication "(1) juxtaposes a series of facts so as to imply a defamatory connection between them, or (2) creates a defamatory implication by omitting facts." *Compare* Opp. at 20, *with Block*, 2023 WL 8527670, at *9 (citation omitted). In dismissing the defamation-by-implication claim, the court in *Block* held that Matesic failed to specifically identify "the *true* facts Block has manipulated in an effort to defame him *by implication*," explaining:

> "Matesic hasn't adequately pled a claim for defamation by implication because he hasn't sufficiently identified the 'literally true facts.' In other words, he hasn't specifically identified the facts Block has either 'juxtaposed' in order 'to imply a defamatory connection between them' or 'omitted' in a way that 'creates a defamatory implication.' While Matesic has provided ample contextual material from which a defamation-by-implication claim could (theoretically) proceed, he hasn't connected the dots. Indeed, once we strip from the Counterclaim those assertions that (1) pertain to Block's (allegedly) false statements and which (2) are insufficiently vague, we're left with nothing."

*Block*, 2023 WL 8527670, at *9-10 (internal citations omitted). Likewise, Plaintiff has not adequately pleaded a claim for defamation-by-implication because he has not "specifically" identified "the facts" that Campfire "either 'juxtaposed' in order 'to imply a defamatory connection between them' or 'omitted' in a way that 'creates a defamatory implication.'" *Id*. This Court, like

---

[3] The Second Circuit in *Tannerite* explained that a defamation plaintiff is required "to identify not only the publication, but also the respect in which it was allegedly false. A publication of even brief length often includes thousands of direct statements and implied messages whose veracity could be questioned by a defamation plaintiff. ***Some specificity is necessary so defendants and courts may address themselves to the parts of a communication alleged to be false and defamatory instead of those not objected to***." *Id*. (citations omitted) (emphasis added).

2

the one in *Block*, is "left with nothing" on which to find a sufficiently pleaded claim for defamation-by-implication. Plaintiff does not provide a single authority for the notion that he can avoid Rule 8 simply by labeling a "whole" publication as defamatory without identifying the specific statements that allegedly create the defamatory inference.[4]

The Opposition itself exposes the unfairness of adopting Plaintiff's amorphous pleading standard. While repeatedly emphasizing that it "does not matter" if the statements in the Documentary are "facially true, speculation, opinion, or otherwise protected" because Plaintiff "is not claiming that any specific statement made during Defendant's series is actionable or defamatory in itself" (Opp. at 2, 8-9, 12), he simultaneously states that it is "not true" to say there are "no facially defamatory or actionable statements" because there *are* "facially defamatory or untrue statements." *See Id*. at 10 n.2 (pointing to "example" of "Buster and a couple of other guys had been out, seen Stephen . . . and that a 2x4 or a bat was used to strike Stephen in the head area and that's what caused his death (citing Dkt. 89-1 at 16));[5] *see also id*. at 16 n.4 (referring to statements that are "not in themselves facially untrue"). Plaintiff's shifting articulation of the content on which his claim is based fails to put Campfire on notice about the *actual* allegedly wrong conduct against which it must defend itself. Campfire, and this Court, should not have to

---

[4] The authorities that Plaintiff cites do not support the ability to state a claim for defamation by implication without alleging any specific statements. *See* Opp. at 14, 20 (citing the following cases); *Toney v. WCCO Television, Midwest Cable & Satellite, Inc.*, 85 F.3d 383, 396 (8th Cir. 1996) (holding "a ***single*** statement [] created a defamatory implication when artificially juxtaposed with ***another statement***"); *Daniel v. HBO, Inc.*, No. CV ELH-23-233, 2023 WL 8478867, at *15-17 (D. Md. Dec. 7, 2023) (analyzing "fictitious statements" in a specifically identified scene before determining that a "reasonable factfinder could conclude from ***these statements***" that the plaintiff had engaged in sexual relations); *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 119, 122 (Tex. 2000) (analyzing specific omissions and statements) (all emphases added).

[5] Plaintiff does not quote the "example" in full in the Opposition. *Compare* ECF No. 89-3 at 37 ("One of the rumors that we heard was that Buster and a couple of other guys had been out, seen Stephen, and they got in some type of argument and that a 2x4 or a bat was used to strike Stephen in the head area and that's what caused his death."), *with* Opp. at 10 n.2.

3

guess. *See Holt v. Stroman*, No. 3:12-cv-03539, 2015 WL 1061990, at *3-5 (D.S.C. Mar. 11, 2015) (dismissing complaint under Rule 8 where defendants and the Court were "left to guess which facts and Defendants pertain to which counts.").

## II.  PLAINTIFF'S OPPOSITION CONFIRMS THE FIRST AMENDMENT BARS PLAINTIFF'S CLAIM.

Plaintiff largely leaves Campfire's substantive arguments unanswered, which amounts to conceding he has no answer.[6] He does not engage with much of the actual content of the Documentary highlighted in the Motion—including the audio recordings of the law enforcement interviews indicating the third parties were conveying speculation, and the interwoven interviews with Cpl. Duncan and Lt. Moore making clear there were "different stories and different versions" with "nothing" they could "point to" to ultimately determine "what happened"—or attempt to explain how anyone could view such statements as reaching any definitive conclusion about whether, by whom, or how Mr. Smith was murdered. *Compare* Mot. at 26, *with* Opp. at 14-19. Plaintiff concedes that the Documentary did not expressly reach *any conclusion* about these circumstances of Mr. Smith's murder, but nevertheless insists that it "very much speaks in certainties" by the inclusion of "**numerous statements implying that it was a certainty** that Mr. Murdaugh killed Mr. Smith" and "killed him with a 2x4 or baseball bat." Opp. at 26 (citing pages 15, 17, 37, and 40-42 of the script of episode two of the Campfire Documentary (ECF No. 89-3 "Campfire Script")) (emphasis added); *accord* Opp. at 15-16. But Plaintiff ignores the actual text of the two sequences he cites, both of which expressly confirm they convey conjecture not fact. *See* ECF No. 89-3 at 37 ("**One of the rumors that we heard** was that Buster and a couple of other

---

[6] *Herbert v. McCall*, No. CV 4:23-6242-JD-KDW, 2024 WL 4276995, at *3 (D.S.C. Aug. 9, 2024), *report and recommendation adopted,* No. 4:23-CV-6242-JD-KDW, 2024 WL 4556896 (D.S.C. Oct. 23, 2024) ("a litigant's failure to address arguments in responding to dispositive motions amounts to a concession of such arguments"); *Vaughan v. United States*, No. CR 2:94-511-RMG, 2021 WL 4993537, at *5 n.1 (D.S.C. Oct. 27, 2021) (Gergel, J.) (same).

4

guys had been out, seen Stephen, and they got in some type of argument and that a 2x4 or ***a bat was used*** to strike Stephen in the head area and that's what caused his death."); *id*. at 40-42 ("[t]here were ***rumors of that. I don't know if it was true. If*** Buster was gay . . .") (all emphases added). Plaintiff does not, because he cannot, explain how it would be reasonable for a viewer to understand those statements to imply "that it was a certainty" that Mr. Murdaugh killed Mr. Smith "with a 2x4 or baseball bat" because of a romantic relationship. *Compare id*, *with* Opp. at 15-27. Plaintiff in his Opposition also mounts no response to Campfire's argument that the Priming Portions cannot possibly convey any such certainties when it does not include a single statement about a baseball bat, a romantic relationship, or anything about Plaintiff other than his place in the Murdaugh family. *See* Mot. at 29-30.[7] Nor does Plaintiff attempt to explain how the Campfire Documentary could imply that he, in fact, murdered Mr. Smith while conceding that the Documentary discloses to viewers that his *brother*, Paul, was speculated to have been involved in Smith's death. Mot. at 26; Opp. at 19.[8] Plaintiff's failure to engage with the arguments in the Motion or to point to a single statement in the Documentary that alone or in combination conveys any such implications as facts warrants dismissal.

      The crux of Plaintiff's response to the First Amendment's bar on his defamation claim is that the "question is not whether Defendant's published statements assert as a verifiable fact that Mr. Murdaugh killed Mr. Smith, the question is whether a reasonable observer could draw an

---

[7] Plaintiff repeatedly points to statements about his uncle and other members of his family (*see, e.g.,* Opp. at 19, 21-24), but does not attempt to explain how statements about individuals other than Plaintiff convey any *facts about Plaintiff*.

[8] Plaintiff also does not reconcile his burden to show that the Campfire Documentary conveyed facts and not "subjective and speculative supposition" with the Amended Complaint's allegation that the "only sources of information tying Plaintiff to Mr. Smith" (i.e. the audio recordings that the Campfire Documentary played) consisted of "unfounded speculation, rumor, and hearsay." *Compare* Mot. at 25, *with* Opp. at 15-19 (Documentary plays "gossip and hearsay").

5

inference from Defendant's series that Defendant is asserting between the lines that Mr. Murdaugh killed Mr. Smith." Opp. at 17; *id*. at 16 ("does not matter if the individual statements are literally true or are speculative opinions"); *id*. at 17 n.5 ("question for the Court is not whether any statements within the series are opinions but whether the statements could permit the listener to make a reasonable inference"). The United States Supreme Court has said otherwise, explaining that the federal constitution "provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual.'" *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50 (1988) (brackets in original)); *see Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 184 (4th Cir. 1998) (*Milkovich* prohibits liability attaching to statements where "no fact finder could reasonably interpret any of them as stating or implying actual facts" (citations and quotations omitted) (cleaned up)). The First Amendment's protection of statements that do not convey facts is *distinct* from the legal requirement that a statement must carry a defamatory meaning to be actionable, notwithstanding Plaintiff's attempt to conflate the two concepts. The Fourth Circuit in *Biospherics* confirmed that a statement that conveys a defamatory meaning might still warrant First Amendment protection when it affirmed the district court's finding that "***while the challenged statements 'might be construed as defamatory,' they were nevertheless constitutionally protected***." *Id*. at 183 (emphasis added);[9] *accord Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1288 (4th Cir. 1987) (rejecting the notion "that any 'question of fact' which can be decided by a jury can be actionable as defamation" because such a "test ignores the underlying purposes of the

---

[9] The *Biospherics* court evaluated the two concepts as separate arguments advanced by Forbes: whether "(1) neither the article as a whole nor any of its specific statements could be reasonably interpreted to have a defamatory meaning and, in any event, (2) all of the statements in the article were entitled to First Amendment protection." 151 F.3d at 182-83 (citation omitted).

6

fact/opinion distinction, and would lead to results that could not be reconciled with the developing case law in other circuits"). Contrary to Plaintiff's assertion, even if *arguendo* the Documentary conveyed a defamatory implication, he must, but fails, to demonstrate that such an implication is *a fact* rather than supposition, speculation, or opinion. Here, Plaintiff's lawsuit does not "comport with the First Amendment" as required under *Milkovich* and *Biospherics* because the Campfire Documentary "cannot reasonably be interpreted" as having stated *as a fact* that Plaintiff killed Smith, used a baseball bat to kill Smith, and/or killed him due to a relationship with Smith. Mot. at 24-30 (citing cases).[10]

### III.    PLAINTIFF FAILS TO MAKE THE REQUIRED "RIGOROUS SHOWING."

Plaintiff acknowledges that he must make the "especially rigorous showing" that the Campfire Documentary **both** (1) can be "reasonably" viewed to impart that he murdered Mr. Smith, with a baseball bat, and/or because of a romantic relationship **and** (2) that Defendants intended or endorsed that implication. Opp. at 20. He does not meet his burden as to either prong.

Beginning with the second prong, Plaintiff attempts to meet his "rigorous" burden in two footnotes in his Opposition that argue Campfire's "editorial choices" provide sufficient "prima facie evidence" of endorsement. Opp. at 21 n.9; *id*. at 23 n.11. Plaintiff does not identify any edits in the Documentary that "affirmatively suggest" based on the "plain and natural meaning of the words used" that Campfire intended or endorsed the inference that he murdered Smith with a

---

[10] Plaintiff's theory is built on an elaborate web of possible inferences (Opp. at 17 n.5 (emphasis added)), which is self-defeating of his burden to prove that the Documentary itself conveys as a fact that Mr. Murdaugh murdered Mr. Smith with a baseball bat and/or because of a romantic relationship. *See* Mot. at 29-31 (when a viewer "is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation" (citation omitted)). Plaintiff's only response is to argue for the first time in opposition that the Documentary's assertions of fact "'are either incorrect or incomplete.'" Opp. at 16 n.4 (citation omitted). The Amended Complaint does not include any allegations about "incorrect or incomplete" facts, and there is no basis for the Court to draw such an inference. *See* Mot. at 24-25, 32-34.

baseball bat because of a relationship with Smith. *Chapin v. Knight-Ridder, Inc.*, 993 F. 2d 1087, 1092-93 (4th Cir. 1993); *see* Mot. at 35-36. He implicitly admits that the Documentary does not include any such endorsement on its face by arguing it would be "unfair" to require he plead facts demonstrating endorsement because he has not engaged in discovery. Opp. at 21 n.9. Plaintiff's admission that he cannot demonstrate endorsement based on the "plain and natural meaning of the words used" of the Documentary is fatal to his claim and warrants dismissal without even considering the first prong. If Plaintiff could meet the *Chapin* endorsement simply by referencing general "editorial choices" that also form the basis for his attempt to meet the first prong, it would permit a defamation-by-implication plaintiff to automatically meet the "rigorous" second prong of *Chapin* simply by satisfying the first and turn the second prong into a nullity.

If the Court considers the first *Chapin* prong, dismissal is required because Plaintiff has not made the "rigorous" showing that the Campfire Documentary implied the defamatory meaning he ascribes to it. Plaintiff attempts to meet the first prong largely by repeating the allegations of the Amended Complaint virtually verbatim (*compare* Opp. at 21-26, *with* Am. Compl. ¶¶ 36-50) and concluding that the content "when viewed as a whole, reveals that the juxtapositions of statements, graphics, and music, alongside the omissions of certain evidence that would exonerate or reduce the intensity of suspicion cast onto Mr. Murdaugh, not only could reasonably lead a viewer to infer the defamatory meaning, but also serve as affirmative proof that Defendant made purposeful and deliberate choices to edit the series in such a manner as to suggest the inference." Opp. at 21. Regurgitating the allegations of the Amended Complaint and asserting a legal standard for defamation by implication does not meet Plaintiff's "rigorous" burden to *show* that the alleged defamatory implication is "present in the plain and natural meaning of the words used" in the Documentary. Mot. at 32-35. As Plaintiff in his own Opposition states, it is not the Court's job to

8

"hunt for a forced and strained construction to put on ordinary words" where, as here, the "plain and natural" language of the Documentary raises questions and theories about the death of Mr. Smith without reaching any conclusions. Opp. at 28 (citation omitted); *supra* § II; Mot. at 32-34.[11] Plaintiff's conclusory assertion that the Campfire Documentary "speaks in certainties" and does not "raise questions as to who may have been involved in the death of Mr. Smith, then decline to answer them" is directly contradicted by the Documentary itself, including the portions on which he relies. Opp. at 26, *see supra* at § II.[12]

Separate from *Chapin*, Plaintiff in his Opposition does not identify any facts that meet the juxtaposition or omission standard he constructs. He does not point to any truthful facts that juxtapose to imply that Plaintiff was responsible for murdering Mr. Smith with a baseball bat because of a romantic relationship. *See* Mot. at 32-35; Opp. at 20-27. Nor does he identify any specific factual omissions that "would have made for a more balanced presentation" and negated the alleged defamatory inference, relying instead only on the same insufficient conclusory allegation that the Documentary omitted "key facts." *Compare* Opp. at 29-30, 34 n.14, *with* Mot. at 35. Plaintiff has not carried his "rigorous" burden to show that the Campfire Documentary

---

[11] *Accord Chapin*, 993 F.2d at 1094 (language "cannot be tortured to 'make that certain which is in fact uncertain'"); *Va. Citizens Def. League v. Couric*, 910 F.3d 780, 786 (4th Cir. 2018) ("Even with the benefit of every inference, the edited footage is not reasonably capable of suggesting" defamatory meaning); *Robins v. Nat'l Enquirer, Inc.*, C.A. No. 3:95-224-17, 1995 WL 776708, at *3 (D.S.C. April 10, 1995) (rejecting Plaintiff's "hypothesiz[ing] that a reasonable reader of the article could falsely conclude that Plaintiff was 'partially' responsible for" a murder based upon "the combination of the article's headlines, the use of Plaintiff's photograph, and the article's language").

[12] The Opposition includes a footnote about a "second independent autopsy" but there are no allegations about this in the Amended Complaint, and the Court cannot consider them in the context of a motion to dismiss. Opp. at 23 n.12; *Chapin*, 993 F.2d at 1098; *Tannerite Sports LLC*, 864 F.3d at 251.

implied, and that the Defendants intended to imply, that he murdered Mr. Smith with a baseball bat because of a romantic relationship.[13]

## IV.  PLAINTIFF FAILS TO MEANINGFULLY CHALLENGE THAT ANY FACTUAL IMPLICATION CONVEYED BY THE CAMPFIRE DOCUMENTARY IS TRUE.

Plaintiff fails to address the substance of Defendants' substantial truth argument by insisting it is "irrelevant because the Fourth Circuit has recognized that a defamation by implication claim may be based on literally true statements." Opp. at 20 (citing *Chapin*, 993 F.2d at 1092-93).[14] Plaintiff, again, confuses distinct legal doctrines. *Even if* a publication conveys a defamatory meaning based on literally true statements, a claim for defamation cannot lie if the gist or "sting" of the meaning conveyed is substantially true. *Chapin*, 993 F.2d at 1092; *Weise v. Colorado Springs*, C.A. No. 17-cv-02696-PAB-NYW, 2020 WL 13701854, at *5 (D. Colo. Nov. 30, 2020).[15] Here, there can be no claim for defamation because Plaintiff has not demonstrated that the alleged defamation would be "more damaging" to his "reputation in the mind of the average listener" than would the truthful statement, i.e., that Plaintiff was named in numerous tips to law enforcement as part of the investigation into Mr. Smith's death and that there was rampant

---

[13] Plaintiff claims in a footnote that the investigative materials lists "numerous other individuals", but he only identifies one person who the Opposition claims "confessed to striking and killing Mr. Smith." Opp. at 34 n.14 (citing ECF No. 51-2 at 29-30). Leaving aside that these allegations are not in the Amended Complaint, the portion of the Investigative Files that Plaintiff cites does not reference a confession, but rather refers to hearsay conveyed in the form of a tip that someone made "because Randy Murdaugh" told him to. ECF No. 51-2 at 29. Plaintiff has not attempted to explain how the absence of such information, *including* about the involvement of Plaintiff's uncle in curating this tip, created the defamatory implication or how its inclusion "would have made for a more balanced presentation." *See* Mot. at 35.

[14] The Court may treat Plaintiff's failure to meaningfully address the substantial truth doctrine as a concession. *See Herbert*, 2024 WL 4276995, at *3.

[15] Plaintiff cites *Chapin* but ignores the part of the opinion that directly refutes his "irrelevance" argument. The Fourth Circuit in *Chapin* held that *even if* one of the alleged defamatory statements could "construed as an assertion" of defamatory fact, it still would not state a claim because that assertion "would be substantially true." *Id.* at 1094.

speculation that he was involved in the death. Mot. at 36-37 (citing *Coker v. Norwich Com. Grp., Inc.*, No. CV 3:20-03071-MGL, 2023 WL 3791106, at *6 (D.S.C. June 2, 2023) and other cases).

V.  **PLAINTIFF FAILS TO SUFFICIENTLY PLEAD COMMON LAW MALICE.**

Plaintiff concedes that to survive dismissal he must plead facts demonstrating that each of the Defendants acted with common law malice, which he defines as applicable here as "reckless indifference to the truth." Opp. at 34-35. Plaintiff relies solely on paragraphs 18, 19 and 50 without addressing (and therefore conceding) the reasons explained in the Motion why such allegations are insufficient to plead common law malice as a matter of law. *Compare id.*, *with* Mot. at 37-41; *Herbert*, 2024 WL 4276995, at *3; *Vaughan*, 2021 WL 4993537, at *5 n.1.[16] The only argument in the Motion that Plaintiff addresses in Opposition is as to his improper group pleading, which he attempts to defend by stating the Amended Complaint includes "individualized allegations" about the "editorial choices" made. Opp. at 35 n. 15. Even if true, editorial decisions alone do not demonstrate that anyone at Campfire "had reason to doubt" the veracity of the alleged implication in the Documentary. For the (unaddressed) reasons Defendants articulated in the Motions to Dismiss, Plaintiff has failed to sufficiently plead common law malice. [17]

---

[16] As discussed above, Plaintiff attempts to amend by opposition by referencing an "individual" in the Investigative Files who his uncle told someone to report to law enforcement. Plaintiff cannot explain how the decision to omit that tip evinced any sort of reckless disregard.

[17] Plaintiff cites *Potter v. FIA Card Servs., N.A.*, No. 2:12-CV-1722-RMG, 2012 WL 13005806, at *2 (D.S.C. Sept. 28, 2012) (cited in Opp. at 35), but it does not help his argument because in that case, a plaintiff sufficiently pleaded malice by alleging that he "repeatedly told" the defendants that he was not an obligor on an account and that the defendants even "agreed he was not an obligor on the account" but nonetheless continued to state the opposite. Plaintiff's Amended Complaint is devoid of any allegation that he provided any information or denials to the Defendants—to the contrary, he declined to comment when Campfire asked (ECF No. 89-3 at 47). The lack of any effort by Plaintiff to address the publicly known speculation also undermines his conclusory assertion about the existence of contradictory information.

11

VI.  **PLAINTIFF HAS FAILED TO REBUT THE APPLICATION OF THE FAIR REPORT PRIVILEGE REGARDLESS OF WHICH LAW APPLIES.**

Plaintiff concedes that the fair report privilege covers some portion of the Campfire Documentary (Opp. at 30) but does not specify any portion that would fall outside its scope, which alone warrants dismissal. *Supra* at § I; *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 275 (4th Cir. 2022) (dismissing defamation claim because plaintiff "cannot show that the statements" were not privileged); *Cobin v. Hearst-Argyle Television, Inc.*, 561 F. Supp. 2d 546, 552 (D.S.C. 2008) ("Context and presentation matter for purposes of the privilege" and a court "cannot fully determine the applicability of the privilege without the opportunity to evaluate the context of the statements, the purpose for including details of the police report" in the publications, "and the way in which those details were included"). The only statements in the relevant portion of the Campfire Documentary arguably involving Plaintiff are predicated upon official investigative materials and protected by fair privilege. Mot. at 41-43.

The bulk of Plaintiff's argument as to privilege is that South Carolina law should apply under the doctrine of *lex loci delicti*. Opp. at 31-32. Other courts in this district have relied on the "most significant relationship" test in multi-state tort contexts because, as the Fourth Circuit has explained, the *lex loci delicti* test is "cumbersome, if not completely impractical," in multi-state defamation actions. *See Wells v. Liddy*, 186 F.3d 505, 527 (4th Cir. 1999) (addressing Maryland law); *Wellin v. Wellin*, C.A. No. 2:13-CV-1831-DCN, 2016 WL 7626536, at *3-5 (D.S.C. Mar. 8, 2016) (determining the "significant relationship" test appropriate where South Carolina courts had not addressed privilege "in the context of a multi-state tort"); *Tully v. Pate*, 372 F. Supp. 1064, 1071-72 (D.S.C. 1973) (applying interest analysis where the "alleged tortious actions began in North Carolina, continued through South Carolina, and culminated in Georgia"). Because Plaintiff does not attempt to argue that South Carolina has a more significant interest than California, the

12

Court can dismiss the Amended Complaint in its entirety based on California fair report privilege. Opp. at 31-34. If the *lex loci delicti* applies, the Court still should apply California law since it was the location of publication. *Wells*, 186 F.3d at 521-22.

Even if the Court applies South Carolina's qualified fair report privilege, it protects Campfire from this lawsuit. Plaintiff is wrong that the privilege is unavailable because Campfire is not a "news organization." Opp. at 32-33;[18] Mot. at 41-43; *see, e.g.*, *Carter v. Dozier*, No. CIV.A. 2:10-2812-RMG, 2011 WL 2457547, at *3 (D.S.C. May 31, 2011), *report and recommendation adopted*, No. CIV.A. 2:10-2812-RMG, 2011 WL 2434145 (D.S.C. June 16, 2011) (applying privilege to firefighter); *Schilling v. James*, No. C/A/NO. 3:08-539-CMC, 2008 WL 783785, at *4 (D.S.C. Mar. 21, 2008) (applying fair report privilege to private citizen); *Aitch v. Maybin,* No. CIVA 9:08-2242 HMH G, 2008 WL 2943348, at *2 (D.S.C. July 29, 2008), *aff'd,* 325 F. App'x 281 (4th Cir. 2009) (same); *White v. Wilkerson*, 328 S.C. 179, 186, 493 S.E.2d 345, 348 (1997) (radio station protected by fair report privilege). Likewise, his argument that "the privilege would not protect any matter added to the contents of the MAIT investigation" and would not apply where the Investigative Files are not expressly referenced misstates the legal standard and is unsupported by any case citation. Opp. at 33; *see* Mot. at 41-43 (cases explaining fair report attaches to statements with a "factual predicate" derived from the official document); *see Cobin*, 561 F. Supp. 2d at 554-56 ("The privilege does not require that the published report be verbatim of the official report but it must only be substantially correct" even if it uses "'shorthand' to summarize the contents"); *McLaughlin v. Darlington Cnty.*, C/A No. 4:21-1504-SAL-KDW, 2021

---

[18] Plaintiff's reliance on *Tharp* in support is misguided, evident by his own parenthetical which reflects that the court in *Tharp* held that the privilege did not extend to the defendants because the publication was "originally based upon their own investigation and interviews, rather than a government report or action." Opp. at 32-33.

WL 4691379, at *4 (D.S.C. Sep. 17, 2021), *report and recommendation adopted*, 2021 WL 4691055 (D.S.C. Oct. 7, 2021) (same). Neither Campfire nor the Court should have to guess which, if any, specific "added" portions of the Warner Documentaries to which Plaintiff is referring. *See Holt v. Stroman*, 2015 WL 1061990, at *3-5. Plaintiff also is wrong on the law because the fair report privilege attaches to any statements (including as conveyed via an interview with a law enforcement officer) with a "factual predicate" derived from the official document that is fairly and accurately described. Mot. at 33-35.

Plaintiff cannot overcome the fair report privilege because the Amended Complaint fails to sufficiently plead actual malice for the same reasons why he has failed to demonstrate common law malice. *Supra* § V. Actual malice is an even higher bar, and conclusory allegations that the series is "not fair, impartial, and unbiased" are insufficient as a matter of law. Opp. at 33; *Harvey*, 48 F.4th at 274, 275 n.9 (declining to consider "forfeiture" of privilege given "naked assertion" failing to allege actual malice and presence of applicable privilege). The Court also can reject Plaintiff's argument that it is premature to apply fair report because it can do so based on the Amended Complaint and materials properly incorporated by reference.[19] For the (largely unrebutted) reasons described in the Motions to Dismiss, the Court should dismiss the Complaint based on the fair report privilege.

### VII. DISMISSAL WITH PREJUDICE IS WARRANTED.

The Court should dismiss this lawsuit with prejudice and reject Plaintiff's repeated suggestion that he should be permitted to attempt to cure the pleading failures if given leave to

---

[19] Plaintiff does not challenge and therefore concedes that the Court can take judicial notice of the state investigative materials and can consider the transcripts of the Campfire Documentary because they are integral to the Amended Complaint. Mot. at 12 n 3 & 4; *Beasley v. Arcapita Inc.*, 436 F. App'x. 264, 266 (4th Cir. 2011) (court may consider documents integral to the Complaint provided by defendants in connection with motions to dismiss).

14

amend. *See* Opp. at 14, 27, 30. The defects of the Amended Complaint are because the Documentary cannot reasonably be interpreted as asserting as a fact that Plaintiff murdered Mr. Smith (Mot. at 24-30); there is no content that can be "reasonably read to impart" that Plaintiff murdered Mr. Smith *or* that "affirmatively suggest[s]" that the relevant Defendants intended or endorsed that inference (*id.* at 31-36); the statements about Plaintiff are true (*id.* at 36-37); there is no basis to find that the relevant Defendants acted with common law malice (*id.* at 37-41); and they are protected by the fair report privilege (*id.* at 41-43). Even if *arguendo* it would be possible for Plaintiff to overcome the failure to state a claim, he already had a chance to do so and should not receive a third bite at the apple. *See generally Addahoumi v. Pastides*, No. 3:16-cv-1571-CMC-SVH, 2018 WL 636122, at *3-4 (D.S.C. Jan. 30, 2018) (dismissing claim where plaintiff was "already had two opportunities to amend his complaint," "failed to clarify which claims are against which Defendants," and did not comply with Rule 8). Plaintiff could have filed an amended complaint as of right after Defendants filed motions to dismiss *more than seven months ago*, and he could have waited to move for leave to file an amended complaint until after receiving the Court's guidance in an opinion on the motion to dismiss. Plaintiff decided not to do either, and the Campfire should not bear the burden of briefing another motion opposing leave to amend and to dismiss a complaint that undoubtedly will be deficient as a matter of law.

## CONCLUSION

For the reasons discussed herein, the Moving Defendants respectfully request the Court dismiss Plaintiff's claim of defamation as to the Campfire Documentary with prejudice.

Respectfully submitted,

s/ MERRITT G. ABNEY

NELSON MULLINS RILEY & SCARBOROUGH, LLP
David E. Dukes, Esq. (Federal Bar No. 00635)
E-Mail: david.dukes@nelsonmullins.com
1320 Main Street / 17th Floor
Post Office Box 11070 (29211-1070)
Columbia, SC 29201
(803) 799-2000

Merritt G. Abney, Esq. (Federal Bar No. 09413)
E-Mail: merritt.abney@nelsonmullins.com
151 Meeting Street / Sixth Floor
Post Office Box 1806 (29402-1806)
Charleston, SC 29401-2239
(843) 853-5200

WILLKIE FARR & GALLAGHER LLP
Meryl C. Governski, *pro hac vice*
Kristin Bender, *pro hac vice*
1875 K Street N.W.
Washington, DC 20006-1238
(202) 303-1000
mgovernski@willkie.com
kbender@willkie.com

*Attorneys for Defendants Blackfin, Inc., Warner Bros. Discovery, Inc., Warner Media Entertainment Pages, Inc. and Campfire Studios, Inc.*

Charleston, South Carolina
June 2, 2025

16